**ROB BONTA**
Attorney General of California
LAURA L. FAER
Acting Senior Assistant Attorney General
MARISSA MALOUFF
JAMES E. STANLEY
Supervising Deputy Attorneys General
LUKE FREEDMAN
ROBIN GOLDFADEN
BRENDAN M. HAMME
LORRAINE LOPEZ
KENDAL MICKLETHWAITE
MEGAN RICHARDS
NICHOLAS ESPÍRITU
Deputy Attorneys General
 1515 Clay St.
 Oakland, CA  94612
 Telephone: (510) 879-3908
 E-mail:  nicholas.espiritu@doj.ca.gov
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GAVIN NEWSOM, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF CALIFORNIA; STATE OF CALIFORNIA,**<br><br>Plaintiffs,<br><br>v.<br><br>**DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES; PETE HEGSETH, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF DEFENSE; U.S. DEPARTMENT OF DEFENSE,**<br><br>Defendants. | NO. 3:25-cv-04870-CRB<br><br>**[PROPOSED] ORDER GRANTING TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

**[PROPOSED] ORDER**

Plaintiffs' application for a temporary restraining order ("TRO") and order to show cause came before this Court for consideration on June 10, 2025. Upon consideration, and for good cause shown, **IT IS HEREBY ORDERED** that the TRO is **GRANTED.**

**TEMPORARY RESTRAINING ORDER**

The Court finds that Plaintiffs have demonstrated a likelihood of success on the merits of their claims, a likelihood of irreparable harm in the absence of temporary relief, that the balance of equities tips in their favor, and that a temporary restraining order is in the public interest. In support of this Order, the Court makes the following findings:

1. Since Fiscal Year 2024, U.S. Immigration and Customs Enforcement (ICE) has made 4,741 arrests in the Los Angeles Area of Responsibility. Mass episodes of civil unrest related to those arrests in 2024 were nominal. On June 6, 2025, ICE conducted enforcement actions within the Los Angeles Area of Responsibility, including the execution of search warrants at various locations. During these operations, ICE and its agents reportedly took actions that inflamed tensions and provoked protest. In all, the Department of Homeland Security reported that its enforcement activities on Friday, June 6, resulted in the arrest of approximately 44 individuals and 70–80 people detained in total, further showing ICE could execute its functions.

2. On June 7, 2025, President Donald Trump issued a memorandum "call[ing] into Federal service members and units of the National Guard."

3. On June 7, 2025, Secretary of Defense Pete Hegseth issued a memorandum to the Adjutant General of California ordering 2,000 California National Guard soldiers into federal service.

4. On June 9, 2025, Secretary Hegseth issued another memorandum ordering an additional 2,000 California National Guard members into federal service.

5. Defendants' orders were issued over the express objection of the Governor of the State of California, despite 10 U.S.C. § 12406's requirement that all orders made pursuant to that provision "shall be issued through the governors of the States."

6. As a result, 2,000 California National Guard soldiers have been moved to federal command, and an additional 2,000 will be moved imminently, for a total of 4,000 federalized National Guard soldiers available to be deployed by the federal government in the Los Angeles area.

7. Also on June 9, 2025, Secretary Hegseth mobilized 700 active-duty members of the United States Marine Corps from Camp Pendleton and deployed them to the Los Angeles area. Together with the 4,000 federalized National Guard soldiers, these constitute the "Title 10 Force" for purposes of this Order.

8. To date, Secretary Hegseth has deployed only approximately 325 of the 2,000 National Guard soldiers initially mobilized under federal authority, with a mission limited to protecting federal real property and a presence on or immediately adjacent to federal real property.

9. Plaintiffs are likely to prevail on their claims that Defendants' actions are *ultra vires*, including because they violate 10 U.S.C. § 12406 and the Posse Comitatus Act. Under section 12406, the President lacks the authority to use California's National Guard soldiers to aid federal agents with enforcing federal law. Section 12406 permits the President to call a state's National Guard soldiers into service in only three circumstances: (1) the United States is invaded or is in danger of invasion by a foreign nation; (2) there is a rebellion or danger of a rebellion against the authority of the Government of the United States; or (3) the President is unable to execute the laws of the United States with regular forces. None of these three circumstances exists here. In his June 7 memorandum, the President purported to invoke the second and third circumstance, stating that "[t]o the extent protests or acts of violence directly inhibit the execution of the laws, they constitute a form of rebellion against the authority of the Government of the United States." However, Plaintiffs have shown that the protests in Los Angeles fall far short of a rebellion, which is generally understood to connote "an organized attempt to change the government or leader of a country, [usually] through violence," something much beyond mere protest or sporadic acts of disobedience and violence. *Rebellion, Black's Law Dictionary* (12th ed. 2024). Nor do these protests prevent the President or ICE from executing the laws of the

3
[PROPOSED] TEMPORARY RESTRAINING ORDER & ORDER TO SHOW CAUSE

United States.  Plaintiffs' evidence shows that ICE has continued to execute its duties and that National Guard soldiers are unnecessary to aid with the enforcement of federal law.

