DAVID A. CARRILLO, State Bar # 177856
BRANDON V. STRACENER, State Bar # 314032
California Constitution Center
University of California, Berkeley* School of Law
#7200
Berkeley, CA 94720-7200
Telephone: (510) 664-4953
Email: carrillo@law.berkeley.edu
Email: bvstrac@gmail.com
*University affiliation provided for identification
purposes only

Amicus California Constitution Scholars

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCSICO DIVISION

| | |
|---|---|
| GAVIN NEWSOM, in his official capacity as Governor of the State of California; STATE OF CALIFORNIA,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; PETE HEGSETH, in his official capacity as Secretary of the Department of Defense; U.S. DEPARTMENT OF DEFENSE,<br><br>　　　　Defendants. | Case No.: 3:25-cv-04870-CRB<br><br>**[PROPOSED] BRIEF OF AMICUS CALIFORNIA CONSTITUTION SCHOLARS IN SUPPORT OF PLAINTIFFS' EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Hearing Date: June 12, 2025<br>Time: 1:30 P.M.<br>Judge: Hon. Charles R. Breyer,<br>　　　Senior District Judge<br>Dept.: Courtroom 6 – 17th Floor<br><br>Action Filed: June 9, 2025 |

# TABLE OF CONTENTS

Page

I. STATEMENT OF INTEREST .................................................................................7

II. SUMMARY OF ARGUMENT ...............................................................................7

III. FACTUAL BACKGROUND ..................................................................................7

    A. The National Guard has a unique, dual status.......................................................7

    B. The California National Guard is the domestic state militia...............................10

IV. ARGUMENT ........................................................................................................11

    A. Federal constitutional power over the militia is not exclusive. ..........................11

    B. Only Congress can define conditions for federalizing the militia. ....................12

    C. The order does not satisfy the statutory conditions for federalizing
        California's militia. ...........................................................................................14

    D. The order violates the Tenth Amendment's anti-commandeering doctrine. .......15

    E. The order violates the Tenth Amendment's reservation of police powers to
        the states...........................................................................................................16

    F. Lacking Congressional authority, the president's power is at its lowest
        ebb....................................................................................................................19

V. CONCLUSION.....................................................................................................22

[PROPOSED] BRIEF OF AMICUS CALIFORNIA CONSTITUTION SCHOLARS ISO PLS.' MOT. FOR TRO

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3 *Alden v. Maine*, 527 U.S. 706 (1999) ........................................................................... 18

4 *Blatchford v. Native Village of Noatak*, 501 U.S. 775 (1991) ..................................... 11

5 *Bond v. United States*, 564 U.S. 211 (2011) ................................................................. 12

6 *Bond v. United States*, 572 U.S. 844 (2014) ................................................... 11, 17, 20

7 *Brecht v. Abrahamson*, 507 U.S. 619 (1993) ............................................................... 18

8 *Charles v. Rice*, 28 F.3d 1312 (1st Cir. 1994) ............................................................... 8

9 *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ............................................... 18

10 *Coyle v. Smith*, 221 U.S. 559 (1911) ..................................................................... 11, 17

11 *Gilbert v. Minnesota*, 254 U.S. 325 (1920) ................................................................. 14

12 *Gonzales v. Oregon*, 546 U.S. 243 (2006) .................................................................. 18

13 *Gregory v. Ashcroft*, 501 U.S. 452 (1991) .................................................................. 18

14 *Haaland v. Brackeen*, 599 U.S. 255 (2023) ................................................................ 18

15 *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707 (1985) ............... 18

16 *Holmes v. California Nat. Guard*, 90 Cal.App.4th 297 (2001) ................................ 8, 9

17 *Holmes v. Jennison*, 39 U.S. 540 (1840) .................................................................... 19

18 *In re Sealed Case*, 551 F.3d 1047 (D.C. Cir. 2009) .................................................... 14

19 *Knutson v. Wisconsin Air Nat. Guard*, 995 F.2d 765 (7th Cir. 1993) .......................... 8

20 *Laird v. Tatum*, 408 U.S. 1 (1972) .............................................................................. 19

21 *Macias v. State of California*, 10 Cal.4th 844 (1995) ................................................. 22

22 *Marbury v. Madison*, 1 Cranch 137 (1803) ................................................................ 16

23 *Murphy v. National Collegiate Athletic Association*, 584 U.S. 453 (2018) ................ 15

24 *Nevada v. Hall*, 440 U.S. 410 (1979) .................................................................... 12, 20

25 *New York v. United States*, 505 U.S. 144 (1992) ........................................................ 15

26 *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022) .............................................. 17, 20

27 *Penn Dairies, Inc. v. Milk Control Comm'n of Pa.*, 318 U.S. 261 (1943) .................. 14

28 *People v. Markham*, 49 Cal.3d 63 (1989) ................................................................... 17

*Perpich v. Department of Defense*, 496 U.S. 334 (1990) .................................................. 8, 13, 14

*Printz v. United States*, 521 U.S. 898 (1997) .......................................................... 11, 15, 16, 18

*Shelby County, Ala. v. Holder*, 570 U.S. 529 (2013) ..................................................... 11, 12

*Skiriotes v. Florida*, 313 U.S. 69 (1941) ........................................................................... 17

*Spear v. Reeves*, 148 Cal. 501 (1906) ............................................................................. 21

*Stirling v. Brown*, 18 Cal.App.5th 1144 (2018) ............................................................... 8

*Susman v. City of Los Angeles*, 269 Cal.App.2d 803 (1969) .......................................... 21

*Torres v. Lynch*, 578 U.S. 452 (2016) .............................................................................. 12

