Andrew G. Watters (#237990)
555 Twin Dolphin Dr., Ste. 135
Redwood City, CA 94065
+1 (650) 542-0057
andrew@watters.law

Attorney for Amicus Curiae Blue Eagle Coalition,
an unincorporated association

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAVIN NEWSOM, In his official capacity as the Governor of the State of California; STATE OF CALIFORNIA,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>DONALD TRUMP, In his official capacity as the President of the United States; PETE HEGSETH, In his official capacity as Secretary of the Department of Defense; US DEPARTMENT OF DEFENSE,<br><br>　　　　　Defendants.<br><br>BLUE EAGLE COALITION, an unincorporated association,<br><br>　　　Amicus Curiae. | Case No: 3:25-cv-04870-CRB<br><br>[~~PROPOSED~~] MEMORANDUM OF AMICUS CURIAE BLUE EAGLE COALITION IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER<br><br>Date: June 12, 2025<br>Time: 1:30 p.m.<br>Place: Zoom<br><br>The Honorable Charles Breyer<br>Senior District Judge |

## INTRODUCTION

The purpose of this brief is to offer to the Court the perspective of interested, affected, and impacted third parties, some of whom are civilian attorneys in California. As indicated in the initial meet-and-confer email message to the parties' counsel, this Amicus Curiae has two primary concerns with this action: first, Plaintiffs have filed a Complaint and other papers that are clearly subject to Rule 11 because they are contrary to the U.S. Constitution and Federal law, which implicates the duties of attorneys admitted in California and this District. The issue for the members of Amicus Curiae is that holding State government attorneys to a different standard than private attorneys and allowing State attorneys to flagrantly challenge the Federal government deprives civilians of equal protection when they get in trouble for far less. Second, on the merits, the Complaint and application for a Temporary Restraining Order are patently baseless, filed in the wrong venue, and beyond the scope of the Governor's ability to present legal challenges to the President. The action should be dismissed under Rule 11, or, if the Court reaches the merits, dismissed under Rule 12(b) on multiple bases. In that connection, this Amicus Curiae unequivocally supports Defendants in their efforts to enforce Federal law, restore order to Los Angeles, and promote the causes they are seeking to promote. Defendants have consented to this filing; Plaintiffs "take no position" on the request. Accordingly, this Amicus Curiae is concurrently filing an ex parte application for leave to file this proposed memorandum. Given the extreme time pressure and time constraints of an ongoing riot, this memorandum is submitted as a proposed filing attached to the application, on the pretense that this Amicus Curiae will be permitted to participate in the action.

## FACTS

As it is impracticable to obtain declarations from either side and the situation is continuously rapidly developing, all of the facts relied on herein are summarized from the parties' public statements on television and social media platforms from June 6 to June 11, 2025.

According to the Governor, as well as the non-party Mayor of Los Angeles, there have been "mostly peaceful" "protests" against the Federal government's efforts to enforce Federal immigration law. To that end, the Mayor of Los Angeles has been holding press conferences in

which she states that the City government will not cooperate with Federal immigration enforcement, that the President provoked the protests, and that the President should withdraw the National Guard from Los Angeles. The Governor has echoed these statements while also mounting a public relations campaign against the President, in which the Governor claims the President is a "dictator" and that the President is threatening to arrest the Governor. Of key note, the Governor claims that he was never contacted by the President and offered an opportunity to call up the National Guard.

According to the President, there are violent agitators, insurrectionists, and even paid anarchists who are violently attacking law enforcement, destroying property, and looting, all while waving foreign flags. The images are plentiful on X and other social media platforms, samples of which are attached to the supporting Declaration of Andrew Watters. The President also produced proof that he called the Governor after midnight on June 7, 2025 – the early morning of the second day of rioting – and spoke with the Governor for 16 minutes. The President states he asked the Governor to "get his ass in gear" and handle the unlawful violence. After this call, according to the President, the Governor failed to act. Thus, the President issued his June 7, 2025 proclamation later that day ordering the deployment of 2,000 National Guardsmen to Los Angeles, later supplemented by active duty Marines and more National Guardsmen.

