IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GAVIN NEWSOM,** IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF CALIFORNIA; **STATE OF CALIFORNIA,**<br><br>Plaintiffs,<br><br>v.<br><br>**DONALD TRUMP,** IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES; **PETE HEGSETH,** IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF DEFENSE; **U.S. DEPARTMENT OF DEFENSE,**<br><br>Defendants. | Case No. 3:25-cv-04870-CRB<br><br>**[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION** |

1

**[PROPOSED] ORDER**

Plaintiffs' motion for a preliminary injunction came before this Court for consideration on June 20, 2025. Upon consideration, and for good cause shown, **IT IS HEREBY ORDERED** that the preliminary injunction is **GRANTED**.

**PRELIMINARY INJUNCTION**

The Court finds that Plaintiffs have demonstrated a likelihood of success on the merits of their claims, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that a preliminary injunction is in the public interest. In support of this Order, the Court makes the following findings:

1. Since Fiscal Year 2024, U.S. Immigration and Customs Enforcement (ICE) has made 4,741 arrests in the Los Angeles Area of Responsibility. Mass episodes of civil unrest related to those arrests in 2024 were nominal. On June 6, 2025, ICE conducted enforcement actions within the Los Angeles Area of Responsibility, including the execution of search warrants at various locations. During these operations, ICE and its agents reportedly took actions that inflamed tensions and provoked protest. In all, the Department of Homeland Security reported that its enforcement activities on Friday, June 6, resulted in the arrest of approximately 44 individuals and 70–80 people detained in total, showing that ICE could execute its functions.

2. On June 7, 2025, President Donald Trump issued a memorandum "call[ing] into Federal service members and units of the National Guard."

3. On June 7, 2025, Secretary of Defense Pete Hegseth issued a memorandum to the Adjutant General of California ordering 2,000 California National Guard soldiers into federal service.

4. On June 9, 2025, Secretary Hegseth issued another memorandum ordering an additional 2,000 California National Guard members into federal service.

5. Defendants' orders were issued over the express objection of the Governor of the State of California, and without consulting with or receiving input from the Governor, despite 10 U.S.C. § 12406's requirement that all orders made pursuant to that provision "shall be issued through the governors of the States."

6. As a result, 2,000 California National Guard soldiers have been moved to federal command, and an additional 2,000 will be moved imminently, for a total of 4,000 federalized National Guard soldiers available to be deployed by the federal government in the Los Angeles area.

7. Also on June 9, 2025, Secretary Hegseth mobilized 700 active-duty members of the United States Marine Corps from Camp Pendleton and deployed them to the Los Angeles area. Together with the 4,000 federalized National Guard soldiers, these constitute the "Title 10 Force" for purposes of this Order.

8. Plaintiffs are likely to prevail on their claims that Defendants' actions are *ultra vires*, including because they violate 10 U.S.C. § 12406, the Posse Comitatus Act, and the Tenth Amendment. Under section 12406, the President lacks the authority to use California's National Guard soldiers to aid federal agents with enforcing federal law. Section 12406 permits the President to call a State's National Guard soldiers into service in only three circumstances: (1) the United States is invaded or is in danger of invasion by a foreign nation; (2) there is a rebellion or danger of a rebellion against the authority of the Government of the United States; or (3) the President is unable to execute the laws of the United States with regular forces. None of these three circumstances exist here. In his June 7 memorandum, the President purported to invoke the second and third circumstance, stating that "[t]o the extent protests or acts of violence directly inhibit the execution of the laws, they constitute a form of rebellion against the authority of the Government of the United States." However, Plaintiffs have shown that the protests in Los Angeles fall far short of a rebellion. "Rebellion" for these purposes is defined by the late 1800s and early 1900s definition of the term because that is the relevant time period for understanding what Congress meant when it passed the Militia Act of 1903. Definitions from this time period share four key characteristics. First, a rebellion must not only be violent but also be armed. Second, a rebellion must be organized. Third, a rebellion must be open and avowed. Fourth, a rebellion must be against the government as a whole—often with the aim of overthrowing the government—rather than in opposition to a single law or policy. The protests in Los Angeles fall far short of a rebellion. Nor do these protests prevent the President or ICE from executing the

laws of the United States with regular forces.  Plaintiffs' evidence shows that ICE has continued to execute its duties and that National Guard soldiers have been unnecessary to aid with the enforcement of federal law.

