HYDEE FELDSTEIN SOTO, SBN 106866
 City Attorney
VALERIE L. FLORES, SBN 138572
MICHAEL DUNDAS, SBN 226930
200 North Main Street, City Hall East Rm 800
Los Angeles, California 90012
Tel: (213) 978-8100
hydee.feldsteinsoto@lacity.org
valerie.flores@lacity.org
mike.dundas@lacity.org
*Attorneys for* Amicus Curiae
City of Los Angeles

Norman L. Eisen, **
Stephen A. Jonas SBN 542005
Joshua G. Kolb, **
Diamond Brown*
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue SE
Suite 15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Steve @statedemocracydefenders.org
Joshua@statedemocracydefenders.org
Diamond@statedemocracydefenders.org

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GAVIN NEWSOM, in his official capacity as Governor of the State of California; STATE OF CALIFORNIA,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; PETE HEGSETH, in his official capacity as Secretary of the Department of Defense; DEPARTMENT OF DEFENSE,<br><br>　　　　　　Defendants. | Case No.   3:25-cv-04870-CRB<br><br>**SUPPLMENTAL BRIEF OF THE CITY OF LOS ANGELES AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:   06/19/2025<br>Time:  10:00 a.m.<br>Place   Courtroom 6-17Fr.<br>Judge: Charles R. Breyer |

**INTRODUCTION AND STATEMENT OF INTEREST OF *AMICUS CURIAE***

The City of Los Angeles ("City") files this supplemental *Amicus Curiae* brief in anticipation of this Court's adjudication of Plaintiffs' motion for a preliminary injunction in an effort to provide the Court with its requested "more fulsome record," which "would aid both this Court in assessing the proprietary and scope of any preliminary injunctive relief, as well as the Court of Appeals, if and when it undertakes appellate review of this Court's findings." *Newsom v. Trump*, 3:25-cv-04870, (N.D. Cal. Jun. 14, 2025) ECF No. 74.[1]

The City is critically interested in public safety within its boundaries and in preserving the constitutional rights of its residents to peacefully assemble and speak freely. It has worked tirelessly to preserve both principles by quelling violent and destructive outbursts while maintaining a space for the peaceful exercise of First Amendment rights. The federal government's ("Government") military presence undermines those principles and the City's vital interests.

The National Guard, for example, has stepped off the federal property it was guarding onto a City street to push protesters back; at the same time, federal agents deployed tear gas, pepper spray, and other similar munitions into the crowd. This sort of activity is especially concerning given the Administration's admissions of its political motivations. The Secretary of Homeland Security recently revealed the Government's intent to use federal forces to combat the duly-elected government of the City and State. "We are not going away," Secretary Kristi Noem said at a Los Angeles press conference on June 12, 2025. "We are staying here to liberate the city from the socialists and the burdensome leadership that this governor and that this mayor have placed on this country and what they have tried to insert into the city."[2] The President followed in kind with a June 15 Truth Social post, where he encouraged "ICE, Border Patrol, and our Great and Patriotic Law Enforcement Officers, to FOCUS" on "Los Angeles" and other listed cities, which he described in the post as the "the core of the Democrat Power Center." Not only is the Administration's use of the National Guard illegal; it is brazenly political. This Court should not allow the Administration's actions to stand.

---

[1] No party or party's counsel authored this brief in whole or in part. No party or party's counsel contributed money to fund preparation or submission of this brief.

[2] Notably, on Saturday, June 14, 2025, tens of thousands of demonstrators participated in peaceful protests at more than a dozen locations across the City as part of the national "No Kings Day" protests.

## ARGUMENT

**I.    The City and State Can Police the Current Protests Without Federal Intervention.**

The Los Angeles Police Department ("LAPD") is a highly trained and professional department, accustomed to protests, adept at crowd control, and well versed in managing public safety. The LAPD regularly trains officers to handle situations that require balancing individual rights of speech, expression, and assembly with the need to protect public safety, residents, and property.

