1 | **ROB BONTA**
Attorney General of California
2 | MICHAEL L. NEWMAN
THOMAS S. PATTERSON
3 | Senior Assistant Attorneys General
ANYA M. BINSACCA
4 | MARISSA MALOUFF
JAMES E. STANLEY
5 | Supervising Deputy Attorneys General
NICHOLAS ESPÍRITU
6 | KRISTIN A. LISKA
KENDAL MICKLETHWAITE
7 | JANE REILLEY
MEGAN RICHARDS
8 | MEGHAN H. STRONG
Deputy Attorneys General
9 |   455 Golden Gate Ave.
  San Francisco, CA  94102
10 |   Telephone: (415) 510-3877
  E-mail: Meghan.Strong@doj.ca.gov
11 | *Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GAVIN NEWSOM, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF CALIFORNIA; STATE OF CALIFORNIA,**<br><br>Plaintiffs,<br><br>v.<br><br>**DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES; PETE HEGSETH, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF DEFENSE; U.S. DEPARTMENT OF DEFENSE,**<br><br>Defendants. | NO. 3:25-cv-04870<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF RE: JURISDICTION AND REQUEST FOR EXPEDITED DISCOVERY IN SUPPORT OF PRELIMINARY INJUNCTION** |

**TABLE OF CONTENTS**

Page

Introduction ................................................................................................................................. 1

Argument .................................................................................................................................... 1

    I.    This Court Retains Jurisdiction to Issue Injunctive Relief On Issues Not Before The Ninth Circuit and For Further Merits Proceedings ............................... 1

    II.   Plaintiffs Request Leave To Conduct Limited, Expedited Discovery and to Submit Supplemental Preliminary Injunction Briefing ........................................... 7

Conclusion .................................................................................................................................. 9

i

PLAINTIFFS' SUPP. BRIEF RE: JURISDICTION AND EXPEDITED DISCOVERY

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adams v. City of Chicago*
  135 F.3d 1150 (7th Cir. 1998) .................................................................................. 4, 5, 6

*Am. LegalNet, Inc. v. Davis*
  673 F. Supp. 2d 1063 (C.D. Cal. 2009) ....................................................................... 7, 8

*Coinbase, Inc. v. Bielski*
  599 U.S. 736 (2023) ............................................................................................................ 3

*Contour Design, Inc. v. Chance Mold Steel Co.*
  649 F.3d 31 (1st Cir. 2011) ........................................................................................ 4, 5, 6

*Fed. Trade Comm'n v. Enforma Nat. Prods., Inc.*
  362 F.3d 1204 (9th Cir. 2004) ............................................................................................ 2

*Flynt Distributing Co., Inc. v. Harvey*
  734 F.2d 1389 (9th Cir. 1984) ............................................................................................ 2

*Free Speech v. Fed. Election Comm'n*
  720 F.3d 788 (10th Cir. 2013) ......................................................................................... 3, 4

*In re Countrywide Fin. Corp. Derivative Litig.*
  542 F. Supp. 2d 1160 (C.D. Cal. 2008) .............................................................................. 7

*Mayweathers v. Newland*
  258 F.3d 930 (9th Cir. 2001) ............................................................................................... 2

*Mt. Graham Red Squirrel v. Madigan*
  954 F.2d 1441 (9th Cir. 1992) ............................................................................................. 4

*Mt. Graham Red Squirrel v. Yeutter*
  930 F.2d 703 (9th Cir. 1991) ..................................................................................... 4, 5, 6

*Nat. Res. Defense Council, Inc. v. Southwest Marine Inc.*
  242 F.3d 1163 (9th Cir. 2001) ............................................................................................. 2

*Plotkin v. Pac. Tel. & Tel. Co.*
  688 F.2d 1291 (9th Cir. 1982) ............................................................................................. 4

*Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*
  204 F.3d 867 (9th Cir. 2000) ............................................................................................... 2

## TABLE OF AUTHORITIES
### (continued)

Page

*Satanic Temple, Inc. v. Texas Health & Hum. Serv. Comm'n*
   79 F.4th 512 (5th Cir. 2023) ............................................................................................. 4

*Service Emp. Intern. Union v. Nat'l Union of Healthcare Workers*
   598 F.3d 1061 (9th Cir. 2010) ........................................................................................... 3

*State of Alabama v. EPA*
   871 F.2d 1548 (11th Cir. 1989) ......................................................................................... 4

