BRETT A. SHUMATE
Assistant Attorney General
ERIC J. HAMILTON (CA Bar No. 296283)
Deputy Assistant Attorney General
ALEXANDER K. HAAS (CA Bar No. 220932)
Branch Director
JEAN LIN (NY Bar No. 4074530)
Special Litigation Counsel
CHRISTOPHER EDELMAN (DC Bar No. 1033486)
Senior Counsel
GARRY D. HARTLIEB (IL Bar No. 6322571)
BENJAMIN S. KURLAND (DC Bar No. 1617521
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-0568
garry.hartlieb@usdoj.gov
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GAVIN NEWSOM, in his official capacity as Governor of the State of California, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States of America, et al., <br><br> *Defendants*. | Case No. 3:25-cv-04870-CRB <br><br> **DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

At the hearing on June 20, 2025, this Court directed "the parties to submit briefs by noon on Monday, June 23rd, 2025, addressing whether this Court or the Ninth Circuit retains primary jurisdiction to modify or grant an injunction under the Posse Comitatus Act." June 20, 2025 Hearing Transcript ("Tr.") at 5:14-17. In addition, the Court permitted the parties to address the duration of the federalization order, which was first raised in Plaintiffs' reply brief in support of their motion for a preliminary injunction. Accordingly, Defendants address both topics here.

1. The jurisdictional question is largely a moot point because the Ninth Circuit's stay decision logically forecloses Plaintiffs' Posse Comitatus Act ("PCA") claim. The Ninth Circuit held that the President "likely acted within his authority in federalizing the National Guard under 10 U.S.C. § 12406(3)." *Newsom et al. v. Trump et al.*, --- F.4th ----, 2025 WL 1712930, at *12 (9th Cir. 2025). Section 12406(3) allows the President to federalize the Guard where he "is unable with the regular forces *to execute the laws* of the United States." 10 U.S.C. § 12406(3) (emphasis added). The PCA makes it a federal crime to "willfully use[] [certain military service members] as a posse comitatus or otherwise *to execute the laws*," except "in cases and circumstances expressly authorized by the Constitution or Act of Congress." 18 U.S.C. § 1385 (emphasis added). If, as Plaintiffs appear to argue, *see* ECF No. 77 at 20, Section 12406 is not statutory authorization for PCA purposes, its subsection (3) would somehow not allow the President to use Guardsmen to execute the laws. That absurdity is belied by the statute's authorization of the President to federalize Guardsmen "in such numbers as he considers necessary *to . . . execute those laws*." *Id.* § 12406 (emphasis added). Given the Ninth Circuit's finding, it would be illogical to hold that, although the President can call up the National Guard when he is unable "with the regular forces to execute the laws of the United States," the Guard, once federalized, is forbidden from "execut[ing] the laws." 10 U.S.C. § 12406(3); 18 U.S.C. § 1385.

In any event, here the Guard is merely performing a protective function, safeguarding federal officials and property, not executing federal laws. Indeed, this Court already recognized that the President's Memorandum and DoD memoranda "do not direct the federalized National Guard members to undertake activities that would violate the [PCA]." TRO Op. at 28. Nothing in the preliminary injunction record plausibly supports a claim that the Guard and Marines are

Defendants' Supplemental Brief in Opp'n to PI Mot.
3:25-cv-04870-CRB

1  engaged in execution of federal laws rather than efforts to protect the personnel and property used

2  in the execution of federal laws.  The Declaration of Major General Scott M. Sherman explains in

3  detail the purely protective functions being performed by the Guard and Marines, ECF No. 84-3,

4  Sherman Decl.  ¶ 9(A)–(D), and protection of federal officials and property does not constitute

5  enforcement of the laws for PCA purposes, ECF No. 84 at 24-25.

6       Even if Plaintiffs could establish a likelihood of success on their PCA claim, the Ninth

7  Circuit's analysis of the remaining factors for interim equitable relief would foreclose a

8  preliminary injunction on that claim.  In addition to finding that Defendants were likely to succeed

9  on their Section 12406 arguments, the Ninth Circuit held that "irreparable harm to Defendants,

10  injury to Plaintiffs, and the public interest [factors]—weigh in Defendants' favor." *Newsom*, 2025

11  WL 1712930, at *2.  Because this Court could not reach a contrary conclusion on the balance of

12  the equities, Plaintiffs' request for a preliminary injunction on their PCA claim necessarily fails.

