BRETT A. SHUMATE
Assistant Attorney General
ERIC J. HAMILTON (CA Bar No. 296283)
Deputy Assistant Attorney General
ALEXANDER K. HAAS (CA Bar No. 220932)
Branch Director
JEAN LIN (NY Bar No. 4074530)
Special Litigation Counsel
CHRISTOPHER EDELMAN (DC Bar No. 1033486)
Senior Counsel
GARRY D. HARTLIEB (IL Bar No. 6322571)
BENJAMIN S. KURLAND (DC Bar No. 1617521)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-0568
garry.hartlieb2@usdoj.gov
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| GAVIN NEWSOM, in his official capacity as Governor of the State of California, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States of America, et al., <br><br> *Defendants*. | Case No. 3:25-cv-04870-CRB <br><br> **DEFENDANTS' RESPONSE TO ORDER DIRECTING FILING** |

**INTRODUCTION**

The Court should deny Plaintiffs' procedurally improper and substantively unjustified request for expedited discovery. Plaintiffs have lost this case, full stop, and this Court should read the writing on the wall and refuse to entertain the unbelievably broad and unnecessary requested discovery, including the request to depose two national security officials during defense operations. Their requests should also be denied because they are untimely and fail to demonstrate good cause under the applicable multi-factor standard for reasonableness. Nor have Plaintiffs shown that discovery should be expedited instead of proceeding in the normal course. If, however, the Court concludes Plaintiffs have carried their burden to establish a need for discovery, the Court should transfer the case instead of ordering that discovery. Plaintiffs engaged in forum shopping in making San Francisco the venue for their lawsuit about Los Angeles. If discovery is needed, the case should proceed in the Central District of California, where the witnesses work and relevant facts occurred.

**BACKGROUND**

On June 12, 2025, this Court entered a temporary restraining order and set an expedited schedule for a motion for a preliminary injunction. TRO Op. at 36. Defendants appealed the Court's order that night and on the next day moved to defer preliminary injunction proceedings until after the Ninth Circuit ruled on Defendants' motion to stay. ECF No. 72. Plaintiffs opposed. ECF No. 73. They argued that the June 16 deadline for their motion would allow them to submit "[a] more complete record" that would "help inform the Court as to the merits of Plaintiffs' arguments on *all* their claims and how to craft *any* preliminary injunctive relief." *Id*. at 2 (emphasis added). This Court agreed, concluding "[d]elay would be counterproductive." ECF No. 74. Plaintiffs then moved for a preliminary injunction. ECF No. 77.

Following the Ninth Circuit's stay of the Court's order, Plaintiffs filed a reply brief in support of their motion for a preliminary injunction that challenged for the first time the geographic and temporal scope of Defendants' memorandums. ECF No. 87, at 7–8. Plaintiffs cited no law for this argument other than a decision of the U.S. Supreme Court reversing a defamation conviction on First Amendment grounds. *Id*. at 8 (quoting *Garrison v. Louisiana*, 379 U.S. 64, 75

(1964)). At last week's hearing, Plaintiffs stated that they "want the Court to address the duration of the [President's and Secretary of Defense's] order[s] and the parameters for when the order[s] should conclude." Tr. 8:25–9:2. But Plaintiffs made no mention of any need for discovery on that issue, instead saving that request for their supplemental brief. In that brief, they asked the Court to authorize expedited written discovery, identifying requests for production, requests for admission, and interrogatories as possibilities. ECF No. 94 at 7. They also requested depositions of the Deputy Commanding General for the United States Army North Command and the Director of the Los Angeles Field Office for the Department of Homeland Security (DHS) Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO). *Id*. at 9. Defendants promptly objected to Plaintiffs' request, and the Court ordered Defendants to submit a response. ECF Nos. 97, 98.

## ARGUMENT

For multiple reasons, discovery is plainly unwarranted,[1] and even if some limited discovery were appropriate, there is no urgency, and thus, any such discovery should not proceed on an expedited basis.

