IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAVIN NEWSOM, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>    Defendants. | Case No. 25-cv-04870-CRB<br><br>**ORDER REGARDING DISCOVERY AS TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

On June 12, 2025, this Court granted Plaintiffs' application for a temporary restraining order and stayed the order until noon on June 13. See TRO Order (dkt. 64). The Ninth Circuit administratively stayed the temporary restraining order the same day to consider whether to stay it pending appeal. See Admin. Stay Order, Newsom v. Trump, No. 25-3727 (filed June 12, 2025), ECF No. 10.1. After briefing and a hearing, the Ninth Circuit stayed the temporary restraining order pending appeal. See Stay Order, Newsom, No. 25-3727 (filed June 19, 2025), ECF No. 32. Notably, the Ninth Circuit did not stay the proceedings in this case—only the temporary restraining order. Id.

As the Ninth Circuit and the parties recognize, Plaintiffs did not challenge on appeal this Court's holding under the Posse Comitatus Act that because "Defendants exceeded their lawful authority by violating 10 U.S.C. § 12406" the Court "need not reach" the Posse Comitatus Act ground for Plaintiffs' ultra vires claim. See id. at 37 ("Before the district court, Plaintiffs argued that certain uses of the National Guard would violate the Posse Comitatus Act. The district court found that claim to be premature, and Plaintiffs have not renewed it before us."); TRO Order at 29. The Ninth Circuit thus stated that "the parties' disputes about how federal forces are being deployed are not before [it]." Stay

1    Order at 13.  On June 20, 2025, the Court instructed the parties to submit supplemental

2    briefing as to whether the Court retains jurisdiction over this case as to Plaintiffs' <u>ultra</u>

3    <u>vires</u> claim relying on the Posse Comitatus Act.  June 20 Tr. (dkt. 91) at 5:13–17.

4        Both parties posit that the Court does retain that jurisdiction.  <u>See</u> Pls.' Supp. Jx. Br.

5    (dkt. 94) at 1–7; Defs.' Supp. Jx. Br. (dkt. 95) at 2 & n.1.  Upon review, the Court agrees.

6    The Court may proceed with the case, including by hearing arguments on the propriety of a

7    preliminary injunction on Posse Comitatus Act grounds and by allowing discovery.  <u>See</u>

8    Fed. R. Civ. P. 62(d); <u>Plotkin v. Pac. Tel. & Tel. Co.</u>, 688 F.2d 1291, 1293 (9th Cir. 1982)

9    ("[I]t is firmly established that an appeal from an interlocutory order does not divest the

10   trial court of jurisdiction to continue with other phases of the case."); <u>accord</u> <u>Adams v.</u>

11   <u>City of Chicago</u>, 135 F.3d 1150, 1153 (7th Cir. 1998) (permitting a plaintiff to submit new

12   evidence in support of a new preliminary injunction motion while an earlier preliminary

13   injunction was on appeal).  A key limitation on the Court's jurisdiction, as both parties also

14   recognize, is that the Court cannot interfere with the subject of the appeal—the validity of

15   President Trump's federalization of the National Guard pursuant to 10 U.S.C. § 12406.

16   Pls.' Supp. Jx. Br. at 3; Defs.' Supp. Jx. Br. at 2; <u>see also</u> <u>Prudential Real Est. Affiliates,</u>

17   <u>Inc. v. PPR Realty, Inc.</u>, 204 F.3d 867, 880 (9th Cir. 2000) ("A district court lacks

18   jurisdiction to modify an injunction once it has been appealed <u>except to maintain the status</u>

19   <u>quo among the parties</u>." (emphasis added)).