10. Plaintiffs are also likely to prevail on their claims because section 12406 mandates that "[o]rders for these purposes shall be issued through the governors of the States."  The President's order was not issued through the Governor of the State of California.

11. Plaintiffs are also likely to prevail on their claim that the use of the Title 10 Force is likely to result in violations of the Posse Comitatus Act, 18 U.S.C. § 1385, because these forces are likely to engage in activity that will 'amount to direct active involvement in the execution of the laws[.]" *United States v. Dreyer*, 804 F.3d 1266, 1275 (9th Cir. 2015).

12. Plaintiffs are also likely to prevail on their claim that the use of the Title 10 Force violates the Tenth Amendment because it intrudes on the State of California's sovereign powers, including by taking command of the State's own resources and depriving the State of its right to control and have available its National Guard.

13. Plaintiffs are likely to suffer irreparable harm in the absence of temporary relief. First, violations of state sovereignty are irreparable harms.  Second, federalization of the California National Guard's soldiers impairs the Guard's ability to perform critical functions of the State of California, such as responding to natural disasters and wildfires when California is in peak wildfire season.  And third, Plaintiffs have shown that the presence of the Title 10 Force on the streets of Los Angeles, including their actual or perceived support and aid in the execution of ICE duties has created significant civil unrest and is likely to result in increased civil unrest in the future. Specifically, after National Guard soldiers were deployed to Los Angeles, their presence became the focus of protests and led to civil unrest, requiring intervention by state and local law enforcement to protect the National Guard soldiers. Further escalation of military force will create a significant and imminent risk of harm to Los Angeles by escalating tensions and increasing the risk of potential hostilities that may lead to further violence against Californians or any violence against the Title 10 Force or federal agents.

14. The balance of equities and public interest favor injunctive relief, particularly considering the imminent risk of violence in Los Angeles if the Title 10 Force is deployed in excess of the law.

Accordingly, it is hereby:

**ORDERED** that Defendants Secretary of Defense Pete Hegseth and the United States Department of Defense ("DOD Defendants") are temporarily enjoined from ordering or deploying the Title 10 Force to enforce or aid federal agents in enforcing federal law or to take any action beyond those that are required to ensure the protection and safety of federal buildings and other real property owned or leased by the federal government and federal personnel on such property;

**ORDERED** that DOD Defendants are temporarily enjoined from ordering or permitting the Title 10 Force to execute or assist in the execution of any federal agent or officer's enforcement of federal law, including but not limited to all law-enforcement functions such as execution of warrants, arrests, searches, checkpoints, or cordons;

**ORDERED** that DOD Defendants are temporarily enjoined from ordering or permitting the Title 10 Force to patrol communities or otherwise engage in general law enforcement activities beyond the immediate vicinity of federal buildings or other real property owned or leased by the federal government.

This Order does not prohibit any of the Title 10 Force at issue from providing indirect assistance to federal officials by protecting federal immigration detention facilities and other federal buildings or real property owned or leased by the federal government, or by defending federal officials or employees from threatened physical harm at such buildings or real property.

Because Defendants have not shown they are likely to suffer harm as a result of this temporary restraining order, and because this case implicates constitutional rights and the public interest, the Court finds that only a nominal bond is necessary and orders Plaintiffs to post $100 within seven (7) days of this order. *See Taylor-Failor v. Cnty. of Haw.*, 90 F. Supp. 3d 1095, 1102-03 (D. Haw. 2015) (citing *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005)).

**ORDER TO SHOW CAUSE**

Defendants are ordered to show cause before this Court why a preliminary injunction should not issue enjoining the Title 10 Force from enforcing or aiding in the enforcement of federal law outside of federal property or the areas immediately surrounding federal property, including raids, arrests, searches, or any other activity, or conducting patrols beyond federal property. The hearing on the order to show cause will be held on _____ at _____. Plaintiffs' moving papers shall be filed no later than _____. Defendants' opposition papers shall be filed and served on or before _____. Plaintiffs' may file a reply no later than _____.

**IT IS SO ORDERED.**

Dated:

_____
HON. CHARLES R. BREYER
United States District Judge