*Torres v. Tex. Dep't of Pub. Safety*, 597 U.S. 580, 590 (2022) ..................................... 19

*Trump v. Vance*, 591 U.S. 786, 799 (2020) ............................................................... 12, 20

*United States v. California*, 921 F.3d 865 (9th Cir. 2019) ............................................. 16

*United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304 (1936). .............................. 19

*United States v. Lanza*, 260 U.S. 377 (1922) ................................................................ 17

*United States v. Lopez*, 514 U.S. 549 (1995) ...................................................... 11, 16, 20

*United States v. Wheeler*, 435 U.S. 313 (1978) ............................................................. 18

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ................................... 20

**Constitutional Provisions**

U.S. Const., art. I, § 10, cl. 3 ............................................................................................ 10

U.S. Const., art. I, § 8 ....................................................................................................... 16

U.S. Const., art. I, § 8, cl. 15 ........................................................................................... 12

U.S. Const., art. I, § 8, cl. 16 .............................................................................. 10, 12, 13

U.S. Const., art. II, § 2, cl. 1 ....................................................................................... 8, 13

U.S. Const., Amdt. 10 ............................................................................................... 11, 16

Cal. Const. art. V, § 1 ...................................................................................................... 19

Cal. Const. art. V, § 13 .................................................................................................... 19

Cal. Const., art. V, § 7 ...................................................................................... 10, 21, 22

**Statutes**

10 U.S.C. § 101 ...................................................................................................... 8

10 U.S.C. § 12406 ................................................................................................. 13

18 U.S.C. § 1385 ................................................................................................... 19

32 U.S.C. § 101 ...................................................................................................... 8

32 U.S.C. § 109 .................................................................................................... 10

32 U.S.C. § 110 ............................................................................................... 8, 10

32 U.S.C. § 502 .................................................................................................... 10

32 U.S.C. § 903–04 .............................................................................................. 10

Cal. Gov. Code § 8571 ......................................................................................... 22

Cal. Gov. Code § 8572 ......................................................................................... 22

Cal. Gov. Code § 8574 ......................................................................................... 22

Cal. Gov. Code § 8645 ......................................................................................... 22

Cal. Mil. & Vet. Code § 120 ............................................................................... 10

Cal. Mil. & Vet. Code § 121 ............................................................................... 10

Cal. Mil. & Vet. Code § 128 ............................................................................... 11

Cal. Mil. & Vet. Code § 140 ..................................................................... 8, 10, 21

Cal. Mil. & Vet. Code § 142 ............................................................................... 10

Cal. Mil. & Vet. Code § 146 ......................................................................... 11, 21

Cal. Mil. & Vet. Code § 550 ............................................................................... 10

**Regulations**

Nat. Guard Reg. (NGR) 500-5 § 4-1 ...................................................................... 8

NGR 500-5 § 4-1d ................................................................................................ 11

NGR 500-5 ............................................................................................................. 9

NGR 500-5 § 10-2 ............................................................................................. 9, 11

NGR 500-5, § 10-3 ................................................................................................. 9

NGR 500-5, § 10-4 ................................................................................................. 9

**Other Authorities**

11 Op.Cal.Atty.Gen. 253 ........................................................................................... 14

Susan B. Glasser and Michael Grunwald, *The Steady Buildup to a City's Chaos*, THE
    WASHINGTON POST, Sept. 11, 2005 ......................................................................... 21

Joseph R. Grodin, Darien Shanske, and Michael B. Salerno, THE CALIFORNIA STATE
    CONSTITUTION (Oxford University Press 2016) ......................................................... 17

Margaret Hu, *Reverse-Commandeering*, 46 U.C. DAVIS L. REV. 535 (2012) .............................. 15

Massachusetts National Guard Sgt. 1st Class Donald Veitch, Salem designated as National
    Guard birthplace, National Guard News, Aug. 20, 2010 ........................................... 8

**BRIEF**

**I.    STATEMENT OF INTEREST**

Amicus are California constitution scholars who seek to aid this Court in resolving an issue of state constitutional interpretation presented here. Stracener Decl. ¶ 1. We are academics affiliated with the California Constitution Center,[1] a nonpartisan academic research center at the University of California, Berkeley, School of Law. *See id.* The University of California is not party to this brief, and our academic titles are for identification only.

This brief will assist the Court by addressing the core issue: federalizing a state militia is lawful only when conditions set by Congress are met, and a president exceeds his powers in attempting to federalize a state militia over a governor's objection without meeting such conditions.

Consistent with Federal Rule of Appellate Procedure 29(a)(4)(E), Amicus certifies that no party or counsel for any party has authored the Brief, participated in its drafting, or made any monetary contributions intended to fund preparation or submission of the Brief.

**II.    SUMMARY OF ARGUMENT**

State militias can only be federalized under express statutory conditions. Those conditions are unmet here, so California's militia was unlawfully federalized. Even if those statutory conditions were met, the authorizing statutes are unconstitutional to that extent because they violate the Tenth Amendment's anti-commandeering principle, which forbids seizing state assets to enforce a federal policy. And even if federal statutory law can be so used, using a state militia for domestic law enforcement violates the Posse Comitatus Act. This Court should hold that the president's order (the "order") federalizing California's militia is unlawful.