According to multiple polls, the majority of the public supports the President's deployments to Los Angeles. It is against this context and background that recourse to the applicable law is critical.

ARGUMENT

I.

VENUE IS IMPROPER IN THE NORTHERN DISTRICT,

BUT WOULD BE PROPER IN THE CENTRAL DISTRICT.

On the threshold issue of venue, pursuant to 28 U.S.C. § 1391(e), lawsuits brought against government officers in their official capacities or against government agencies may be brought in any judicial district in which (1) a defendant in the action resides; (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the

subject of the action is situated; or (3) the plaintiff resides **if no real property is involved in the action.** In the present case, Plaintiffs have improperly cited venue as proper in the Northern District under 28 U.S.C. § 1391(e)(3), alleging that no real property is involved in this action. This Court should reject Plaintiffs' argument that no real property is involved in the current proceeding and transfer this action to the Central District of California pursuant to 28 U.S.C. § 1406(a) for the reasons set forth below.

    The District Court for the Northern District of California has previously contemplated why certain types of actions can properly be classified as involving real property. (See, e.g., *Ctr. for Biological Diversity v. United States BLM*, 2009 U.S. Dist. LEXIS 34249 (N.D. Cal. 2009). The District Court in that action found that "an action involves real property if it is a suit involving the protection or recovery of real property or an estate therein." *Id.* (emphasis added) (quoting *Ferguson v. Lieurance*, 565 F. Supp. 1013 (D. Nev. 1983). In *Ctr. for Biological Diversity*, the District Court found the facts distinguishable from other cases that "only peripherally" involve real property because the action "directly concerns the management of lands" under federal law. *Id.* The Court specifically stated: "The proposition that an action for declaratory relief to hold void and unenforceable any statutes, rules, regulations or practices which prescribe essential preliminary steps or procedures to initiate entry on the public lands of the United States under the public land laws is not an action involving real property is a legal sophistry." *Id.* at 1015. In other words, **an action centered around entry upon Federal property and/or the rules, regulations, and protection of same is an action involving real property for venue purposes.** It should be noted that the District Court in *Ctr. for Biological Diversity* found that the action could have been brought in the Central District of California, and the District Court ultimately transferred the action there according to law, just as this action should be.

    In the present case, Plaintiffs seek declaratory relief that the June 7, 2025, Presidential Memorandum issued is unauthorized and contrary to Federal law, primarily 10 U.S.C. § 12406. The Presidential Memorandum was issued, in part, because the "violent protests threaten the security of and significant damage to Federal immigration detention facilities and other Federal property." Whether or not the President may invoke 10 U.S.C. § 12406 as a vehicle for protecting

Federal property directly concerns the management of lands under Federal law and the rules, regulations, and procedures for entry upon same. Additionally, this action also falls within the language used in *Ferguson, supra,* because it concerns the "protection" of real property. *Id.* at 1014. The President has stated throughout the recent events that he is seeking to protect Federal property and personnel performing their duties on that property. Just as the District Court has previously held, this Court again should find that the claims in an action seeking to block the President's protection of Federal property "involve real property" for the purposes of venue; to hold other wise would be promote a "legal sophistry" of the kind found in *Ctr. for Biological Diversity v. U.S. BLM, supra.* The Court should transfer the action forthwith without even reaching the merits.

## II.

## PLAINTIFFS' COUNSEL FILED THIS ACTION IN VIOLATION OF RULE 11 BECAUSE IT IS KNOWINGLY CONTRARY TO THE U.S. CONSTITUTION AND FEDERAL LAW.

The Oath taken by all California-admitted attorneys, including the Deputy Attorneys General who filed this action, is:

I, (licensee name) solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of the State of California, and that I will faithfully discharge the duties of an attorney and counselor at law to the best of my knowledge and ability. As an officer of the court, I will strive to conduct myself at all times with dignity, courtesy and integrity.

There are additional duties imposed by statute, case law, and ethical rules, such as the duties:

1. "To support the Constitution and laws of the United States and of this state." Cal. Bus. and Prof. Code sec. 6068(a).

2. "To counsel or maintain those actions, proceedings, or defenses only as appear to him or her legal or just, except the defense of a person charged with a public offense." Cal. Bus. and Prof. Code sec. 6068(c).