9. Plaintiffs are also likely to prevail on their claims because section 12406 mandates that "[o]rders for these purposes shall be issued through the governors of the States."  The President's order was not issued through the Governor of the State of California.

10. Plaintiffs are also likely to prevail on their claim that the use of the Title 10 Force is likely to result in violations of the Posse Comitatus Act, 18 U.S.C. § 1385, because these forces are engaging in, or likely to engage in, activity that will "amount to direct active involvement in the execution of the laws," *United States v. Dreyer*, 804 F.3d 1266, 1275 (9th Cir. 2015) (citation omitted), and these forces "constitute the exercise of regulatory, proscriptive, or compulsory military power" over civilians," *United States v. Yunis*, 924 F.2d 1086, 1094 (D.C. Cir. 1991).

11. Plaintiffs are also likely to prevail on their claim that the use of the Title 10 Force violates the Tenth Amendment because it intrudes on the State of California's sovereign powers, including by taking command of the State's own resources and depriving the State of its right to control and have available its National Guard.

12. Plaintiffs are likely to suffer irreparable harm in the absence of temporary relief. First, violations of state sovereignty are irreparable harms.  Second, federalization of the California National Guard's soldiers impairs the Guard's ability to perform critical functions of the State of California, such as responding to natural disasters and wildfires when California is in peak wildfire season.  And third, Plaintiffs have shown that the presence of the Title 10 Force on the streets of Los Angeles, including their actual or perceived support and aid in the execution of ICE duties, has created significant civil unrest and is likely to result in increased civil unrest in the future.  Specifically, after National Guard soldiers were deployed to Los Angeles, their presence became the focus of protests and led to civil unrest, requiring intervention by state and local law enforcement to maintain public safety.  Further escalation of military force will create a significant and imminent risk of harm to Los Angeles by escalating tensions and increasing the

risk of potential hostilities that may lead to further violence against Californians or any violence against the Title 10 Force or federal agents.

13. The balance of equities and the public interest favor injunctive relief, particularly considering the imminent risk of violence in Los Angeles if the Title 10 Force is deployed in excess of the law.

Accordingly, it is hereby:

**ORDERED** that Defendants Donald Trump, Secretary of Defense Pete Hegseth, and the United States Department of Defense (collectively, "Defendants"), and others in active concert or participation therewith, are **ENJOINED** from effectuating the President's June 7 Memorandum "call[ing] into Federal service members and units of the National Guard" in California.

**ORDERED** that Defendants Secretary of Defense Pete Hegseth and the United States Department of Defense (together, "DOD Defendants") are **ENJOINED** from further effectuating the June 7 and June 9 DOD Orders deploying members of the California National Guard.

**ORDERED** that Defendants are **DIRECTED** to return control of the California National Guard to Governor Newsom.

**ORDERED** that DOD Defendants are **ENJOINED** from ordering or permitting U.S. military forces deployed in Los Angeles or elsewhere in California to execute or assist in the execution of any federal agent or officer's enforcement of federal law or any civilian law enforcement functions, including but not limited to execution of warrants, arrests, searches, checkpoints, cordons, or patrolling communities, beyond the immediate vicinity of federal buildings or other real property owned or leased by the federal government.

**ORDERED** that this preliminary injunction shall remain in effect pending further order of this Court.

Dated: _____    _____
                                              CHARLES R. BREYER
                                              United States District Judge