In keeping with its status as the police department of the second largest city in the nation, LAPD has great familiarity in handling both large-scale pre-planned and unpermitted demonstrations, protests, and events, which occur regularly and with great frequency City-wide. The history of peaceful protests and demonstrations in the City has allowed the Department to form strong relationships with frequent protest organizers in order to facilitate peaceful demonstrations. This training and these partnerships—which the Government lacks—help the City and its police forces when protests take a more unpredictable or violent turn.

The LAPD also has long established protocols for requesting, receiving, and providing mutual aid and assistance from other law enforcement agencies and the National Guard when the need arises. For example, during the 2020 George Floyd protests, the LAPD requested that the Governor activate the National Guard to perform discrete tasks such as securing critical infrastructure and protecting other fixed posts —which allowed LAPD to free up its officers and deploy them to facilitate demonstrations and undertake crowd control functions in a coordinated unified command under then-Chief Michel Moore.

Even when the National Guard is there in a cooperative function with LAPD, their presence can present challenges. For example, during the May-June 2020 demonstrations, the LAPD documented some of the difficulties in maintaining clear communications and unified command with the National Guard, including that their members were not familiar with the rules of engagement, the laws of arrest, or rules and policy regarding the use of force in policing and domestic law enforcement.

Since those protests, the LAPD has since further trained its personnel on updated crowd management and control techniques, de-escalation of tense and even violent and hostile situations,

3

protection of peaceful protestors and apprehending those who use the protests as cover for committing crimes. Those lessons have helped the City manage the protests over the past week, and continue to give the City the wherewithal to address these events without federal intervention.

**II.     The Preliminary Injunction Should Be Granted.**

**A.     California (to the benefit of the City of Los Angeles) Is Likely to Prevail on the Merits.**

As this Court has ruled, the Government's deployment of the federalized National Guard is legally infirm and complicates the City's ability to ensure public safety. With respect to the National Guard, as this Court properly found at the TRO stage, a "rebellion" must be: (1) not merely violent but also "armed"; (2) organized; (3) "open and avowed"; and (4) "against the government as a whole— often with an aim of overthrowing the government—rather than in opposition to a single law or issue." *Newsom*, 3:25-cv-04870, ECF No. 64, at 18–19. Nothing approaching an armed, organized, avowed set of actions to overthrow local, state, or federal governments has occurred here.

Moreover, since the Founding, the consistent understanding of "rebellion" is limited to refer only to violent attempts to overthrow the civil authority of the government. The Suspension Clause of the Constitution authorizes the temporary suspension of *habeas corpus* only in "Cases of Rebellion or Invasion," U.S. Const. Art. I, §9, cl. 2, which has never been understood to encompass ordinary criminal conduct. *See, e.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) ("Only in the rarest of circumstances has Congress seen fit to suspend the writ." (citing Act of Mar. 3, 1863, ch. 81, § 1, 12 Stat. 755; Act of Apr. 20, 1871, ch. 22, § 4, 17 Stat. 14)). Similarly, Alexander Hamilton explained the need for a federal military because "there might sometimes be a necessity to make use of a force constituted differently from the militia, to preserve the peace of the community *and to maintain the just authority of the laws* against those violent invasions of them which amount to insurrections and rebellions." The Federalist No. 28 (Alexander Hamilton) (emphasis added).

American history confirms this limited conception of "rebellion." The two widely recognized "rebellions" in the Founding Era illustrate that only attempts to wholly reject governmental authority qualify. In Shay's Rebellion in 1786 and 1787, rebels shut down the court system in Western

Massachusetts, attempted to seize the federal armory in Springfield, and explicitly stated that their goal was to overthrow the government of Massachusetts. *See* David P. Szatmary, Shays' Rebellion: The Making of an Agrarian Insurrection (1980). The Whiskey Rebellion involved insurrectionists setting up extralegal courts and the federal excise tax going wholly uncollected in numerous states throughout 1791 and most of 1792. See Thomas P. Slaughter, The Whiskey Rebellion: Frontier Epilogue to the American Revolution (1986). The Supreme Court later characterized the Southern States in "rebellion" during the Civil War because they "occup[ied] and h[e]ld in a hostile manner a certain portion of territory; ha[d] declared their independence; ha[d] cast off their allegiance; ha[d] organized armies; ha[d] commenced hostilities against their former sovereign" and "claim[ed] to be in arms to establish their liberty and independence, in order to become a sovereign State." *The Amy Warwick*, 67 U.S. 635, 666–67 (1862).