*United States v. Pitner*
   307 F.3d 1178 (9th Cir. 2002) ........................................................................................... 3

*Weaver v. Univ. of Cincinnati*
   970 F.2d 1523 (6th Cir. 1992) ........................................................................................... 4

**STATUTES**

10 U.S.C. § 12406 ............................................................................................................. *passim*

Posse Comitatus Act .......................................................................................................... *passim*

**COURT RULES**

Federal Rule of Civil Procedure
   26(f) ................................................................................................................................... 7
   54(b) .................................................................................................................................. 4
   62(c) .................................................................................................................................. 2
   62(d) .................................................................................................................................. 2

**OTHER AUTHORITIES**

16 C. Wright, A. Miller, E. Cooper, *Federal Practice & Procedure* § 3921.2 (3d
   ed.) ................................................................................................................................... 3

Matthew Rodriguez, *500 federal agents and soldiers raid marijuana farms in rural
   southern California*, CBS News (June 18, 2025) ............................................................ 9

## INTRODUCTION

The Court has requested briefing on whether it retains jurisdiction to issue a preliminary injunction and how this case should move forward. Under clearly established precedent, this Court retains jurisdiction to consider any issues not currently on appeal to the Ninth Circuit as well as any new evidence submitted in support of a new preliminary injunction motion. As the Court of Appeals recognized in its recent stay order, Plaintiffs' "claims based on the Posse Comitatus Act" are not before that Court, nor is that Court "address[ing] the nature of the activities in which the federalized National Guard may engage." Slip op. 13, 37. Also not pending before the Ninth Circuit is the question of how long, where, and for what purposes the President may keep the California National Guard federalized under 10 U.S.C. § 12406, even after the circumstances that the Ninth Circuit found likely justified federalization have passed. To aid in the Court's consideration of these issues, Plaintiffs request leave to conduct limited, expedited discovery tailored to these issues, and to submit supplemental preliminary injunction briefing on July 15.

## ARGUMENT

**I.  THIS COURT RETAINS JURISDICTION TO ISSUE INJUNCTIVE RELIEF ON ISSUES NOT BEFORE THE NINTH CIRCUIT AND FOR FURTHER MERITS PROCEEDINGS**

This court retains jurisdiction over all issues not encompassed by its June 12, 2025 Order granting Plaintiffs' Application for Temporary Restraining Order ("TRO Order"), now on appeal to the Ninth Circuit. This Court may therefore consider other aspects of Plaintiffs' motion for a preliminary injunction, including Plaintiffs' assertion of a violation of the Posse Comitatus Act ("PCA"), and Plaintiffs' arguments that the federalization of the National Guard units pursuant to the President's June 7 Memorandum ("June 7 Memorandum") and Secretary Hegseth's June 7 and June 9 Orders ("DOD Orders") cannot last longer than necessary and that any deployment of the National Guard under such memoranda must be tied to the alleged exigency that the Ninth Circuit found likely to justify the order—the need to protect federal personnel and buildings due to the protests in Los Angeles on June 6 and June 7—and cannot extend beyond those circumstances and that purpose.

As an initial matter, Federal Rule of Civil Procedure 62(d), which the Court mentioned at the June 20, 2025 hearing, is consistent with this conclusion. That Rule speaks to the district court's jurisdiction over matters relating to the aspects of the case that *are* on appeal: "While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). The Ninth Circuit has observed that Rule 62(d) simply makes explicit the inherent power the district court has always had to preserve the status quo during the pendency of an appeal. *Nat. Res. Defense Council, Inc. v. Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (referring to Rule 62(c), which is now numbered Rule 62(d)). Thus, when evaluating whether a district court order violates Rule 62(d), the Ninth Circuit looks to whether the district court's exercise of jurisdiction "materially alter[s] the status of the case on appeal." *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001).