13       Yet even if the Court were inclined to modify or grant an injunction under the PCA,  the

14  law is clear that the Court lacks jurisdiction to modify or expand its June 12 Order, ECF No.  64,

15  which the Ninth Circuit has stayed pending appeal.  That is because "[t]he filing of a notice of

16  appeal . . . divests the district court of its control over those aspects of the case involved in the

17  appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *see also Townley*

18  *v. Miller*, 693 F.3d 1041, 1042 (9th Cir. 2012) (filing of a notice of appeal generally divests the

19  court of jurisdiction over the matters appealed).  However, the Court likely retains jurisdiction to

20  address Plaintiffs' PCA arguments because the Court declined to consider those arguments in its

21  previous order, TRO Op. at 29, and an injunction on Plaintiffs' PCA claim would have a different

22  scope than the stayed order.[1]

23       2.  Plaintiffs also requested that "the Court . . . address the duration of the order and the

24  parameters for when the order should conclude." Tr at 8:25–9:5.  This issue does not warrant

25  injunctive relief for at least three reasons.

26  

27  [1] In particular, even if the Ninth Circuit's decision did not foreclose injunctive relief here (which
it does), the scope of an injunction based on the PCA claim would necessarily be different, since

28  Plaintiffs' PCA claim does not logically challenge the federalization of the National Guard itself
but instead challenges what Plaintiffs allege the Guard is doing.

Defendants' Supplemental Brief in Opp'n to PI Mot.
3:25-cv-04870-CRB

First, any challenge to the duration or parameters of the federalization order is forfeited. Plaintiffs' brief in support of their preliminary-injunction motion, while referencing the 60-day timeline, ECF No. 77 at 4, 28, contains no challenge to the federalization order's duration or parameters. Only in their reply brief did Plaintiffs for the first time challenge the order's supposed lack of temporal or geographic limits. ECF No. 87 at 7-8. "[I]ssues raised for the first time in the reply brief are waived." *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996); *Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) ("[Parties] cannot raise a new issue for the first time in their reply briefs."). Even then, Plaintiffs' reply does not request any particular relief related to their overbreadth argument. And to the extent Plaintiffs' supplemental brief filed today addresses "the parameters for when the order should conclude," that will be the first time Defendants are made aware of their arguments. This issue therefore is not properly before the Court.

Second, Plaintiffs have not cited any legal authority that could conceivably allow "the Court to address the duration of the order and the parameters for when the order should conclude." Tr. 8:25–9:2. The only legal authority Plaintiffs' reply brief cited is a plainly inapplicable First Amendment case that does not address any geographic or durational limits on governmental action. ECF No. 87 at 8 (quoting *Garrison v. State of La.*, 379 U.S. 64, 75 (1964)). And tellingly, the argument in Plaintiffs' reply cited no statute—Section 12406 or otherwise—in support of their argument. Indeed, while Section 12406 provides the process through which the National Guard becomes federalized, it imposes no durational limits on the President's exercises of his Commander-in-Chief power over a properly federalized Guard.

And even if Section 12406 could be read to imply limits on the duration and scope of the President's deployment of the National Guard, review of those issues would be subject to the same "especially deferential" framework, *Newsom v. Trump*, 2025 WL 1712930, at *7, applicable to the President's decision to invoke Section 12406 in the first place. After all, the statute permits the President to federalize Guardsmen "in such numbers as he considers necessary to repel the invasion, suppress the rebellion, or execute those laws." 10 U.S.C. § 12406. In any event, the President's decision that the duration of duty "shall be for 60 days or at the discretion of the Secretary of Defense" to shorten or extend the duration is appropriate, particularly given the scale

Defendants' Supplemental Brief in Opp'n to PI Mot.
3:25-cv-04870-CRB

3

and intensity of the previous violence and obstruction in Los Angeles and the need for the Secretary of Defense to flexibly respond to the evolving situation on the ground.