I. **Plaintiffs' Substantive Claims Fail, and thus Discovery Would Not Aid A Ruling on The Preliminary Injunction Motion**

The requisite good cause for discovery is wholly lacking here because discovery could not affect the resolution of Plaintiffs' preliminary injunction motion, which must be denied regardless of whatever facts Plaintiffs might elicit through discovery. *See Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012) (discovery may not take place prior to a Rule 26(f) conference absent good cause). As we explained in our supplemental brief, ECF No. 95 at 1–2, the Ninth Circuit's decision staying this Court's June 12 Order logically forecloses Plaintiffs' Posse Comitatus Act ("PCA") claim as a matter of law: the Ninth Circuit held that the President "likely acted within his authority in federalizing the National Guard under 10 U.S.C.

---

[1] Defendants previously objected to the tardiness of Plaintiffs' request for discovery because it was raised for the first time in their supplemental brief. ECF No. 97. Defendants incorporate that argument fully here and will not belabor it, given the Court's order that Defendants respond to the discovery request.

§ 12406(3)," *Newsom et al. v. Trump et al.*, --- F.4th ----, 2025 WL 1712930, at *12 (9th Cir. 2025). Section 12406(3) allows the President to federalize the Guard where he "is unable with the regular *forces to execute the laws of the United States*," 10 U.S.C. § 12406(3) (emphasis added), and the statute further authorizes "the President to federalize Guardsmen "in such numbers as he considers necessary to . . . *execute those laws*," *id.* § 12406 (emphasis added).

To be clear, and as Defendants have explained, the Marines and federalized Guard are not enforcing the law; they are merely providing protection for federal officials and federal property. *See* ECF No. 95 at 1–2. But any facts concerning this question are ultimately immaterial given that Section 12406(3) is an express statutory authorization for purposes of the PCA, and the Ninth Circuit has already held that the President likely acted within his authority in invoking that Section. And in any event, the Plaintiffs (a State and its Governor) have no cause of action to enforce the PCA, *see* ECF No. 84 at 23, which is a criminal statute that protects the public as a whole and contains no express cause of action. That conclusion is reinforced by a decision from the Supreme Court just last week. *See NRC v. Texas*, No. 23-1300, slip op. at 14 (U.S. June 18, 2025) (holding that courts historically "recognized a right to equitable relief" only where allegedly "ultra vires" action was "in violation of the rights of the individual").

As for discovery into the scope and duration of the federalization of the National Guard under Section 12406, not only is the challenge to that issue itself forfeited, ECF No. 95 at 3, but Plaintiffs have never identified any legal authority possibly supporting such a challenge. Nothing about *Garrison* limits the President's Commander in Chief power or his inherent authority to protect federal law enforcement officers from attacks. Even if such authority existed, no discovery would answer where and for how long the mission must continue. *See* Pls.' Supp. Br. at 9 (requesting discovery into "where, how, and for how long [the National Guard] may be deployed"). As Defendants have explained, the statute permits the President to federalize Guardsmen "in such numbers as he considers necessary to repel the invasion, suppress the rebellion, or execute those laws." 10 U.S.C. § 12406. The 60-day timeframe set by the Secretary of Defense has not yet elapsed and the Secretary has not yet determined whether the evolving situation on the ground would require the deadline to be shortened or extended. Discovery into such discretionary issues,

including any unknown future determination, would be inappropriate and inconsistent with the "especially deferential" framework that the Ninth Circuit found applicable to the President's decision to invoke Section 12406 in the first place. *Newsom v. Trump*, 2025 WL 1712930, at *7.

## II. Plaintiffs' Request for Discovery is Untimely

Plaintiffs' request for discovery also comes far too late. The Court ordered the parties to brief a preliminary injunction motion on the schedule that Plaintiffs preferred, and that briefing has now closed. At no point before or during that briefing did Plaintiffs argue they needed expedited discovery to present their arguments. In essence then, Plaintiffs' request for discovery is a concession that, once briefing concluded, they lacked a basis for a preliminary injunction on these issues. Under such circumstances, discovery must proceed in the ordinary course. Both the Federal Rules of Civil Procedure and the Local Rules of this Court provide that, absent unusual circumstances, discovery should not proceed before the parties have conferred as required by Federal Rule of Civil Procedure 26(f). Specifically, this Court's Local Rules mandate that "[e]xcept in categories of proceedings exempted from initial disclosure . . . or when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any sources before the parties have conferred as required by Fed. R. Civ. P. 26(f)." Local Civ. R. 26.2(a). Here, of course, no Rule 26(f) conference has taken place; indeed, Defendants' *response to the Complaint* is not even due until August 11. And as already discussed above, there is no good cause for discovery now.