20       Though the parties agree on the jurisdictional question, they diverge as to what

21   steps the Court should take next.  Defendants would have the Court immediately rule on

22   Plaintiffs' motion for a preliminary injunction and deny the motion on the grounds that the

23   Ninth Circuit's stay order "logically forecloses Plaintiffs' Posse Comitatus Act claim."

24   Defs.' Supp. Jx. Br. at 1; <u>see also</u> Defs.' Resp. re: Disc. (dkt. 99) at 2.  Plaintiffs would

25   instead have the Court permit limited expedited discovery into (1) the conduct to date of

26   the federalized National Guard troops and Marines and (2) the appropriate geographic and

27   temporal scope of the National Guards' federalization.  Pls.' Supp. Jx. Br. at 8–9.  As a

28   rejoinder to Plaintiffs' request for discovery, Defendants suggest that the Court should

United States District Court
Northern District of California

transfer this action to the Central District of California. Defs.' Resp. re: Disc. at 7–9. The Court first considers Defendants' merits argument and then turns to their request for transfer before ruling on Plaintiffs' request for expedited discovery.

### A.     Merits of the Posse Comitatus Act Claim

Defendants contend that the Ninth Circuit's order necessarily means that the Court must reject Plaintiffs' Posse Comitatus Act claim. They point out that "[t]he Ninth Circuit held that the President 'likely acted within his authority in federalizing the National Guard under 10 U.S.C. § 12406(3).'" Defs.' Supp. Jx. Br. at 1 (quoting Stay Order at 30). From there, they argue that the President has the authority to federalize the National Guard "as he considers necessary to … execute those laws" that he was unable to execute under § 12406(3), and that this implicitly overrides the Posse Comitatus Act's prohibition on using the military (including federalized National Guard members) "to execute the laws." Id. (citing 10 U.S.C. § 12406 and 18 U.S.C. § 1385). Defendants thus assert that "it would be illogical to hold that, although the President can call up the National Guard when he is unable 'with the regular forces to execute the laws of the United States,' the Guard, once federalized, is forbidden from 'executing the laws.'" Id. (cleaned up) (citations omitted).

Defendants' newly minted argument is premature for at least three reasons. The first reason is that the argument has not been fully briefed—Defendants make this argument in just a few sentences, and Plaintiffs have not even had a chance to respond. Indeed, the Court is unsure how far Defendants mean to take this newly minted argument. At its broadest, their argument could be construed to say that once the President federalizes the National Guard under 12406(3), the Posse Comitatus Act cannot apply to any federalized National Guard members. But that would ignore key textual differences between § 12406 and the Posse Comitatus Act. Section 12406 is limited to "laws of the United States"—that is, federal law—and at most suggests that the National Guard might be able to enforce "those laws" that the President was unable to enforce using "the regular forces." 10 U.S.C. § 12406 (emphasis added). The Posse Comitatus Act, meanwhile, prohibits military forces from acting "as a posse comitatus or otherwise to execute the

3

laws" more generally. 18 U.S.C. § 1385 (emphasis added). Even a narrower reading of Defendants' argument—that § 12406 operates as an exception to the Posse Comitatus Act only to the extent that the federalized National Guard is enforcing the federal laws that the President determined could not be enforced with the regular forces—has not yet been tested by the adversarial process. See Polk County v. Dodson, 454 U.S. 312, 318 (1981) ("The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness."); United States v. Sineneng-Smith, 590 U.S. 371, 375 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation.").

A second reason why Defendants' argument is premature is that its success may hinge on evidence that would be gathered in the very discovery that Plaintiffs seek. Assuming for now that the narrower iteration of Defendants' argument is legally sound, Plaintiffs' Posse Comitatus Act claim might remain viable if they can present evidence that Defendants are using the federalized National Guard members to enforce state law or federal law unrelated to "those laws" that justified federalizing the National Guard in the first place. To be sure, it is unclear whether the President's discretion under § 12406 (as interpreted by the Ninth Circuit in its stay order) extends to this analysis, but that raises yet a third reason why Defendants' argument is premature: it blurs the lines between the matters over which this Court retains jurisdiction and those pending before the Ninth Circuit. In effect, Defendants would have this Court ignore the Ninth Circuit's observation that "the parties' disputes about how federal forces are being deployed are not before [it]" and instead conclude that the Ninth Circuit implicitly foreclosed the same disputes it purported not to reach. Stay Order at 13, 37. The Court is not inclined to infer and speculate as to the exact scope and impact of the Ninth Circuit's stay order—an order which is by its very nature preliminary as the Circuit proceeds to hear the merits of the appeal.