**III.    FACTUAL BACKGROUND**

**A.    The National Guard has a unique, dual status.**

The United States National Guard is part of the national reserve military force; it comprises the Army National Guard and Air National Guard in each of the 50 states, the District

---

[1] David A. Carrillo is Executive Director of the California Constitution Center; Brandon V. Stracener is a Senior Research Fellow.

of Columbia, and U.S. territories. It evolved from America's first permanent militia regiments —

among the oldest still-serving units in the world, which were organized by the Massachusetts

Bay Colony in 1636.[2] In its modern form the Guard is a special military force because it serves

both as the militias for the 50 states, the District of Columbia and the territories, and as the

reserve force for the regular United States military.[3] The Guard "is an unusual military force

because it serves both as the militias for the 50 states . . . and as the reserve force for the United

States Army and Air Force."[4] Thus,, the Guard maintains a unique "dual status" with both state

and federal roles and missions.[5] The Guard may serve the state in times of local civil strife, or it

may be federalized during national emergencies. In each state the Guard is a state agency, under

state authority and control as the militia. Yet federal law accounts for much of the Guard's

composition and function.

All persons enlisting in a state militia simultaneously enlist in the U.S. National Guard.[6]

That makes them part of the Army's Enlisted Reserve Corps. But unless and until ordered to

active Army duty, they retain their status as state militia members.[7] "[U]ntil they are called into

active federal service, the various state National Guards are governed not by the federal

government, but by the individual states."[8]

The federal military prescribes regulations and issues orders to organize, discipline, and

govern the National Guard.[9] State governors are the commanders in chief of their militias.[10] The

president is the commander in chief of the Guard when under active federal duty status.[11] The

---

[2] See 10 U.S.C. § 101; 32 U.S.C. § 101; Massachusetts National Guard Sgt. 1st Class Donald Veitch, Salem designated as National Guard birthplace, National Guard News, Aug. 20, 2010.

[3] This description of the National Guard's legal status is drawn from *Knutson v. Wisconsin Air Nat. Guard*, 995 F.2d 765, 767 (7th Cir. 1993) (cert. den. (1993) 510 U.S. 933) and *Stirling v. Brown*, 18 Cal.App.5th 1144, 1151–53 (2018).

[4] *Stirling*, 18 Cal.App.5th at 1151.

[5] Nat. Guard Reg. (NGR) 500-5 § 4-1. See also *Perpich v. Department of Defense*, 496 U.S. 334, 340–46 (1990) (providing a brief history of the National Guard).

[6] *Perpich*, 496 U.S. at 345.

[7] *Ibid.*

[8] *Holmes v. California Nat. Guard*, 90 Cal.App.4th 297, 317 (2001).

[9] 32 U.S.C. § 110; see *Charles v. Rice*, 28 F.3d 1312, 1315 (1st Cir. 1994).

[10] See, e.g., Cal. Mil. & Vet. Code § 140.

[11] U.S. Const., art. II, § 2, cl. 1.

1  Guard's dual function and dual enlistment means a service member may serve in any one of

2  three statuses: state active duty status, Title 10 (active federal duty) status, or Title 32 (hybrid)

3  status.

4      Under state active duty status, a state is free to employ its militia under state control for

5  state purposes and at state expense as provided in the state's constitution and statutes. When

6  serving in a state active duty status militia members are under the command and control of the

7  governor and the state or territorial government.[12]

8      Title 10 status means the state militia member has been called into active federal duty

9  under the president's command. This federal service is performed under Title 10 U.S. Code, with

10  command and control resting solely with the president.[13] When employed at home or abroad in

11  Title 10 duty status, Guard forces are relieved of duties as a member of their state militia,

12  released from state control, and become elements of the Reserve Component of the federal

13  military force.[14]

14      Title 32 status is a hybrid in that a Guard member operates under state active duty and

15  under state control but in the service of the federal government. While under Title 32 status, the

16  Guard service member is on state active duty funded by the federal government but authorized,

17  organized, implemented, and administered by the state.[15] When conducting domestic law

18  enforcement support operations under Title 32, Guard members are under the command and

19  control of the state and thus in a state status, but paid with federal funds. Under Title 32, the

20  governor maintains command and control of Guard forces even though those forces are

21  employed "in the service of the United States" for a primarily federal purpose.[16]

22

23

24

25

26

---

[12] National Guard Regulation ("NGR") No. 500-5, § 10-2(a) & (b).

27  [13] NGR 500-5.

[14] NGR 500-5, § 10-4(a).

28  [15] *Holmes*, 90 Cal.App.4th at 317.

[16] NGR 500-5, § 10-3(a).

**B.    The California National Guard is the domestic state militia.**

The National Guard's hybrid nature is a product of the federal constitutional design. The federal constitution prohibits states from keeping troops without the consent of Congress.[17] It reserves to Congress the power "To provide for organizing, arming, and disciplining the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress."[18] Congress, in turn, has authorized states to keep both federally recognized militias (the National Guard) and non-federally recognized militias (known as state defense forces).[19]

The California National Guard is part of the active militia of this state.[20] The state militia consists of the National Guard, State Guard and the Naval Militia, and the unorganized militia.[21] "The unorganized militia consists of all persons liable to service in the militia, but who are not members of the National Guard, the State Guard, or the Naval Militia."[22] The state's militia exists to preserve the public peace and protect the state and nation. And it operates under the governor's command and control unless it is lawfully federalized, where it operates under the president's command and control.[23]

California's governor commands the state's militia.[24] California's governor "is the commander in chief of a militia that shall be provided by statute" and "may call it forth to execute the law."[25] The governor may order the militia to perform military duty of every description.[26] Whenever it is necessary to call up the unorganized militia, the governor may call

---

[17] U.S. Const., art. I, § 10, cl. 3.
[18] U.S. Const., art. I, § 8, cl. 16.
[19] See 32 U.S.C. § 109.
[20] Cal. Mil. & Vet. Code § 120.
[21] Cal. Mil. & Vet. Code § 120.
[22] Cal. Mil. & Vet. Code § 121.
[23] See Cal. Mil. & Vet. Code § 550; 32 U.S.C. §§ 110, 502(a) 502(f), 903–04.
[24] Cal. Const., art. V, § 7.
[25] Cal. Const., art. V, § 7; see also Cal. Mil. & Vet. Code § 140.
[26] Cal. Mil. & Vet. Code § 142.