3. "Not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest." Cal. Bus. and Prof. Code sec. 6068(g)

Of critical importance, the Supremacy Clause in the Constitution clearly gives Federal law precedence– and also *logically must* require a California attorney to support Federal law when

there is a conflict with State law. See, e.g., the recent cases of *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015) and *Kansas v. Garcia*, 589 U.S. 191 (2020).

In *Armstrong*, the Supreme Court wrote:

The Supremacy Clause, Art. VI, cl. 2, reads:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

It is apparent that this Clause creates a rule of decision: Courts "shall" regard the "Constitution," and all laws "made in Pursuance thereof," as "the supreme Law of the Land." They must not give effect to state laws that conflict with federal laws. [...] It instructs courts what to do when state and federal law clash....

This duty to favor Federal law is reinforced in Rule 1.2.1. of the California Rules of Professional Conduct, which prohibits advising violations of law; when State and the Federal law are in conflict, the attorney is required to advise the client of the consequences under both sets of laws, as noted in the official comments: "If California law conflicts with federal or tribal law, the lawyer must inform the client about related federal or tribal law and policy and under certain circumstances may also be required to provide legal advice to the client regarding the conflict." Official Comment 6.

From the Supremacy Clause, the applicable state statutes, and the applicable case law, it is obvious that a California-admitted attorney has or should have a duty to favor Federal law over State law. It does not matter whether the attorney agrees or disagrees with the President; the law and public policy impose allegiance to the United States before the attorney's State of residence– just as the attorney is a citizen of the United States before a citizen of his or her own State. This is critically important in order to ensure the continued functioning of both the State and Federal Government.

Indeed, the State Bar of California has discussed similar issues when ruling that state-licensed attorneys are subject to discipline for their actions in Federal court: " '[i]f an attorney admitted to practice in the courts of this state commits acts in reference to federal court litigation which reflect on his integrity and fitness to enjoy the rights and privileges of an attorney in the state courts,

proceedings may be taken against him in the state court.'" *In the Matter of Gadda* (Review Dept. 2002) 4 Cal. State Bar Ct. Rptr. 416, 420, quoting *Geibel v. State Bar* (1938) 11 Cal.2d 412, 415."

Even assuming, for the sake of argument, that there is no precedence of Federal law for a state-licensed attorney, *the attorney still must uphold Federal law* for the reasons previously stated. Because the attorneys filing this action are in dereliction of their duties to uphold Federal law, the Court should find a Rule 11 violation and dismiss this action or otherwise sanction Plaintiffs' counsel. To hold otherwise would permit California government attorneys to disregard Federal law and create a double standard in which civilian attorneys are held to a stricter set of rules– because civilian attorneys get in trouble for far less serious things than trying to sue the President to stop him from enforcing Federal law and protecting Federal facilities and personnel.

## III.

## DEFENDANTS ARE ENTITLED TO DENIAL OF THE REQUESTED T.R.O. AND IMMEDIATE DISMISSAL UNDER RULE 12 ON THE COURT'S OWN MOTION.

The President is absolutely immune from civil liability for Presidential acts. *Nixon v. Fitzgerald*, 457 U.S. 731 (1982). The separation of powers principle gives rise to absolute immunity, which is an important matter of public policy. The President has greater protections than governors and other officials, who have qualified immunity, since the President holds a unique position in the structure of government and has uniquely important duties. The distractions caused by defending a civil lawsuit would improperly distract the President from fulfilling his executive function, which would undermine the government more broadly. There is no cause for concern that the President will be above the law, since impeachment and other processes impose checks on his powers. "While the separation of powers doctrine does not bar every exercise of jurisdiction over the President, a court, before exercising jurisdiction, must balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch." *Nixon* at 732.

It is precisely an intrusion on the Executive Branch that the Plaintiffs are attempting to make here. The Governor, citing statutory language that clearly is incomplete and/or procedural in nature, while also omitting statutory language that clearly does apply, is misleading the Court as

to his true intentions. The Governor's endgame appears to be *to keep in California persons who are illegally in the United States* because California's electoral vote will decrease if those individuals are removed *en masse* from California, due to the apportionment of electoral votes based on population. Essentially, if California loses millions of persons without legal status, there will be less electoral votes and fewer Congressional representatives, which would be harmful to the Governor's political party. This obvious self-interest and the promotion of political gain permeates the Governor's filings in this action.