No president, Congress, or court has ever suggested that a "rebellion" took place even in subsequent instances of widespread civil disorder that far surpass the protests and sporadic violence that has taken place in Los Angeles in recent days. The Government does not—because it cannot—allege any facts that remotely approach such an historically-rooted definition.

In addition, this Court correctly found that the Government could not properly invoke clause (3) of § 12406, the "execute the laws" condition. 10 U.S.C. § 12406(3). No facts alleged indicate that "regular forces" (in this case, ICE agents) could not execute federal immigration law, as demonstrated by ICE's uninterrupted raids and arrests of alleged undocumented immigrants throughout the week.

Before the troops arrived in Los Angeles, LAPD already had brought the protests against those raids and arrests under control—addressing the violence while respecting the First Amendment rights of peaceful protesters and deploying officers in response to a request for assistance from the ICE agents on the ground. Thus, the National Guard was not needed and in fact has not been involved in law enforcement efforts to any significant degree. Even if the protests had hampered ICE attempts to apprehend or arrest some persons, that would not rise to the level of "regular forces" being "unable to execute" federal law. If the law were otherwise, any impediment at all to federal law enforcement

/ / /

/ / /

Would trigger the President's powers to federalize the state National Guard and that is clearly wrong.[3]

As this Court ruled, "[w]hile ICE was not able to detain as many people as Defendants believe it could have, ICE was nonetheless able to execute the federal immigration laws." TRO Order, at 24. Even within the extraordinarily expansive inherent authority the Government has claimed for itself, the Government's federalization and deployment of Guard troops and deployment of the military stands outside the bounds of what is constitutionally permissible.

The City encourages this Court to grant the PI as to both the National Guard and the Marines so as to prevent the Government from simply substituting Marines for National Guard in this illegal and dangerous mission.

### B. The State and the City Face Irreparable Harm.

The President's federalization of the National Guard not only is a legally unfounded action but it has caused, is causing and will continue to cause injury to Los Angeles. The domestic use of the military is corrosive—to the morale of the troops involved; to the relationship between local/state governments and the federal government; and to the broader relationship between the military and civil society. Every day that this deployment continues sows fear among City residents, erodes their trust in the City, and escalates the conflicts they have with local law enforcement. The Government's actions have already irreparably damaged the City, as well as Plaintiffs, and "[t]hey must be stopped, immediately." *Newsom*, 3:25-cv-04870, ECF No. 8, at 2.

/ / /

/ / /

/ /

---

[3] Of course, Congress could also have easily written the statute to authorize the President to federalize the National Guard to assist in federal law enforcement anytime or even anytime federal law enforcement is "impaired" or "obstructed," but that is not what this statute says.

# CONCLUSION

For the reasons stated above, the City of Los Angeles supports the State of California's Motion for Preliminary Injunction.

DATED: June 16, 2025

Respectfully submitted,

  /s/ MICHAEL J. DUNDAS

HYDEE FELDSTEIN SOTO, SBN 106866
City Attorney
VALERIE L. FLORES, SBN 138572
MICHAEL DUNDAS, SBN 226930
200 North Main Street, City Hall East Rm 800
Los Angeles, California 90012
Tel: (213) 978-8100
hydee.feldsteinsoto@lacity.org
valerie.flores@lacity.org
mike.dundas@lacity.org

*Attorneys for* Amicus Curiae
*City of Los Angeles*

*Additional counsel listed on next page.*

Norman L. Eisen **
Stephen A. Jonas SBN 542005
Joshua G. Kolb **
Diamond Brown*
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue SE
Suite 15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Steve @statedemocracydefenders.org
Joshua@statedemocracydefenders.org
Diamond@statedemocracydefenders.org

**Admitted *Pro Hac Vice*
*PHV Forthcoming
*Attorneys for* Amicus Curiae
*City of Los Angeles*

7