Consistent with Rule 62(d), Ninth Circuit law is clear that "[a] district court lacks jurisdiction to modify an injunction once it has been appealed except to maintain the status quo among the parties." *Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000); *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1392 n.1 (9th Cir. 1984) (district court had no jurisdiction to modify and supersede its order granting a preliminary injunction after the filing of the notice of appeal).[1] So here, this Court lacks jurisdiction to modify the TRO Order, including its determinations based on the particular record before it about the legal issues decided in the TRO Order: (1) whether Plaintiffs were likely to establish based on the particular TRO record any of the grounds under Section 12406(1)-(3) were present to justify federalization of the National Guard in the first instance, or (2) whether Plaintiffs were likely to show based on the TRO record that Defendants satisfied Section 12406's requirement of orders

---

[1] Consistent with maintaining this status quo, the district court may enter further factual findings or clarify its prior order so as to facilitate appellate review. *Fed. Trade Comm'n v. Enforma Nat. Prods., Inc.*, 362 F.3d 1204, 1215 n.11 (9th Cir. 2004) ("Additional findings that 'move the target' are disfavored. Additional findings that merely 'set [the target] in place,' however, are acceptable." (citations omitted)).

issuing "through the Governor." But this Court retains jurisdiction to address the issues not decided in the TRO Order, including: (3) whether the troops on the ground in Los Angeles or elsewhere are violating the PCA, and (4) whether federalization of National Guard units pursuant to Section 12406 may continue indefinitely and in any locale, or if it must be tethered to the statutory factual predicates that justify federalization, and, if the latter, if continued federalization of the National Guard units is warranted by the conditions in Los Angeles on June 6 and June 7. Deciding those issues would not "modify" the TRO Order nor alter the "status quo" between the parties with respect to the issues pending on appeal in the way that renewing or bolstering this Court's order to defederalize the Guard would. Rather, the Court would be ruling only on *how* the federal troops would be used for *how long*, and *where*—issues that the Ninth Circuit acknowledged are not now before the appellate court. In sum, this Court's consideration of those issues will not implicate the status of the case on appeal.

Moreover, unlike an appeal from a final judgment, an appeal from an interlocutory order such as a preliminary injunction[2] only divests the lower court "of its control over those aspects of the case involved in the appeal." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (citation omitted); *see generally* 16 C. Wright, A. Miller, E. Cooper, *Federal Practice & Procedure* § 3921.2 (3d ed.) (discussing district court authority during pendency of interlocutory appeal). The district court "retains jurisdiction to address aspects of the case that are not the subject of the appeal." *United States v. Pitner*, 307 F.3d 1178, 1183 n.5 (9th Cir. 2002); *accord, e.g.*, *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 791 (10th Cir. 2013) (interlocutory injunction "does not defeat the power of the trial court to proceed further with the case" (citation omitted)). Thus, "[a]n appeal from a grant or denial of a preliminary injunction does not inherently divest

---

[2] Because temporary restraining orders are generally not immediately appealable, *Service Emp. Intern. Union v. Nat'l Union of Healthcare Workers*, 598 F.3d 1061, 1067 (9th Cir. 2010), the law discussing whether district courts retain jurisdiction over interlocutory appeals focuses on preliminary injunctions. Here, it is not clear whether the Ninth Circuit considers the TRO Order a preliminary injunction or just to have "the qualities of a preliminary injunction" for purposes of appellate jurisdiction. *Compare* Slip op. 11 ("The TRO here 'possesses the qualities of a preliminary injunction'") *with id.* at 12 ("On these facts, we conclude that the district court's order is effectively a preliminary injunction."). That distinction does not bear on which aspects of the case are involved in the appeal and which remain under this Court's jurisdiction. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023).

the district court of jurisdiction or otherwise restrain it from taking other steps in the litigation." *Satanic Temple, Inc. v. Texas Health & Hum. Serv. Comm'n*, 79 F.4th 512, 514 (5th Cir. 2023); *see also Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982) ("[I]t is firmly established that an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the case.").

During the pendency of a preliminary injunction appeal, a district court therefore retains jurisdiction to proceed in adjudicating an action, and to conduct merits proceedings and trials (which necessarily involve discovery beyond the evidence available at the preliminary injunction stage), even on claims that are the subject of the preliminary injunction. *See, e.g.*, *Contour Design, Inc. v. Chance Mold Steel Co.*, 649 F.3d 31, 34 (1st Cir. 2011) (district court could proceed to trial and enter permanent injunction during appeal of preliminary injunction); *Weaver v. Univ. of Cincinnati*, 970 F.2d 1523, 1528 (6th Cir. 1992) (district court could issue decision on merits during appeal of preliminary injunction); *State of Alabama v. EPA*, 871 F.2d 1548, 1553-54 (11th Cir. 1989) (district court could enter summary judgment during appeal of preliminary injunction). For a district court "[t]o conduct a trial and grant or deny a permanent injunction based on that trial" while a preliminary appeal is pending "is standard practice." *Contour Design*, 649 F.3d at 34. And the district court's power to do so "is desirable 'both in the interest of expeditious disposition and in the face of uncertainty as to the extent to which the court of appeals will exercise its power.'" *Free Speech*, 720 F.3d at 792 (citation omitted).