Finally, any challenge to the duration of the Guard and Marines' deployment is premature. In their reply, Plaintiffs complained that "Defendants' opposition makes clear they have no intention of withdrawing troops from Los Angeles in 60 days or any time soon thereafter." ECF No. 87 at 8. Defendants have not in fact taken this position. Although the Presidential Memorandum gives the Secretary of Defense discretion to extend the mission beyond 60 days, Secretary Hegseth's two memoranda on June 7 and 9, respectively, limit the deployment to 60 days from those dates. ECF No. 8-1, Exs. O-P. There is no basis now to challenge the determination to initially set a 60-day timeframe on the duration of the deployment, particularly when the initial 60-day timeframe has not yet elapsed and the actual duration is unknown at present.

Moreover, the undisputed factual record confirms a continued need for the mission, which is to "provid[e] protection of federal personnel, property, and functions." Declaration of Ernesto Santacruz, Jr. ("Santacruz Decl."), ECF No. 84-1, at ¶ 3. Plaintiffs' and Defendants' declarants agree that violence against federal personnel persisted into the weekend preceding Plaintiffs' motion for a preliminary injunction. Declaration of Sean Duryee, ECF No. 87-3, at ¶ 8 ("On June 14, 2025, . . . [s]ome protestors assaulted the officers and soldiers by throwing items and spitting on them."); Santacruz Decl. at ¶ 6 ("[O]n June 14, 2025, . . . violent opportunists in the crowd of over 1,000 people began assaulting law enforcement officers with rocks, bricks, bottles, fireworks, and other objects."). In addition, the Department of Homeland Security has confirmed that "[b]ecause of the current threat, [the Department] would not be able to carry out as many immigration enforcement operations as we have been able to with the Guards' assistance." Santacruz Decl. at ¶ 12.

Notwithstanding the "exceptionally deferential" review to the President's decision under Section 12406, as well as continuing violence against federal personnel, Plaintiffs appear to seek to cabin where and for how long the National Guard can protect federal personnel who are executing immigration laws. The sole fact that Plaintiffs offer in making this argument is that "the

Defendants' Supplemental Brief in Opp'n to PI Mot.
3:25-cv-04870-CRB

4

1 National Guard deployed to the Coachella Valley to assist with a raid of a marijuana farm." PI

2 Reply at 7. But that operation was in the same vein of other uses of service members to provide

3 protection for immigration enforcement. Plaintiffs omit that their own sources report that federal

4 officials "anticipat[ed] there being some undocumented workers on scene." ECF No. 87-1, at 65.

5 "[I]llegal farms often come with illegal labor." *Id*. For "many illegal grow operations, employing

6 those with undocumented U.S. legal status is . . . rampant." *Id*. As expected, the illegal farms

7 "included the employment of illegal immigrants." *Id*. at 66. "Preliminary numbers show 70-75

8 illegal immigrants were detained in the operation." ECF No. 87-1, at 66. In short, Plaintiffs give

9 no persuasive factual or legal reason to question Defendants' continued use of military

10 servicemembers, without which the "immigration enforcement mission would be greatly

11 impacted." Santacruz Decl. ¶ 12.

12

13 Dated: June 23, 2025                    Respectfully submitted,

14                                          BRETT A. SHUMATE
                                           Assistant Attorney General
15                                         Civil Division

16                                         ERIC J. HAMILTON
17                                         Deputy Assistant Attorney General
                                           Federal Programs Branch
18                                         (CA Bar No. 296283)

19                                         ALEXANDER K. HAAS
20                                         (CA Bar No. 220932)
                                           Director, Federal Programs Branch
21
                                           JEAN LIN
22                                         (NY Bar No. 4074530)
                                           Special Litigation Counsel
23                                         Federal Programs Branch
24

25
                                           */s/ Garry D. Hartlieb*
26                                         CHRISTOPHER EDELMAN
27                                         (DC Bar No. 1033486)
                                           Senior Counsel
28                                         GARRY D. HARTLIEB

Defendants' Supplemental Brief in Opp'n to PI Mot.
3:25-cv-04870-CRB
                              5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(IL Bar No. 6322571)
BENJAMIN S.  KURLAND
(DC Bar No. 1617521)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel.: 202-305-0568
Email: garry.hartlieb@usdoj.gov

*Attorneys for Defendants*

Defendants' Supplemental Brief in Opp'n to PI Mot.
3:25-cv-04870-CRB