## III. Plaintiffs Fail to Demonstrate Good Cause for their Discovery Requests Which are Overbroad and Impermissibly Burdensome

Plaintiffs have failed to carry their burden to demonstrate how their proposal for discovery satisfies the factors courts use to assess reasonableness and good cause. That typically requires the Court to consider: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Rovio*, 907 F. Supp. 2d at 1099; *see also Palermo v. Underground Solutions, Inc.*, 2012 WL 2106228, at *3 (S.D. Cal. June 11, 2012) (denying request for expedited discovery

because the discovery requests "are not narrowly tailored to obtain evidence relevant to Palermo's motion for preliminary injunction"); *see also Hum. Rts. Watch v. Drug Enf't Admin.*, 2015 WL 13648069, at *3 (C.D. Cal. July 10, 2015) ("A party's expedited discovery requests should be narrowly tailored" so as to discover only the minimum amount of information needed to achieve its stated purpose." (quotation marks omitted)); *cf. Rovio*, 907 F. Supp. 2d at 1100 ("Without a copy of the proposed discovery requests, the Court cannot determine whether the requests are narrowly tailored such that they would not present an undue burden on Defendants at this stage of the proceedings.").

But Plaintiffs have not provided Defendants or the Court with enough detail to apply this test. If the Court is inclined to consider permitting discovery, at the very least, it should require Plaintiffs to first explain: (1) the specific discovery they wish to seek; (2) why that discovery is necessary to resolve their pending motion; (3) why that discovery is narrowly tailored to obtain evidence necessary for disposition of the preliminary injunction motion; and (4) why they cannot obtain the information through other means. A simple desire to salvage the inescapable conclusion that the pending motion must be denied is not enough. And Defendants should be permitted a reasonable opportunity to respond, including addressing whether any burden on Defendants is proportionate to the need for the requested discovery. Without additional explanations from Plaintiffs, and without allowing Defendants to respond to such explanations, including whether the burden of discovery on Defendants is proportional to the need for such discovery, there is simply no basis for the Court to find that Plaintiffs have satisfied the "good cause" standard.

Even without knowing the exact contours of Plaintiffs' discovery requests, it is apparent that Plaintiffs' proposed discovery is grossly overbroad and burdensome. For example, that discovery, including extensive written discovery and depositions, would substantially burden national security officials tasked with coordinating and implementing the federal response to violent attacks against law enforcement. Plaintiffs seek an extensive amount of information from multiple different custodians, including discovery into the nature and extent of past and present ICE operations, specifics about Marine and National Guard deployment, and depositions from high-ranking officials at ICE and the Department of Defense. *See* Pls.' Supp. Br. at 8–9. The

Defendants' Response to Order Directing Filing
3:25-cv-04870-CRB

planned depositions of a Major General and ICE Field Office Director are especially disproportionate, as those depositions would distract two senior national security officials from their work countering active threats to federal personnel and property.

Plaintiffs also seek discovery of law enforcement sensitive information, such as "written reports or summaries of enforcement actions, and information related to ICE's ability to carry out arrests and deportations." Pls.' Supp. Br. at 8. Likewise, Plaintiffs seek to have the National Guard to provide "internal reports, summaries, photos, or other such evidence related to the operations or practices," Pls.' Supp. Br. at 8, which implicates sensitive and privileged information, as they acknowledge. Such burdensome discovery is plainly out of proportion to the needs of the case. *See Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009) ("in every case, the court has the discretion, in the interests of justice, to prevent excessive or burdensome discovery") (quoting *Qwest Commc'ns Int'l, Inc.,* 213 F.R.D. at 419; *Wachovia Sec., L.L.C.*, 571 F.Supp.2d at 1050). Indeed, the purpose of delaying discovery until after a motion to dismiss is because causing "defendants . . . to expend significant resources in responding to plaintiffs' discovery requests [is] unjust" because if defendants' motion to dismiss is later granted, "defendants would have been forced to expend significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 99 (D.D.C. 2014). Here, the time for Defendants to answer the complaint has not expired and the Ninth Circuit's order indicates that Plaintiffs are not likely to succeed on the merits. Under these circumstances, where the scales already tip against Plaintiffs, it is especially prudent to protect Defendants from the burdens of unnecessary discovery.