Accordingly, the Court declines as premature Defendants' invitation to deny based on the Ninth Circuit's stay order Plaintiffs' motion for a preliminary injunction on Posse Comitatus Act grounds.

4

**B.      Transfer**

Defendants next propose that the Court transfer the matter to the Central District of California pursuant to 28 U.S.C. § 1404(a). They contend that Plaintiffs engaged in forum shopping by filing the case in San Francisco and that witnesses and evidence are more accessible to the Central District. Defs.' Resp. re: Disc. at 7–9.

The transfer statute states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The statute therefore contemplates both private factors ("the convenience of parties and witnesses") and public factors ("the interest of justice"). Brackett v. Hilton Hotels Corp., 619 F. Supp. 2d 810, 820 (N.D. Cal. 2008). The Court concludes that the public factors disfavor transfer in this case and that the private factors neither favor nor disfavor transfer, and accordingly denies Defendants' request for transfer.

Starting with the public factors, judicial efficiency most strongly counsels against transfer. This Court has already invested significant resources in this case by familiarizing itself with the novel legal issues and complex factual record. Transferring this case would force another court in another district to quickly come up to speed with this fast-moving case, which in a matter of two weeks has produced hundreds (if not thousands) of pages of briefing. That is not in the interest of justice. See Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979) (affirming denial of motion to transfer when "[t]he district court was familiar with the case and transfer may have led to delay"); Douglas v. Chariots for Hire, 918 F. Supp. 2d 24, 34–35 (D.D.C. 2013) ("Where a Court has gained knowledge and familiarity with the facts, the interests of justice and concerns of efficiency militate in favor of retaining the suit."). And no other public factors—such docket congestion, familiarity with local law, or parallel claims, see Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000)—weigh in favor of transfer.

As for the private factors, they are essentially in equipoise. On the one hand, Plaintiffs' choice of forum disfavors transfer. To attack this factor, Defendants contend

5

that Plaintiffs' filing in San Francisco "is plainly the product of forum shopping, and California cannot credibly claim otherwise." Defs.' Resp. re: Disc. at 7. But this accusation is conclusory: Defendants do not contend that this District is an improper forum or that Plaintiffs "manipulat[ed] or gam[ed] the system" by filing here. See Viesti Assocs., Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC, No. 16-cv-7315-RS, 2017 WL 1233336, at *2 (N.D. Cal. Apr. 4, 2017); cf. Harms v. Experian Info. Sols., Inc., No. C 07-697 JF, 2007 WL 1430085, at *2 (N.D. Cal. May 14, 2007) (finding that plaintiffs engaged in forum shopping after plaintiffs' counsel dismissed previous action in original forum). So Plaintiffs' choice of forum is entitled to at least some weight. In re Ferrero Litig., 768 F. Supp. 2d 1074, 1079 (S.D. Cal. 2011).[1] On the other hand, the events giving rise to President Trump's June 7 order federalizing the California National Guard took place mostly in Los Angeles, and the National Guard has now mostly been deployed there. The Central District may therefore be a more convenient forum for some witnesses and evidence. That said, Defendants do not identify any Los Angeles–based witnesses with particularity, explain why live testimony by those witnesses would be necessary given the circumstances of this case, or proffer that those witnesses would be unwilling to travel to give live testimony if deposition testimony were unsatisfactory. See Emps. Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1169 (9th Cir. 2010) (requiring the proponent of transfer to make certain showings of inconvenience). Potential inconvenience to Los Angeles–based witnesses does not outweigh Plaintiffs' choice of venue at this time.