1  for and accept as many volunteers as are required for such service.[27] The governor may call into

2  active service the active and the unorganized militia in case of (among others) tumult, riot,

3  breach of the peace, or resistance to the laws of this state or the United States.[28]

4      The governor has exclusive authority over National Guard members in state active duty

5  status.[29] Although the Posse Comitatus Act generally bars the president from using federalized

6  National Guard members within the United States for law enforcement and other purposes, there

7  is no similar bar against a governor's use of the militia within a state for law enforcement

8  purposes or to assist in emergency relief.[30]

9  **IV.    ARGUMENT**

10      **A.    Federal constitutional power over the militia is not exclusive.**

11      States have all powers not barred to them by the federal constitution because the same

12  document creates a federal government of only certain enumerated powers.[31] The states are

13  sovereign political entities that retained residual sovereignty on joining the Union.[32] Thus, when

---

15  [27] Cal. Mil. & Vet. Code § 128.

16  [28] Cal. Mil. & Vet. Code § 146.

17  [29] See NGR 500-5 § 10-2(a) ("National Guard Soldiers and Airmen serving in a state active duty status are under the command and control of the Governor and the state or territorial

18  government.").

[30] One primary exception to the prohibition on federal use of the military, including the National

19  Guard, within the United States is in the case of insurrection or rebellion. As set forth in NGR 500-5 § 4-1d(3): "In accordance with the Insurrection Act (10 USC §§ 331-335) and 10 USC §

20  12406, the President may call into federal service members and units of the National Guard of any State in such numbers as he considers necessary whenever the United States, or any of the

21  territories, commonwealths, or possessions, is invaded or is in danger of invasion by a foreign

22  nation; there is a rebellion or danger of a rebellion against the authority of the Government of the United States; or the President is unable with the regular forces to execute the laws of the United

23  States to repel the invasion, suppress the rebellion, or execute those laws. Orders for these purposes shall be issued through the governors of the States or, in the case of the District of

24  Columbia, through the Commanding General, Joint Force Headquarters, District of Columbia National Guard."

25  [31] The federal constitution "provides that all powers not specifically granted to the Federal

26  Government are reserved to the States or citizens." *Shelby County, Ala. v. Holder*, 570 U.S. 529, 543 (2013); *United States v. Lopez*, 514 U.S. 549, 552 (1995); *Bond v. United States*, 572 U.S.

27  844, 863 (2014).

[32] U.S. Const., Amdt. 10; *Printz v. United States*, 521 U.S. 898, 918–19 (1997); *Coyle v. Smith*,

28  221 U.S. 559, 567 (1911); *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991) (states entered the Union "with their sovereignty intact").

1  a federal power is not explicitly granted, the Tenth Amendment vests those powers in the

2  states.[33] For example, in exercising their plenary police powers, state legislatures are not limited

3  to Congress's enumerated powers.[34] This reservation of all things not expressly granted gives

4  states free rein to act wherever the federal government's power ends: absent a constitutional

5  provision barring a power from the states, powers that are not delegated to the federal

6  government are state powers.[35] The purpose of this federalist structure is to secure citizen liberty

7  by diffusing sovereign power.[36] And this allocation of reserved powers in our federal system

8  preserves the integrity, dignity, and residual sovereignty of the states.[37]

9          State militias are an example of this reserved state power. The state militias predate the

10  nation itself. As with all other sovereign state powers, states ceded control over their militias to

11  the Union only by the federal constitution's terms. The federal constitution provides that

12  organizing the militia is a shared state and federal responsibility.[38] As discussed next, it also

13  provides that Congress has exclusive power to define that relationship's terms by statute, and the

14  presidential order here does not meet those mandatory conditions.

15          **B.    Only Congress can define conditions for federalizing the militia.**

16          The federal constitution grants Congress power to "provide for calling forth the militia to

17  execute the laws of the union, suppress insurrections and repel invasions."[39] That is an exclusive

18  power of Congress to define by statute when the militia may be federalized. Congress is also

19  granted the power to provide for "organizing" the militia, "and for governing such part of them

20

21

22  [33] *Nevada v. Hall*, 440 U.S. 410, 425 (1979) (given Tenth Amendment's reminder that powers
    not delegated to the federal government nor prohibited to the states are reserved to the states or
23  to the people, courts should not assume that unstated limitations on state power were intended by
    the Framers), overruled in other respect by *Franchise Tax Bd. of California v. Hyatt*, 587 U.S.
24  230 (2019).
    [34] *Torres v. Lynch*, 578 U.S. 452, 457–58 (2016).
25  [35] *Trump v. Vance*, 591 U.S. 786, 799 (2020).
    [36] *Shelby County*, 570 U.S. at 543; *Bond v. United States*, 564 U.S. 211, 220–21 (2011)
26  (explaining that "the people, from whom all governmental powers are derived," have their
27  freedom enhanced by the creation of two governments, not one.).
    [37] *Bond*, 564 U.S. at 221.
28  [38] U.S. Const. art. I, section 8, cl. 16.
    [39] U.S. Const., art. I, § 8, cl. 15.