In any case, the Governor's effort is futile because "the authority to call forth the militia has been vested in the President, **who is the sole judge of the exigency justifying the call.** *Martin v. Mott*, 16 Wheat., 19." *Alabama G. S. R. Co. v. United States*, 49 Ct. Cl. 522 (1914) (emphasis added). See also *Presser v. Illinois*, 116 U.S. 252 (1886) (discussing Illinois state law on the militia in conjunction with the Constitution and Acts of Congress).

The *discretionary function* of the President in deciding whether to call forth the National Guard for Federal service is not subject to any form of attempted mandate by the Governor in this Court, simply because the authority to call forth the militia for Federal service has been exclusively vested in the President. The discretionary function of deciding to use force to protect Federal facilities and personnel is exactly the type of decision the President is supposed to make, and it is not ministerial in the least. As such, the Governor is not in a position to second-guess the President's decision to call up the National Guard, especially for his own political reasons. The T.R.O. sought by the Governor is also an attempt to interfere with the Federal function of protecting each State from "Invasion" as well as "Domestic Violence," both of which are expressly enumerated powers of the President in the Constitution. The fact that the statute cited by the Governor procedurally directs orders to be made "through" the Governor should indicate that the Governor has a ministerial duty to forward the orders– *nothing in the statute offers the Governor any discretion to disobey or modify the President's mobilization orders.* If the Governor refuses to act, which the Governor in this scenario is openly saying he is doing in defiance of the Federal government, this implicates the President's authority under other law, such as 10 U.S.C. sec. 252. This other statute provides: "Whenever the President considers that unlawful obstructions,

combinations, or assemblages, or rebellion against the authority of the United States, make it impracticable to enforce the laws of the United States in any State by the ordinary course of judicial proceedings, he may call into Federal service such of the militia of any State, and use such of the armed forces, as he considers necessary to enforce those laws or to suppress the rebellion." The Complaint here concedes the President stated his findings in the proclamation that "[t]o the extent that protests or acts of violence directly inhibit the execution of the laws, they constitute a form of rebellion against the authority of the Government of the United States." Thus, even assuming, for the sake of argument, that the President did not follow the procedure in the statute the Governor cites, *and* that the procedural failing was not caused by the Governor, *and* that the procedural issuance of orders somehow invalidates the President's actions despite finding the existence of rebellion under the law, there are other statutes expressly authorizing the President to do *exactly the same thing*. The complete omission of this additional basis on which to sustain the President's decision shows a misleading presentation by the Governor and a disingenuous reading of the law by his counsel.

There are yet more bases on which to deny the T.R.O. First, the balance of hardships should consider the impact on Federal employees, Federal property, and civilians/citizens in the event the T.R.O. is granted. If granted, the employees, property, and civilians would all be in grave danger due to the Governor's unwillingness to provide a safe and secure environment for citizens. As such, the Governor has denied citizens their Federal rights and denied citizens equal protection under the law– both additional reasons to uphold the President's discretionary decisions. Contrast with the hardship to Plaintiffs if there is no T.R.O. There is no hardship to Plaintiffs except for their rightful embarrassment and shame, which they deserve for refusing to uphold Federal law and seeking to force the President to answer to a committee every time he makes a decision to use force. This is contrary to law.

CONCLUSION

The action should be transferred to the Central District of California because it centers around real property there. In the alternative, the action should be dismissed under Rule 11 and the involved attorneys sanctioned. In the alternative, the action should be dismissed under Rule

12 on the Court's own motion. In the alternative, the T.R.O. should be denied as an unlawful interference with the President's sphere of authority.

Date:    June ~~11~~ 12, 2025        By:    *Andrew G. Watters*
　　　　　　　　　　　　　　　　　　　　　Andrew G. Watters, Esq.
　　　　　　　　　　　　　　　　　　　　　Attorney for Amicus Curiae
　　　　　　　　　　　　　　　　　　　　　Blue Eagle Coalition