Particularly relevant at this stage, the district court's continuing jurisdiction includes authority to consider and grant additional preliminary relief predicated on allegations or issues that are not involved in the appeal, or "new evidence" submitted in support of a "new motion for preliminary injunction." *Adams v. City of Chicago*, 135 F.3d 1150, 1153 (7th Cir. 1998); *see also Mt. Graham Red Squirrel v. Yeutter*, 930 F.2d 703, 704 (9th Cir. 1991) ("*Mt. Graham I*"). For example, in *Mt. Graham I*, the district court granted summary judgment to the defendants on seven of the nine claims plaintiffs raised, and the plaintiffs appealed after the district court certified its order of partial summary judgment for immediate appeal under Federal Rule of Civil Procedure 54(b). *Id.*; *see Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1448 (9th Cir.

1  1992) ("*Mt. Graham II*").  The plaintiffs later moved for a preliminary injunction predicated on a
2  number of grounds, which the district court denied on the basis that it lacked jurisdiction.  *Mt.*
3  *Graham I*, 930 F.2d at 704.  The Ninth Circuit held that the district court erred when it "failed to
4  consider the two claims that were not on appeal" in considering the plaintiff's request for a
5  preliminary injunction.  *Id.*  Because those claims and their underlying allegations "had not been
6  appealed," the district court "retained jurisdiction to act on them."  *Id.* at 705.  Thus, the Ninth
7  Circuit remanded the case to the district court and ordered it to "hold[] an evidentiary hearing to
8  determine whether the plaintiffs are entitled to a preliminary or permanent injunction on the basis
9  of their allegations" not at issue in the interlocutory appeal.  *Id.*; *see also Adams*, 135 F.3d at 1154
10 ("no jurisdictional bar" to district court resolving "a new motion for preliminary injunction"
11 during appeal from prior ruling on motion for a preliminary injunction).
12      In light of this settled precedent, this Court retains jurisdiction over this case, aside from the
13 aspects that are part of Defendants' appeal of the Court's TRO Order.  Specifically, the Court has
14 authority to enter a preliminary injunction predicated on Plaintiffs' allegations that the PCA is
15 being violated.  This Court explicitly declined to consider Plaintiffs' claims relating to the PCA
16 until a more complete factual record could be developed.  TRO Order, p. 29 ("The Court
17 therefore need not reach this additional basis for Plaintiffs' ultra vires claim at this early moment
18 in the litigation.").  Plaintiffs did not appeal that aspect of the TRO Order, and the Ninth Circuit
19 recognized that Plaintiffs planned to "continue to pursue that claim, including by presenting any
20 additional evidence at the upcoming preliminary injunction hearing," without saying anything to
21 cast doubt on the propriety of the claim moving forward even while the Ninth Circuit appeal
22 proceeds.  Slip op. 8-9.  Because Plaintiffs' *ultra vires* claim based on the PCA is not a part of the
23 appeal of the TRO Order, this Court retains jurisdiction to issue a preliminary injunction
24 predicated on that claim.  *See Mt. Graham Red Squirrel*, 930 F.2d at 905; *Adams*, 135 F.3d at
25 1154; *cf. Contour Design*, 649 F.3d at 34 (district court had jurisdiction to conduct trial and issue
26 permanent injunction based on trial record during appeal of preliminary injunction).
27      This Court similarly has jurisdiction to consider whether actions taken pursuant to the
28 federalization orders, which are essentially unlimited in geographic and temporal scope, are