**IV.   There is no Urgency Warranting Expedited Discovery**

Even if discovery were appropriate—and it is not—*expedited* discovery is unwarranted. *See Ahern Rentals Inc. v. Young*, 2021 WL 6064206, at *1 (D. Nev. Dec. 22, 2021) ("Because expedited discovery is not the norm, the movant must make a prima facie showing of the need for that expedited discovery."); *accord Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. May 19, 2000); *Integrated Sports Media & Ent. PPV, LLC v. Livecast 365*, 2022 WL 2103008, at *1 (C.D. Cal. Mar. 31, 2022); *see also Magellan Group Inv., LLC v.*

Defendants' Response to Order Directing Filing
3:25-cv-04870-CRB

*First Indigenous Depository Co.*, LLC, 2005 WL 1629940, *2 (N.D. Cal. 2005) (denying without prejudice plaintiff's request for expedited discovery when plaintiff "has not made any showing as to why it cannot wait to conduct the requested deposition through the normal course of discovery"). Here, there is no urgency justifying expedited discovery. This Court already recognized that the President's Memorandum and DoD memoranda "do not direct the federalized National Guard members to undertake activities that would violate the [PCA]." TRO Op. at 28. Plaintiffs' speculation that the Guard is engaging in activities that violate the PCA is foreclosed by the Ninth Circuit's decision but, even if it were not, any such allegation does not logically challenge the federalization of the National Guard itself. ECF No. 95 at 2 n.1. And as to Plaintiffs' challenge to the duration of the Order, Plaintiffs' concerns about duration are entirely speculative when the initial 60-day timeframe has not yet elapsed, and the actual duration is unknown at present. In addition, the parties are briefing the appeal of this Court's TRO order from July 22, to September 19, 2025, and the Ninth Circuit will again consider the parties' arguments in that posture. Such circumstances counsel against, not in favor of, proceeding to discovery because the legal issues—and thus, any appropriate scope of discovery—may be further narrowed by the Ninth Circuit.

**V.  If Discovery is Ordered, This Matter Should be Transferred to the Central District of California**

Finally, if the Court is inclined to order the discovery Plaintiffs have requested, it should transfer this matter to the Central District of California, where the relevant events occurred and the witnesses work. This case's filing in San Francisco is plainly the product of forum shopping, and California cannot credibly claim otherwise. "Where forum-shopping is evident . . . courts should disregard plaintiff's choice of forum." *Foster v. Nationwide Mut. Ins. Co.*, No. C 07-04928 SI, 2007 WL 4410408, at *2 (N.D. Cal. Dec. 14, 2007) (citing *Italian Colors Rest. v. Am. Express Co.*, No. C-03-3719, 2003 WL 22682482 *4 (N.D. Cal. Nov. 10, 2003); *Royal Queentex Enters. v. Sara Lee Corp.*, No. C-99-04787, 2000 WL 246599 *3 (N.D. Cal. Mar. 1, 2000)). Nearly every fact relevant to this dispute occurred in the Central District of California, and the consequences of the final judgment entered in this case will be felt by those who live in that district. But Plaintiffs nonetheless chose to sue in San Francisco, which has emerged as a favorite forum for those