Because the public factors weigh strongly against transfer and the private factors are roughly balanced, the Court denies without prejudice Defendants' request for transfer to the Central District of California.

---

[1] Defendants suggest that Plaintiffs' choice of forum is entitled to little weight because there is only a "weak connection" between this case and this District—namely, the California Attorney General's offices in San Francisco and Oakland. Defs.' Resp. re: Disc. at 9. But President Trump's federalization of the National Guard implicates servicemembers across the state. These statewide impacts are felt in this District, even if there are additional facts specific to the Central District. Moreover, the June 7 order by its terms does not apply only to Los Angeles or the Central District.

### C. Discovery

Plaintiffs, for their part, seek leave to conduct expedited discovery in support of their motion for a preliminary injunction. See Pls.' Supp. Jx. Br. at 7–9. Defendants argue that the Court should reject Plaintiffs' request for discovery because (1) it is untimely, (2) it is overbroad and burdensome, and (3) no urgency warrants expedited discovery. Resp. at 4–7.

#### 1. Timeliness

Defendants first contend that Plaintiffs' request for discovery is untimely. Id. at 4. They simultaneously suggest both that discovery is too late, because briefing on the motion for preliminary injunction has closed, and too early, because the parties have not yet held a Rule 26(f) conference. Id. But briefing on the preliminary injunction hearing has not "closed." The parties continue, appropriately, to address new issues pertaining to injunctive relief, see MPI (dkt. 77); Opp'n to MPI (dkt. 84); Reply re MPI (dkt. 87); Defs.' Supp. Jx. Br.; Pls.' Supp. Jx. Br.; Defs.' Resp. re: Disc.; the Court has not yet ruled on injunctive relief; and injunctive relief demands everyone's attention to "additional detail and contemporary facts about an evolving situation," see Order Denying Admin. Mot. (dkt. 74) at 1. So it is not too late for Plaintiffs' requested discovery; indeed, such discovery is likely to be immensely helpful to the Court, the parties, and the public in reaching the correct result.

Nor is it too early. Federal Rule of Civil Procedure 26 specifically provides that a court may set its own timetable for initial disclosures, even though "14 days after the parties' Rule 26(f) conference" is the usual timeline. Fed. R. Civ. P. 26(a)(1)(C); see also Fed. R. Civ. P. (d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except … when authorized by … court order.").[2] Indeed, district courts have "broad discretion" over discovery, including to modify the

---

[2] Defendants also cite to a nonexistent rule about when discovery can be sought before a Rule 26(f) conference. Compare Defs.' Resp. re: Disc. at 4 (citing to Local Civ. R. 26.2(a)) with Local Civ. R. 26 (which contains only a 26-1 subpart).

7

1 standard discovery schedule. Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).

2 Accordingly, timeliness does not bar discovery here.

### 2. Breadth and Burden

Defendants next assert that, although Plaintiffs have allegedly provided insufficient detail about their discovery request, "it is apparent" that the request is both overbroad and burdensome. Defs.' Resp. re: Disc. at 4–6. Plaintiffs request discovery on (1) "their claim that Defendants have acted ultra vires of the PCA" and (2) "the permissible scope and duration of the federalization of the National Guard under Section 12406." Pls.' Supp. Jx. Br. at 7. Plaintiffs seek that information, to be propounded on June 26, in the form of:

- enforcement actions that have already taken place and generalized instructions on authorized use of these federalized troops and Marines;

- documents regarding the use or deployment of the National Guard and/or military in operations that are not taking place on federal property, but rather on the streets of communities in Southern California;

- facts related to federal law enforcement actions involving federalized National Guard or Marines since the federalization order;

- protocols or rules of engagement issues, as well as any internal reports, summaries, photos, or other such evidence related to the operations or practices;