1  as may be employed in the service of the United States."[40] That also is an exclusive power to

2  provide by statute how and when the militia may be federalized. Together, "the Militia Clauses

3  are — as the constitutional text plainly indicates — additional grants of power to Congress."[41]

4           Granting this power to the federal legislative branch necessarily denies it to the federal

5  executive, making it exclusive to Congress. Thus, the federal constitution makes the president

6  commander in chief of the militia only "when called into the actual service of the United

7  States."[42] Thus, the president can only call a state militia into federal service on conditions set by

8  statute and can command a state militia only when it is in active federal service, as defined in

9  statute by Congress.

10          Congress has done so, with 10 U.S.C. § 12406 and the Insurrection Act. Of the two, only

11 section 12406 is implicated here. Section 12406 originated in the 1903 Dick Act, the first in a

12 series of congressional enactments that transformed the state militias into what is now the

13 National Guard. At first, the 1903 text ignored the state governors and granted the president

14 unilateral authority. But Title 10 was recodified in 1956, and the statute's second sentence was

15 amended to its current phrasing, which requires federalizing orders to be issued through state

16 governors: "Orders for these purposes shall be issued through the governors of the States."[43] By

17 contrast, sections 252 and 253 of the Insurrection Act are unilateral and designed for a state

18 defying federal authority. On those rare occasions when presidents have wrested control of a

19 militia away from a governor, it has always been done through the Insurrection Act, not through

20 section 12406.

21          Even with this congressional authorization, the domestic military is not truly an exclusive

22 federal power. States have significant residual police powers that overlap with Congress's power

23 over the military. On that basis, the Supreme Court previously dismissed a claim that "all power

24 of legislation regarding" military matters "is conferred upon Congress and withheld from the

25

26

---

27  [40] U.S. Const., art. I, § 8, cl. 16.
    [41] *Perpich*, 496 U.S. at 349.
28  [42] U.S. Const., art. II, §1.
    [43] 10 U.S.C. § 12406.

1    States," upholding state legislation on enlistment in the U.S. Army and Navy.[44] The high court

2    rejected the idea "that a State has no interest or concern in the United States or its armies or

3    power of protecting them from public enemies," eschewing "[c]old and technical reasoning" that

4    "insist[s] on a separation of the sovereignties" in the army-raising context.[45] Similarly, the court

5    held that "there is no clause of the Constitution which purports, unaided by Congressional

6    enactment, to prohibit" states from exercising their police powers in ways that arguably burden

7    congressional power to raise and support armies.[46] Thus, from both a federal constitutional

8    perspective and a state sovereignty view, declaring that the president is commander in chief is

9    not sufficient. Instead, the president must show that his order meets statutory requirements. As

10   discussed next, it fails that test.

11
**C.    The order does not satisfy the statutory conditions for federalizing California's militia.**

12

13   As the California Attorney General's memorandum shows, the statutory terms for

14   federalizing California's militia here are unmet. (We will not retread that discussion.) Absent

15   that statutory and constitutional authority, the president exceeds his power in seizing command

16   of the militia. Unless lawfully called into federal service, a California militia member remains

17   under the state governor's command.[47] This state affiliation may be suspended in favor of a

18   federal affiliation only during the period of active duty.[48] What changes when the militia passes

19   in and out of active federal duty is the chain of command. When called into federal service under

20   section 12406, the California militia operates under the direct command of the Secretary of the

21   Army; otherwise, the state militia operates as reserves of the Army.[49] Under section 12301,

22   militia members regain state status and report directly to the governor.[50] Without a valid

23   statutory basis for transferring command over a state militia, the president lacks constitutional

24   
---

25   [44] *Gilbert v. Minnesota*, 254 U.S. 325, 327–28 (1920).

     [45] *Id.* at 328–29.

26   [46] *Penn Dairies, Inc. v. Milk Control Comm'n of Pa.*, 318 U.S. 261, 269 (1943).

27   [47] 11 Op.Cal.Atty.Gen. 253 (National Guard officer when not in federal service belongs to a state force under command of governor).

     [48] *Perpich*, 496 U.S. at 349.

28   [49] *In re Sealed Case*, 551 F.3d 1047, 1050–51 (D.C. Cir. 2009) (citing 10 U.S.C. § 10107).

     [50] *Ibid.*

1   power to order California militia units into federal service.

2       The remainder of this discussion assumes that this Court agrees with the California

3   Attorney General that the order does not comply with section 12406. Because the order operates

4   outside that authority, it violates the Tenth Amendment's anti-commandeering principle by

5   seizing state assets to enforce a federal policy — here, immigration laws.

6       **D.    The order violates the Tenth Amendment's anti-commandeering doctrine.**

7       The order here is invalid because it violates the anti-commandeering doctrine. That rule

8   bars the federal government from conscripting states to implement federal policy.[51] Rooted in the

9   Tenth Amendment, this federalism doctrine protects state sovereignty by policing "the vertical

10  separation of powers between the state and federal governments."[52] The anti-commandeering

11  doctrine bars the federal government from forcing state assets to implement federal immigration

12  policy. Thus, federalizing California's militia to assist federal immigration enforcement is

13  precisely the commandeering that the Tenth Amendment forbids.

14      The anti-commandeering doctrine preserves the constitutional design "to withhold from

15  Congress the power to issue orders directly to the States."[53] As a body with only enumerated

16  powers, that Congress has no enumerated legislative power to directly order the states means that

17  it lacks that power.[54] The doctrine also flows from the Tenth Amendment principle that states are

18  sovereign and cannot be forced to execute federal laws. Anti-commandeering applies to all state

19  assets, law enforcement, and — barring lawful federalization — the militia alike. This remains

20  true with partial federal control over the militia because that control exists only in statutory

21  conditions unmet here. Thus, the order violates the Tenth Amendment.