justified with regard to the current state of affairs in Los Angeles and elsewhere. Although the Ninth Circuit held that, on the TRO record before it, conditions in and around the federal building in Los Angeles on June 6 and 7 likely satisfied Section 12406(3)'s factual predicate for federalization of National Guard units *in the first place*, the Ninth Circuit did not consider, nor did the parties present, the questions of how long such federalization is permissible in the face of changed circumstances or whether those federalized troops may be deployed in areas where those conditions never existed or have ceased to exist. And while Plaintiffs' application for a TRO addressed the scope of the Guard's deployment and requested an injunction against *extending* the deployment beyond the protection of property and personnel at federal buildings to supporting immigration enforcement in the field, *see* ECF No. 8, 8-4, this Court's TRO Order resolved the application on a more fundamental threshold issue and did not reach that issue. Thus, as the Ninth Circuit recognized, the appeal does not "address[] the nature of the activities in which the federalized National Guard may engage." Slip op. 37. Additionally, neither Plaintiffs' application for a TRO nor this Court's TRO Order addressed the open-ended duration of the June 7 Memorandum and the DOD Orders. *See* June 7 Memorandum ("the duration of duty shall be for 60 days or at the discretion of the Secretary of Defense" and "at locations where protests against these functions are occurring or are likely to occur based on current threat assessments and planned operations."). The scope and duration of the Guard's federalized deployment are, therefore, not before the Ninth Circuit, and this Court retains jurisdiction to consider them. *See Mt. Graham Red Squirrel*, 930 F.2d at 905; *Adams*, 135 F.3d at 1154; *cf. Contour Design*, 649 F.3d at 34 (district court had jurisdiction to conduct trial and issue permanent injunction based on trial record during appeal of preliminary injunction).

The Ninth Circuit's ruling focused on the President's *initial* invocation of the federalization authority and whether there were colorable facts to support that invocation. *See* Slip op. 30. In so doing, it took great care to limit its holding to only the situation and facts before it on the particular TRO record. *Id.* at 37 ("We emphasize, however, that our decision addresses only the facts before us. And although we hold that the President likely has authority to federalize the National Guard, nothing in our decision addresses the nature of the activities in which the

federalized National Guard may engage."). This Court's review of Plaintiffs' outstanding claims would not impede meaningful review of the narrower issues before the Ninth Circuit.

In sum, this Court has jurisdiction to consider a preliminary injunction on any issue not before the Ninth Circuit, including Plaintiffs' *ultra vires* PCA claim and the scope and duration of the federalization of National Guard units pursuant to Section 12406. Moreover, as set out below, this Court has jurisdiction to permit the parties to engage in discovery on those issues to facilitate its decision.

## II.  PLAINTIFFS REQUEST LEAVE TO CONDUCT LIMITED, EXPEDITED DISCOVERY AND TO SUBMIT SUPPLEMENTAL PRELIMINARY INJUNCTION BRIEFING

Plaintiffs request leave to conduct expedited, limited discovery as to their claim that Defendants have acted ultra vires of the PCA and as to the permissible scope and duration of the federalization of the National Guard under Section 12406—particularly, whether the National Guard may be deployed for a length, in locations, and in a manner that is untethered to the factual predicate that was the basis of the Ninth Circuit's ruling. Resolution of these questions would benefit from additional factual development, which Plaintiffs will achieve through limited written discovery (e.g., requests for production, interrogatories, and requests for admissions) and depositions of a subset of Defendants' declarants on an expedited timeline set forth below. Plaintiffs seek to file supplemental preliminary injunction briefing on these issues by July 15.

At the outset, this Court may permit expedited discovery before a Rule 26(f) conference, as there is "good cause." *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008). "Good cause exists where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* (cleaned up). "Factors commonly considered in determining the reasonableness of expedited discovery include, but are not limited to: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 10667 (C.D. Cal. 2009) (cleaned up). Here, Plaintiffs' motion for a preliminary injunction

remains pending. *Id*. at 1066 (good cause standard may be satisfied where party seeks preliminary injunction). As is discussed, *supra*, Plaintiffs are seeking narrowly tailored discovery only as to issues not before the Ninth Circuit, which will benefit the Court's consideration of them on an expedited timeline. *Cf. Am. LegalNet, Inc.*, 673 F. Supp. at 1068-69 (finding breadth of discovery requests overly burdensome where plaintiff made no effort to limit discovery requests or deposition topics).