challenging this administration's policies. Their gamesmanship at the expense of citizens impacted by the case and witnesses should not be permitted.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). In considering a Section 1404(a) transfer motion, the court's initial step is to determine if the action subject to the motion to transfer "might have been brought" in the transferee district (that is, the district to which the moving party seeks to transfer the case). *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). Next, the court must consider "both private factors, which go to the convenience of the parties and witnesses, and public factors which go to the interests of justice." *Smith v. Corizon Health, Inc.*, No. 16-cv-00517-WHA, 2016 WL 1275514, at *2 (N.D. Cal. Apr. 1, 2016). The factors that a court may consider include: (1) the plaintiff's choice of forum; (2) the parties' convenience; (3) the witnesses' convenience; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) the feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time to trial in each forum. *Sanchez Mora v. U.S. Customs & Border Prot.*, No. 3:24-CV-02430-TLT, 2024 WL 5378335, at *7 (N.D. Cal. Nov. 4, 2024); *see also Jones v. GNC Franchising*, 211 F.3d 495, 498-99 (9th Cir. 2000). "The degree to which courts defer to the plaintiff's chosen venue is substantially reduced where . . . the forum chosen lacks a significant connection to the activities alleged in the complaint." *Fabus Corp. v. Asiana Exp. Corp.*, No. C-00-3172 PJH, 2001 WL 253185, *1 (N.D. Cal. Mar. 5, 2001).

There is of course no dispute that venue is proper in the Central District of California, where the relevant events have occurred and are occurring. *See* 28 U.S.C. § 1391(e). And especially considering Plaintiffs' forum shopping, the factors support transfer to the Central District. The case arises out of facts that took place in Los Angeles and involves witnesses situated there. Plaintiffs' complaint mentions "Los Angeles" 28 times, the L.A. Sheriff's Department 12 times, and the L.A. Police Department 12 times. Federalized members of the National Guard and Marines were deployed to locations in the Central District—not the Northern District—to restore order. Notably, one of the protest locations highlighted in Plaintiffs' Complaint was the Roybal

Federal Building and U.S. Courthouse, where Central District judges sit. Compl. ¶ 33. It would be difficult to imagine a more significant local connection to a District Court than violence just outside its courthouse.

If, as Plaintiffs suggest, this case will require discovery, the Central District is the appropriate venue for that. The witnesses that Plaintiffs wish to depose are tending to critical matters of national security in Los Angeles. And most of Plaintiffs' witnesses appear to be in Los Angeles too. Plaintiffs have submitted declarations from at least four witnesses who signed their declarations there. *See* ECF Nos. 77-3, 77-4, 87-4, 87-5. On the other side of the ledger, Plaintiffs claim San Francisco is the appropriate forum for this case because it is convenient for them and their attorneys. According to the Complaint's venue allegations, "the California Attorney General and the State of California have offices at 455 Golden Gate Avenue, San Francisco, California and at 1515 Clay Street, Oakland, California." Compl. ¶ 13. That weak connection to this district court does not override the Central District's much stronger ties to this dispute—especially where the same facts are equally true for the Central District. The State of California has asserted that it is a "resident" of the Central District. *See McAleenan*, No. 2:19-cv-07390 (C.D. Cal. Aug. 26, 2019), ECF No. 1 ¶ 11. And the California Attorney General has an office in Los Angeles. Mailing Addresses and Office Locations, Office of the California Attorney General, https://oag.ca.gov/contact/mailing-addresses. If the Court concludes discovery may be warranted in this case, it should transfer the case to the judicial district that will be most convenient for witnesses, the parties, and the citizens affected by the outcome of this dispute. Plaintiffs' transparent desire to forum shop does not trump those interests.

## CONCLUSION

In sum, the Court should deny the motion for a preliminary injunction without allowing any discovery, since that is the result dictated by the logic of the Ninth Circuit's decision staying this Court's June 12 Order. If the Court is inclined to entertain the request for discovery, it should defer any ruling on whether to allow discovery and the scope of any discovery pending further briefing on whether Plaintiffs have satisfied the "good cause" standard. At a minimum, expedition

is unwarranted, and if any discovery is to take place, the case should be transferred to the Central District of California.

Dated: June 25, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Federal Programs Branch
(CA Bar No. 296283)

ALEXANDER K. HAAS
(CA Bar No. 220932)
Director, Federal Programs Branch

JEAN LIN
(NY Bar No. 4074530)
Special Litigation Counsel
Federal Programs Branch


/s/ Garry D. Hartlieb
CHRISTOPHER EDELMAN
(DC Bar No. 1033486)
Senior Counsel
GARRY D. HARTLIEB
(IL Bar No. 6322571)
BENJAMIN S. KURLAND
(DC Bar No. 1617521)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel.: 202-305-0568
Email: garry.hartlieb2@usdoj.gov

*Attorneys for Defendants*