- tailored written discovery regarding whether the circumstances of June 6 and 7 in Los Angeles justify the continued deployment of the National Guard in Los Angeles and elsewhere in the State and justify deployments that are untethered to protection against the kinds of harms against federal personnel and property that the Ninth Circuit concluded likely justified the initial federalization," including "information regarding deployments … and information relevant to whether Defendants[] remain unable to enforce immigration laws in Los Angeles or elsewhere" and "written reports or summaries of enforcement actions, and information related to ICE's ability to carry out arrests and deportations;

- and depositions of some of Defendants' deponents, including ICE ERO Field Officer Director Santacruz, and Major General Niave F. Knell.

Id. at 8–9. Plaintiffs are entitled to much of this information.

How President Trump has used and is using the federalized National Guard and the Marines since deploying them at the beginning of June is plainly relevant to the Posse Comitatus Act. See United States v. Dreyer, 804 F.3d 1266, 1272 (9th Cir. 2015) (en banc) (citation omitted) (explaining that the Act prohibits military personnel from acting as

a "posse comitatus," or those "upon whom a sheriff could call for assistance in preventing any type of civil disorder"). The Court has a difficult time imagining how limited written discovery on less than a month's worth of enforcement actions could be excessive, let alone "unbelievably broad." See Defs.' Resp. re: Disc. at 1. If it truly is, then Defendants can object, just like any litigant. See, e.g., In re ATM Fee Antitrust Litig., 233 F.R.D. 542, 545 (N.D. Cal. 2005) ("The objecting party has the burden to substantiate its objections.").[3] And if any of the responsive documents are privileged, as Defendants suggest, see Defs.' Resp. re: Disc. at 6, then Defendants may follow the usual practice for claiming privilege. See Apple, Inc. v. Samsung Elec. Co., 306 F.R.D. 234, 237 (N.D. Cal. 2015) ("The party asserting the privilege bears the burden of establishing all necessary elements."). Plaintiffs have already stated that "to the extent that there is concern related to safety of federal officers or military personnel engaging in future operations, Plaintiffs would of course work with Defendants to craft an appropriate protective order." Pls.' Supp. Jx. Br. at 8 n.3. While Defendants decry the "substantial[] burden" on "national security officials tasked with coordinating and implementing the federal response to violent attacks against law enforcement," Defs.' Resp. re: Disc. at 5, the Court is unpersuaded that one day of depositions is excessive. See Fed. R. Civ. P. 30(d)(1) ("Unless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours."). If the parties are truly unable to schedule the few depositions that Plaintiffs envision through the meet-and-confer process, then Defendants can and undoubtedly will seek relief from the Court. For now, Defendants' arguments about the overbreadth and burden of Posse Comitatus Act discovery are too abstract and unsubstantiated to prevail.

Yet the Court agrees with Defendants as to discovery into the permissible duration of the federalization of the National Guard. This Court held that Plaintiffs were likely to

---

[3] The Court therefore agrees with Defendants that they "should be permitted a reasonable opportunity to respond, including addressing whether any burden on Defendants is proportionate to the need for the requested discovery." Defs.' Resp. re: Disc. at 5. The Court also expects, however, that the parties will meet and confer in good faith and that they will endeavor to resolve what issues they can without judicial intervention.

9

1  prevail on the section 12406 claim, TRO Order at 22, 24, 26, but the Ninth Circuit stayed
2  that order and held that President Trump "likely acted within his authority in federalizing
3  the National Guard," Stay Order at 30.  In light of that stay, the propriety of President
4  Trump's federalization of the National Guard is not now a viable basis for preliminary
5  injunction, especially since the initial 60-day window has not yet passed.
6       Accordingly, the Court will only allow discovery as to the Posse Comitatus Act.