22      The anti-commandeering principle dictates that "Congress cannot issue direct orders to

23  state legislatures," and states can refuse to adopt federal policies.[55] Although federal statutes may

24

25  _____

26  [51] See *Printz*, 521 U.S. at 935 ("Congress cannot compel the States to enact or enforce a federal regulatory program.").

27  [52] Margaret Hu, *Reverse-Commandeering*, 46 U.C. DAVIS L. REV. 535, 548–49 (2012).

28  [53] *Murphy v. National Collegiate Athletic Association*, 584 U.S. 453, 470 (2018).
    [54] *Ibid.*
    [55] *Murphy,* 584 U.S. at 475. See *New York v. United States*, 505 U.S. 144, 161–62 (1992).

require states to provide information to the federal government, they cannot force states to

participate "in the actual administration of a federal program" or policy.[56] States may "refrain

from assisting with federal efforts."[57] The doctrine applies even when the federal executive has

clear federal power to execute a federal policy — states cannot be compelled to execute federal

policy.

Even if the president had complied with statutory requirements here, federalizing the

militia in this instance would be unconstitutional. The president's order justifies the action "to

temporarily protect ICE" and other federal agents in "the enforcement of Federal law." And

other presidential statements listed in California's complaint show an intent to use the militia for

federal law enforcement, specifically civil immigration. All that may in theory match with

section 12406 authority to use the militia to execute federal laws (if that section actually applied

here). But anticommandeering forbids this use of state resources to enforce federal policy. Thus,

even if president employed the required statutory procedure, the federal statute's substance is

unconstitutional to the extent it permits use of California's militia to support federal immigration

enforcement.

**E.    The order violates the Tenth Amendment's reservation of police powers to the states.**

Federalizing a state militia for intra-state law enforcement violates the Tenth Amendment

by usurping the exclusive state police powers. The federal government lacks a general police

power to enact and enforce laws for community welfare and order; it instead possesses only

limited authority to prohibit and punish crimes. "The Constitution creates a Federal Government

of enumerated powers."[58] As with its powers generally, Congress has only limited authority over

crime. "The Constitution," in short, "withhold[s] from Congress a plenary police power."[59]

---

[56] *Printz,* 521 U.S. at 917–18.

[57] *United States v. California*, 921 F.3d 865, 891 (9th Cir. 2019).

[58] *Lopez*, 514 U.S. at 552; see U.S. Const., art. I, § 8; *Marbury v. Madison*, 1 Cranch 137, 176 (1803) ("The powers of the legislature are defined, and limited; and that those limits may not be mistaken, or forgotten, the constitution is written").

[59] *Lopez*, 514 U.S. at 566; see U.S. Const., art. I, § 8; Amdt. 10.

1    Those matters are instead exclusive state subjects. The federal government therefore

2    exceeds its power to federalize a state militia by trying to enforce state laws, such as the crowd

3    control and public order laws implicated here. Keeping the peace (even during civil unrest) is a

4    state responsibility, as is the decision to deploy the militia to supplement local law enforcement.

5    Absent a showing that the president is unable with the regular forces to execute the laws of the

6    United States, isolated incidents of civil unrest are inadequate to withdraw militia command from

7    the governor.

8    By contrast, state legislatures are vested with plenary lawmaking power. Unlike

9    Congress, which only holds the specific powers delegated to it by the federal constitution, the

10    California legislature has plenary legislative authority, except as limited by the California

11    constitution.[60] The police power, a state's "broad authority to enact legislation for the public

12    good," is constrained only by the limits of the state's own constitution or the federal charter.[61]

13    States retaining their sovereignty when they joined the Union means that states are the

14    repositories of traditional police powers. "The powers reserved to the several States will extend

15    to all the objects, which, in the ordinary course of affairs, concern the lives, liberties and

16    properties of the people; and the internal order, improvement, and prosperity of the State."[62]

17    Keeping the local peace is California's power and responsibility. California's plenary

18    power to regulate civil unrest derives from the separate and independent sources of power and

19    authority that originally belonged to the states before admission to the Union, preserved to them

20    by the Tenth Amendment.[63] Every state is "competent to exert that residuum of sovereignty not

21    delegated to the United States by the Constitution itself."[64] Thus, California "has the power,

22

23

24

25    [60] Joseph R. Grodin, Darien Shanske, and Michael B. Salerno, THE CALIFORNIA STATE
CONSTITUTION (Oxford University Press 2016) at 139.

26    [61] *Bond*, 572 at 854 (the federal government has no analogue to states' broad authority to enact
legislation for the public good); *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 636 (2022) (a state is

27    generally "entitled to the sovereignty and jurisdiction over all the territory within her limits").

28    [62] *People v. Markham*, 49 Cal.3d 63, 72 (1989) (citing The Federalist, No. 45).
[63] *United States v. Lanza*, 260 U.S. 377, 382 (1922).
[64] *Coyle v. Smith*, 221 U.S. at 567; *Skiriotes v. Florida*, 313 U.S. 69, 77 (1941).

1  inherent in any sovereign, independently to determine what shall be an offense against its

2  authority and to punish such offenses."[65] Breach of the peace is just such an offense.

3      The president would not succeed with a preemption argument here. The Supreme Court

4  assumes that the historic police powers of the states are not superseded by federal law unless

5  Congress expresses a clear and manifest purpose to do so.[66] Under the background principles of

6  our federal system, the areas traditionally left to state control using their police power are too

7  numerous to list.[67] To encroach on those areas, Congress must "make its intention clear and

8  manifest [that] it intends to pre-empt the historic powers of the States."[68] Even a statement of

9  intent to preempt may be inadequate if Congress infringes on areas of traditional state control.