*First*, Plaintiffs seek to conduct limited discovery that will bear on whether the federalized National Guard troops and the Marines have engaged in activities that violate the PCA, and whether federal officials are authorizing continued use of these troops in ways that would violate the PCA. To be clear, Plaintiffs would largely be seeking discovery on enforcement actions that have already taken place and generalized instructions on authorized use of these federalized troops and Marines, rather than sensitive information specific to future federal law enforcement actions. Primarily, Plaintiffs will seek documents regarding the use or deployment of the National Guard and/or military in operations that are not taking place on federal property, but rather on the streets of communities in Southern California. This may include, but not be limited to, facts related to federal law enforcement actions involving federalized National Guard or Marines since the federalization order. Plaintiffs also would seek any protocols or rules of engagement issued, as well as any internal reports, summaries, photos, or other such evidence related to the operations or practices.[3]

*Second*, Plaintiffs will seek tailored written discovery regarding whether the circumstances of June 6 and 7 in Los Angeles justify the continued deployment of the National Guard in Los Angeles and elsewhere in the State and justify deployments that are untethered to protection against the kinds of harms against federal personnel and property that the Ninth Circuit concluded likely justified the initial federalization. For example, far removed from any protests in Los Angeles, it was reported that on June 17, 2025, federalized National Guard members joined the Drug Enforcement Administration on a raid of marijuana farms in the Coachella

---

[3] And, to the extent that there is concern related to safety of federal officers or military personnel engaging in future operations, Plaintiffs would of course work with Defendants to craft an appropriate protective order.

1  Valley.[4]  Tailored written discovery will seek information regarding deployments, such as that
2  one, outside of the Los Angeles area, and information relevant to whether Defendants' remain
3  unable to enforce immigration laws in Los Angeles or elsewhere using regular federal forces such
4  that the mobilization remains justified.  Discovery may include written reports or summaries of
5  enforcement actions, and information related to ICE's ability to carry out arrests and deportations,
6  among other things.

7  In addition to reasonably tailored written discovery related to Plaintiffs' claims involving
8  the PCA and the permissible scope of the federalization orders, Plaintiffs will also seek to depose
9  some of Defendants' declarants.  For example, ICE ERO Field Office Director Santacruz has
10 operational visibility into the military's actions in California since the deployment as well as any
11 continued ICE operations before or after the military was deployed.  ECF No. 22-1, Santacruz
12 Decl. ¶¶ 1-3.  Similarly, Major General Niave F. Knell has visibility and knowledge of orders
13 issued to the troops on rules of engagement, the scope of the duties, and the nature of the
14 deployment with ICE or other operations related to the memoranda at issue here.  ECF No. 22-4,
15 Knell Decl. ¶¶ 1-9.

16  Plaintiffs respectfully ask the Court to allow the Parties to develop this factual record in a
17 timely manner commensurate with the urgency of the situation.  Accordingly, Plaintiffs seek to
18 propound discovery by June 26, with the intent to meet and confer with Defendants immediately
19 following these requests; to receive responses and conduct limited depositions by July 11; and to
20 file supplemental briefing on July 15.

21                            **CONCLUSION**

22  In light of the foregoing, this Court should continue to exercise jurisdiction over all
23 aspects of the case not currently before the Ninth Circuit, and now allow limited discovery and
24 supplemental briefing on Plaintiffs' claims involving the Posse Comitatus Act and the nature of
25 the activities in which the federalized National Guard may engage, including where, how, and for
26 how long they may be deployed.

---

[4] Matthew Rodriguez, *500 federal agents and soldiers raid marijuana farms in rural southern California*, CBS News (June 18, 2025), https://tinyurl.com/CBSNewsCoachella (last visited June 23, 2025).

| | | |
|---|---|---|
| 1 | Dated: June 23, 2025 | Respectfully submitted, |
| 2 | | **ROB BONTA** |
| | | Attorney General of California |
| 3 | | MICHAEL L. NEWMAN |
| | | THOMAS S. PATTERSON |
| 4 | | Senior Assistant Attorneys General |
| | | ANYA M. BINSACCA |
| 5 | | MARISSA MALOUFF |
| | | JAMES E. STANLEY |
| 6 | | Supervising Deputy Attorneys General |
| | | NICHOLAS ESPÍRITU |
| 7 | | KRISTIN A. LISKA |
| | | KENDAL MICKLETHWAITE |
| 8 | | JANE REILLEY |
| | | MEGAN RICHARDS |
| 9 | | MEGHAN H. STRONG |

*/s/ Meghan Strong*

Deputy Attorney General
  455 Golden Gate Ave.
  San Francisco, CA  94102
  Telephone: (415) 510-3877
  E-mail:  Meghan.Strong@doj.ca.gov

*Attorneys for Plaintiffs*