### 3. Need for Expedited Discovery

Finally, Defendants insist that even if Plaintiffs are entitled to discovery, Plaintiffs are not entitled to expedited discovery—that is, discovery in advance of a Rule 26(f) conference.  Defs.' Resp. re: Disc. at 6–7 (citing, among other cases, Magellan Grp. Inv., LLC v. First Indigenous Depository Co., No. C 05-01994 JSW, 2005 WL 1629940, at *2 (N.D. Cal. 2005) (denying request for expedited discovery where plaintiff did not make "any showing as to why it cannot wait to conduct the requested deposition through the normal course of discovery")).  Courts in this Circuit allow expedited discovery upon a showing of good cause.  Rovio Ent. Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1099 (N.D. Cal. Nov. 6, 2012) (citing UMG Recordings, Inc. v. Doe, No. C 08-1193 SBA, 2008 WL 4104214, at *4 (N.D. Cal. 2008) (collecting cases)).  The party seeking expedited discovery bears the burden of making this showing.  Id.  Courts consider "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." Id. (citing Am. LegalNet, Inc. v. Davis, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009)).

Plaintiffs have satisfied their burden.  A motion for preliminary injunction based on the Posse Comitatus Act is pending, and discovery into the current state of affairs is undeniably relevant to that motion.  Defendants suggest that "Plaintiffs' request for discovery is a concession that, once briefing concluded, they lacked a basis for a preliminary injunction," Defs.' Resp. re: Disc. at 4, but this ignores the reality of the

rapidly evolving situation on the ground in Los Angeles (and beyond[4]). In addition, Plaintiffs' discovery request appears to be narrowly tailored, and the burden on Defendants appears to be reasonable.[5] Plaintiffs' purpose in requesting expedited discovery is to supplement the record to assist the Court in resolving this important and developing matter. See Pls.' Supp. Jx. Br. at 7. Finally, the Court does not fault Plaintiffs for making their discovery request in advance of the typical discovery process. While Defendants do not see any "urgency" here, Defs.' Resp. re: Disc. at 6, the Court does. The Ninth Circuit has left it to this Court to determine whether Defendants' conduct exceeds their authority under the Posse Comitatus Act, see Stay Order at 13, 37, and the Court will do so.

Because Plaintiffs have satisfied their burden, the Court will allow expedited discovery consistent with the schedule outlined in Plaintiffs' brief.

**IT IS SO ORDERED.**

Dated: June 25, 2025

_____
CHARLES R. BREYER
United States District Judge

---

[4] Plaintiffs, for example, cite a report that federalized National Guard troops participated in a DEA raid of marijuana farms in the Coachella Valley. See Pls.' Supp. Jx. Br. at 8–9. While the Court does not now allow argument on whether the circumstances that justified the initial federalization "may continue indefinitely and in any locale," Plaintiffs may take discovery of how Defendants have used the federalized National Guard and the Marines in Los Angeles and anywhere else that they have been deployed.

[5] In Rovio, Judge Armstrong held that the plaintiff had not clearly shown that its discovery request was narrowly tailored where it had not precisely defined the requested discovery "to include only what is 'essential for the preliminary injunction.'" See 907 F. Supp. 2d at 1100. Plaintiffs have admittedly not submitted a copy of their proposed discovery requests, leaving themselves some latitude. See Pls.' Supp. Jx. Br. at 9 (stating that Plaintiffs "will also seek to depose some of Defendants' declarants," listing Santacruz and Knell as examples (emphasis added)). But Plaintiffs have been far more forthcoming than the plaintiff in Rovio was. See 907 F. Supp. 2d at 1100 (describing the documents sought only as "documents responsive to [unspecified requests for production]"). The Court is satisfied that between Plaintiffs' descriptions of the written discovery they seek, their limitation of possible deponents to individuals who have filed declarations on behalf of Defendants, and this Court's limitation of discovery as to only the Posse Comitatus Act, the universe of discovery at issue is narrowly tailored "to include only what is 'essential for the preliminary injunction.'" See id.