10  The broad state police power is not limited by the mere existence of enumerated federal powers

11  because "Article I gives Congress a series of enumerated powers, not a series of blank checks."[69]

12  Other than perhaps section 12406 (which does not apply here), no federal statute would supply

13  the preemptive intent necessary to override California's historic police powers over public order.

14      To the extent that the president relies here on a federal statute for authority to use state

15  assets for general policing purposes, that exceeds the federal legislative power. If these statutes

16  are so read, then Congress has encroached on states' traditional police powers to define the

17  criminal law and to protect the health, safety, and welfare of their citizens.[70] Congress cannot by

18  statute enlist state government assets for general *federal* policing purposes (unconnected to any

19  specific federal crime) such as crowd control purposes here. In doing so Congress would be

20  using its incidental authority to subvert basic principles of federalism and dual sovereignty,

21  which it cannot do.[71]

---

[65] *United States v. Wheeler*, 435 U.S. 313, 320 (1978).
[66] *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).
[67] See *Gonzales v. Oregon*, 546 U.S. 243, 274 (2006).
[68] *Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991) (internal quotation marks and citation omitted).
[69] *Haaland v. Brackeen*, 599 U.S. 255, 276 (2023).
[70] *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993); *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 719 (1985).
[71] *Printz*, 521 U.S. at 923–24; *Alden v. Maine*, 527 U.S. 706, 732–33 (1999).

1       Today's facts are local law enforcement within the jurisdiction of California's governor

2 and attorney general, not an invasion or insurrection.[72] Were this a declared war, a sudden

3 military invasion, or an organized domestic rebellion, the president's power would be

4 undisputed.[73] Yet those conditions are absent here, and in the ordinary course the notion that

5 states may call out the militia to respond to genuine exigencies is uncontroversial. Because the

6 events at hand are at most ordinary civil unrest within local capabilities, no federal statute could

7 constitutionally encroach on state power here.

8       Even if the president dodges these impediments, his order is made unlawful by the Posse

9 Comitatus Act.[74] Since 1878, Congress has by statute forbidden the use of federal military

10 personnel to enforce domestic policies within any of the states. Even if California's militia were

11 lawfully federalized, they are now federal military troops. As such, their use for the domestic law

12 enforcement task of quelling civil unrest is barred by the Posse Comitatus Act.

13     **F.**    **Lacking Congressional authority, the president's power is at its lowest ebb.**

14       With congressional permission absent, the president can only apply his inherent powers

15 against those of the State of California and its governor.

16       Justice Jackson's concurrence in *Youngstown* for resolving conflicts between Congress

17 and the president applies equally well to conflicts between state power and federal executive

18

19

---

20 [72] Cal. Const. art. V, § 1 (supreme state executive power is vested in the governor, who "shall see
that the law is faithfully executed"), and art. V, § 13 (attorney general is state's chief law
21 enforcement officer with a duty "to see that the laws of the State are uniformly and adequately
enforced").

22 [73] The federal constitution divests the states of war powers and "[t]he States ultimately ratified
23 the Constitution knowing that their sovereignty would give way to national military policy."
*Torres v. Tex. Dep't of Pub. Safety*, 597 U.S. 580, 590 (2022); *Holmes v. Jennison*, 39 U.S. 540,
24 551 (1840) ("The powers of war and peace, and of making treaties, are conferred upon the
general government; and at the same time, expressly prohibited to the states."); *United States v.
25 Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 318 (1936).

26 [74] 18 U.S.C. § 1385 ("Whoever, except in cases and under circumstances expressly authorized by
the Constitution or Act of Congress, willfully uses any part of the Army, the Navy, the Marine
27 Corps, the Air Force, or the Space Force as a posse comitatus or otherwise to execute the laws
shall be fined under this title or imprisoned not more than two years, or both."); *Laird v. Tatum*,
28 408 U.S. 1, 32 (1972) (Reconstruction Era statute forbids the use of military troops as a posse
comitatus).

orders.[75] *Youngstown* discussed horizontal separation of powers — yet the same framework applies equally well to vertical federalism conflicts between the federal executive and the states. Most state–federal conflicts have seen Congress attempting to impose its legislative power on the states. By contrast, there is scant authority on the federalism implications of states opposing federal executive power. *Youngstown* best suits that scenario.

Through that lens, the president's power here is at its lowest ebb. He acts without congressional authority, so he may rely only on his own powers. But the president lacks any direct power to federalize the militia, with the federal constitution assigning that authority exclusively to Congress. Thus, the president's power here is dependent on congressional authorization, and lacking that the president can rely only on his own inherent powers. Those are inadequate against California's sovereign power as a state.

States have maximum power in this scenario, where the federal executive lacks an express or necessarily implied constitutional power. In such cases the police power, a state's "broad authority to enact legislation for the public good," is constrained only by the limits of the state's own constitution or the federal charter.[76] By contrast, the federal constitution creates a federal government of only certain enumerated powers.[77] Thus, when a federal power is not explicitly granted, the Tenth Amendment vests those powers in the states.[78] Absent a constitutional provision barring a power from the states, powers that are not delegated to the federal government are state powers.[79]

---

[75] *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952).
[76] *Bond*, 572 U.S. at 854 (in our federal system the national government possesses only limited powers and the states and the people retain the remainder; the federal government has no analogue to states' broad authority to enact legislation for the public good and instead "can exercise only the powers granted to it"); *Oklahoma*, 597 U.S. at 636 (a state is generally "entitled to the sovereignty and jurisdiction over all the territory within her limits").
[77] *Lopez,* 514 U.S. at 552; *Bond,* 572 U.S. at 863 (citations omitted).
[78] *Nevada*, 440 U.S. at 425 (given Tenth Amendment's reminder that powers not delegated to the federal government nor prohibited to the states are reserved to the states or to the people, courts should not assume that unstated limitations on state power were intended by the Framers), overruled in other respect by *Franchise Tax Bd. of California v. Hyatt*, 587 U.S. 230 (2019).
[79] *Trump*, 591 U.S. at 799.

1    Here, California's governor has explicit state constitutional power to command the state's

2    militia.[80] It is a discretionary state executive power: "When and under what circumstances the

3    National Guard should be called into action to preserve the peace and to protect property is a

4    matter within the discretion of the Governor [] and . . . is not open to judicial inquiry or

5    review."[81] Because the state constitution vests the supreme executive power in the governor and

6    imposes on that officer a duty to see that the laws are faithfully executed, that duty also applies

7    to constitutional provisions — such as commanding the militia.[82] California's governor also has

8    explicit statutory powers over the militia.[83]

9    With the state governor as commander in chief of the state's militia, a presidential order

10   federalizing the state militia under section 12406 requires orders issued through the state

11   governor. California law mirrors this requirement, permitting the militia to respond upon "call or

12   requisition of the President of the United States."[84] Absent that authority, the state governor

13   retains command and can order militia units to withdraw.

14   Indeed, Congress arguably has already negated any argument that a president has

15   unilateral authority to override a state governor in calling up the militia. President George W.

16   Bush once declined to activate Florida's militia over the state governor's objection, uncertain

17   about the legality of doing so.[85] Congress attempted to resolve that ambiguity by expanding

18   presidential authority to mobilize the National Guard in the National Defense Authorization Act

19   of 2007 — which allowed the president to federalize the Guard without state governor consent.

20   But after all 50 governors objected, Congress repealed it the following year, reverting the law to

21   its original text. Thus, section 12406 still mandates that federalizing orders be issued through the

22   governors. Nor does 10 U.S.C. § 12301 (which arguably permits militia federalization over a

23

---

24   [80] Cal. Const., art. V., § 7 ("The Governor is commander in chief of a militia that shall be

25   provided by statute. The Governor may call it forth to execute the law.").
     [81] *Susman v. City of Los Angeles*, 269 Cal.App.2d 803, 818–19 (1969).

26   [82] *Spear v. Reeves*, 148 Cal. 501, 504 (1906).
     [83] Cal. Mil. & Vet. Code § 140 ("The Governor of the State, by virtue of his office, is the

27   Commander in Chief of the Militia of the State.").
     [84] Cal. Mil. & Vet. Code § 146(b).

28   [85] See Susan B. Glasser and Michael Grunwald, *The Steady Buildup to a City's Chaos*, THE
     WASHINGTON POST, Sept. 11, 2005.

[PROPOSED] BRIEF OF AMICUS CALIFORNIA CONSTITUTION SCHOLARS ISO PLS.' MOT. FOR TRO

1  governor's objection) apply here — it covers only "active duty outside the United States, its

2  territories, and its possessions."

3      Finally, there is no argument that lack of state power requires federal intervention.

4  California's governor has constitutional and statutory authority to muster the militia and order it

5  to "execute the law."[86] Beyond that, California's governor has power to declare a state of

6  emergency under the Emergency Services Act (ESA).[87] The ESA grants broad gubernatorial

7  powers in the event of a declared emergency, including the power to suspend laws, commandeer

8  private property or personnel, and spend from available funds (overriding the state legislature's

9  otherwise-exclusive appropriation power).[88] The ESA's primary purpose is to allow a governor

10 to coordinate the "most effective use" of resources during a crisis.[89] California's governor is

11 well-armed against any catastrophe; more so against the transient and diminishing events here.

12 **V.    CONCLUSION**

13     The constitutional order should prefer that local actors solve local problems. Any civil

14 unrest here has a localized nature best suited for the governor, who is both closer to the action

15 and has express state constitutional and statutory authority to command the militia as needed in

16 an emergency. On these facts, and with this failure to comply with the applicable statutory

17 procedure, the president has exceeded his authority. This Court should so hold and grant

18 Plaintiffs' requested relief.

19

20  DATED:  June 11, 2025

21

22                              By:   /s/ Brandon V. Stracener

23                              David A. Carrillo (State Bar # 177856)
                                Brandon V. Stracener (State Bar # 314032)
24                              Amicus California Constitution Scholars

25

26  _____

27  [86] Cal. Const., art. V, § 7.
    [87] Cal. Gov. Code § 8574.
28  [88] Cal. Gov. Code §§ 8571–72, 8645.
    [89] *Macias v. State of California*, 10 Cal.4th 844, 854 (1995).

1

## CERTIFICATE OF SERVICE

2

I hereby certify that I caused to be filed a true and accurate copy of the foregoing

3

document with the Clerk of Court using the CM/ECF system, which automatically sends

4

an electronic notification to all attorneys of record in this case.

5

DATED:  June 11, 2025

6

7

By:   _/s/ Brandon V. Stracener_

8

David A. Carrillo (State Bar # 177856)
Brandon V. Stracener (State Bar # 314032)

9

Amicus California Constitution Scholars

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] BRIEF OF AMICUS CALIFORNIA CONSTITUTION SCHOLARS ISO PLS.' MOT. FOR TRO