BRETT A. SHUMATE
Assistant Attorney General
ERIC J. HAMILTON (CA Bar No. 296283)
Deputy Assistant Attorney General
ALEXANDER K. HAAS (CA Bar No. 220932)
Branch Director
JEAN LIN (NY Bar No. 4074530)
Special Litigation Counsel
CHRISTOPHER D. EDELMAN (DC Bar No. 1033486)
Senior Counsel
GARRY D. HARTLIEB (IL Bar No. 6322571)
BENJAMIN S. KURLAND (DC Bar No. 1617521)
JODY D. LOWENSTEIN (MT Bar No. 55816869)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GAVIN NEWSOM, in his official capacity as Governor of the State of California, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*,<br><br>*Defendants*. | Case No. 3:25-cv-04870-CRB<br><br>**DECLARATION OF GARRY HARTLIEB REGARDING PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL [ECF NO. 126]** |

I, Garry Hartlieb, declare under penalty of perjury that the following is true and correct:

1. I am an attorney licensed to practice law in the State of Illinois. I am a Trial Attorney in the United States Department of Justice, Civil Division, Federal Programs Branch, and an attorney of record for Defendants in this action. I am authorized to practice in this Court under Local Rule 11-2. I submit this declaration pursuant to Civil L.R. 79-5(f)(3) in support of Plaintiffs' Administrative Motion to file documents under seal in support of their Supplemental Brief in Support of Motion for Preliminary Injunction. *See* ECF No. 126. The facts set forth in this declaration are within my personal knowledge or based upon documents and information I have received in the course of this litigation.

2. "Unless a particular court record is one traditionally kept secret," a party seeking to seal a judicial record bears the burden to "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) (cleaned up); *see also Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1102 (9th Cir. 2016) (Because "plaintiffs' motion for preliminary injunction is more than tangentially related to the merits," the "compelling reason" standard applies.).

3. Defendants respectfully request that the Court maintain under seal each of the following documents that Plaintiffs filed under seal:

- Exhibit 2: document produced by Defendants as DEFS_00003009–3011 (ECF No. 126-5 )
- Exhibit 3: documents produce by Defendants as DEFS_00002830–2836 (ECF No. 126-6)
- Exhibit 4: document produced by Defendants as DEFS_00006271 (ECF No. 126-7)
- Exhibit 11: document produced by Defendants as DEFS_00001212–1214 (ECF No. 126-8)
- Exhibit 12: document produced by Defendants as DEFS_00002661–2662 (ECF No. 126-9)

- Exhibit 13: portions of the deposition of Task Force Deputy Chief of Staff William Harrington (32:4-14, 32:23–33:9, 33:19-22, 64:1-24, 65:21-25, 68:13-22, 69:12-25, 134:1-25, 147:1-25, 148:1-25, 159:1-25, and 211:1-25) (ECF No. 126-10)
- Exhibit 20: document produced by Defendants as DEFS_00002872–2893 (ECF No. 126-11)
- Exhibit 21: document produced by Defendants as DEFS_00003509–3522 (ECF No. 126-12)
- Exhibit 24: document produced by Defendants as DEFS_00001095–1162 (ECF No. 126-13)
- Exhibit 25: document produced by Defendants as DEFS_00007307–7311 (ECF No. 126-14)
- Exhibit 28: document produced by Defendants as DEFS_00002566-2572 (ECF No. 126-15)
- Exhibit 29: document produced by Defendants as DEFS_00000021–26 (ECF No. 126-16)
- Exhibit 30: document produced by Defendants as DEFS_00002531–2546 (ECF No. 126-17)

4. Each of the exhibits listed above has been designated "confidential" or "highly confidential" by Defendants pursuant to the Stipulated Protective Order entered by the Court in this case on July 15, 2025. ECF No. 114.

5. The Stipulated Protective Order in this case defines Confidential information as follows:

> 2.2 "CONFIDENTIAL" Information or Items: information that, at the time of its production in discovery in this Action, or thereafter, is designated confidential by the Producing Party or any Party because of a good faith belief that the information is both:
>
> (a) not in the public domain, or if in the public domain, is improperly in the public domain; and
>
> (b) one or more of the following:

      (i) personal financial, medical, tax, employment, personnel, or other private information relating to an individual that would properly be redacted from any public court filing pursuant to Federal Rule of Civil Procedure 5.2;

      (ii) personally identifiable information, such as social security numbers, alien registration numbers ("A numbers"), birth dates, home addresses, email addresses, non-public telephone numbers, names of family members, and other similar types of information;

      (iii) information and internal policies and procedures for which disclosure could reasonably give rise to a risk of harm to information technology security, personnel security, or national security interests;

      (iv) information protected by the provisions of the Privacy Act of 1974, 5 U.S.C. § 552a;

      (vi) materials subject to exemptions under the Freedom of Information Act, 5 U. S.C. § 552, including, but not limited to, law enforcement sensitive information, such as information about law enforcement operations, investigations, equipment, personnel, sources, techniques, procedures, or guidelines that would be protected from public disclosure under 5 U.S.C. § 552(b)(7);

      (vi) all information that is derived from Protected Information, even if incorporated into another document or compilation or referred to in testimony, shall be treated as Protected Information.

Stipulated Protective Order, ECF No. 114, at 2-3.

    6. The Protective Order defines Highly Confidential information as follows:

    2.7 HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY: information (regardless of how it is generated, stored, or maintained) that is extremely confidential and/or sensitive in nature and the Designating Party reasonably believes that the disclosure of such material would create substantial risk of significant harm to the Designating Party that could not be avoided by less restrictive means.

*Id.* at 4.

    7. Exhibits 11, 20 and 13 at Tr. 64:1-24, 147:1-25, and 148:1-25 are designed highly confidential, and the remaining exhibits and transcript portions at issue are designated confidential. Each of the documents subject to the instant administrative motion to seal satisfies both the criteria for being designated confidential under the protective order and also that for being sealed.

8. All of the documents have been produced by the Department of Defense ("DoD") and are non-public military communications and documents, and Exhibit 13 is the transcript of a senior military leader's deposition testimony regarding non-public military information, none of which is in the public domain.

9. Exhibits 2, 3, 11, 12, 25, 28, and 29 contain non-public names and contact information of military members and federal law enforcement members such as the Federal Bureau of Investigation ("FBI"), while Exhibit 4 also contains a military member's name. Federal employees involved in law enforcement, particularly those in non-senior positions, as well as military personnel and employees in sensitive occupations, possess, by virtue of the nature of their work, substantial privacy interests in their identities and contact information. *Lahr v. NTSB*, 569 F.3d 964, 977 (9th Cir. 2009) (reversing district court and holding that FBI agents have cognizable privacy interest in withholding their names because release of FBI agents' identity would most likely subject agents "to unwanted contact by the media and others"); *Seife v. Dep't of State*, 298 F. Supp. 3d 592, 628 (S.D.N.Y. 2018) (determining privacy interest in DOD names to be stronger than public interest in disclosure for DOD personnel holding military rank of Colonel or below, or holding General Schedule rank of GS-15 or below); *Hiken v. Dep't of Def.*, 521 F. Supp. 2d 1047, 1065 (N.D. Cal. 2007) (upholding redactions of names of military personnel because "defendants present a strong argument that the privacy interests at stake are significant where the disclosure of these names would risk harm or retaliation").

10. As is apparent by the very nature of this lawsuit, the military deployment in California has been subject to significant public scrutiny. And as discussed in the Declaration of DHS, Enforcement and Removal Operations Field Office Director Ernesto Santacruz, Jr., the location, images, and family information of federal law enforcement employees have been posted online to dox and threaten them personally and to obstruct their operations. *See* ECF No. 22-1 ¶ 33. Were the names of the Guardsmen, Marines, and other servicemembers involved in Task Force 51 to be released online, each servicemember could face a similar risk of public threats and being doxed. The public disclosure of the identities of the individuals involved in the email threads and the nature of the discussions could subject the individuals involved to annoyance and embarrassment

or potentially even threats of violence against themselves and their families, and, at a minimum, chill future government deliberations about such topics. "That risk is especially acute online, and the Ninth Circuit has highlighted online threats as a justification for anonymity." *See Doe v. Noem*, No. 2:25-CV-00633-DGE, 2025 WL 1295664, at *3 (W.D. Wash. May 5, 2025) (allowing party to proceed pseudonymously in light of fears of online harassment if identity is disclosed) (citing *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1044 (9th Cir. 2010) ("In context, the threats on the internet become much more frightening.")). Recognizing threats from online harassment and doxxing, courts have routinely protected the names and email addresses of government employees, such as those employed by USCIS. *See, e.g.*, *Cancino Castellar v. Mayorkas*, No. 17-CV-00491-BAS-AHG, 2021 WL 3678440, at *4 (S.D. Cal. Aug. 19, 2021) (protecting USCIS names and email addresses from public disclosure). This Court should seal these documents to protect against the public disclosure of non-public federal employee identities and their respective connections to the operations at issue in this case. Sealing such information will not impair the Court's ability to fully consider such material or rule on the merits, nor will it hinder the public's access to the substantive arguments related to this motion.

11. Exhibits 20, 21, 24, and 30 have been marked "CUI," which means "controlled unclassified information," by the military authors of these documents. CUI material is "information that requires safeguarding or dissemination controls" but is not classified. Executive Order 13556, *Controlled Unclassified Information*, 75 Fed. Reg. 68, 675 (Nov. 9, 2010); see 32 C.F.R. § 2002.1 (implementing regulations). More specifically, "CUI-protected information . . . requires control to prevent release of unclassified information that, if publicly associated with defense missions or aggregated with other sources of information, often will reveal exploitable information to adversaries or violate statutory requirements." DEP'T OF DEF., *Info Paper on DoD CUI Program*, https://www.dodcui.mil/Portals/109/Documents/Info%20Paper%20on%20DoD%20CUI%20Program.pdf?ver=De5b7M5cuVTQtuo11DId5A%3D%3D. Generally, "the authorized holder of a document or material is responsible for determining, at the time of creation, whether information in a document or material falls into a CUI category. If so, the authorized holder is responsible for applying CUI markings and

dissemination instructions accordingly." DEP'T OF DEF. INSTRUCTION 5200.48, *Controlled Unclassified Information* (Mar.6, 2020) ¶ 3.6(a). Each document is "traditionally kept secret." *See Kamakana*, 447 F.3d at 1178. While additional grounds for sealing each such document are set forth elsewhere in this declaration, the CUI designation heightens the sensitivity of each of these documents and underscores why they should not be publicly released.

12. Exhibits 2, 3, 4, 20, 21, 28, and 29 contain sensitive and non-public discussion of the number of military personnel and equipment used or to-be-used in operations, as well as the quantity of forces in reserve, their equipment, their movement, their planned deployments, and their staging areas. For example, Exhibit 4 contains a post-operation mission debrief that discusses the number of troops briefed on a forthcoming operation, what they were tasked with performing, the number of vehicles used and where they would be deployed, how DoD coordinated its activities with federal and local law enforcement, and the armament that DoD personnel were equipped with. And Exhibits 20 and 21 both concern pre-operational analysis of threats, contingencies, and logistical preparations concerning two forthcoming operations. Exhibit 28 discusses certain training that DoD conducted, where it conducted it, and includes non-public pictures depicting the positioning of Guardsmen during the training. If such information were to be released publicly, it could risk undermining the safety and effectiveness of Guardsmen by virtue of the public having knowledge of potential weaknesses to exploit. *See Peter S. Herrick's Customs and Int'l Trade Newsletter v. U.S. Customs and Border Prot.*, No. 04-CV-00377 (JDB), 2006 WL 1826185, *5 (D.D.C. June 30, 2006) (approving of withholding of information on the number of customs officials present to guard contraband and whether customs officials are armed because disclosure of such information would provide individuals seeking to harm customs officials with guidance on "the most effective ways in which to do so"). For similar reasons, Exhibit 24, which discusses identifying and appropriate responses to imminent threats, as well as guidelines for self-defense, use of deadly force, and limitations on the use of deadly force, provides information which could be exploited to the risk of the safety and welfare of servicemembers were it to be publicly disseminated. All of the information contained in the exhibits listed in this paragraph is non-public and confidential military information, which, if disclosed, could negatively impact future military

operations and put servicemembers in jeopardy. While this negative impact may occur from the disclosure of any individual exhibit, the risk increases manifold by the disclosure of multiple exhibits that touch on a similar operation. *See* DEP'T OF DEF. DIRECTIVE 5205.02E, *DoD Operations Security (OPSEC) Program* (Change 2, August 20, 2020) (discussing how the review of unclassified information should consider data aggregation prior to public release).

13. Exhibits 4 and 11 involve discussion of law enforcement sensitive topics, including law enforcement investigations, legal guidance from an Assistant United States Attorney, as well as names and contact information of Federal Protective Service ("FPS") and FBI employees. Law enforcement sensitive information must be protected from public disclosure and remain under seal. *See, e.g.*, *Cancino Castellar v. Mayorkas*, No. 17-CV-00491-BAS-AHG, 2021 WL 3678440, at *4–5 (S.D. Cal. Aug. 19, 2021) (granting sealing request even where "Defendant-Respondents do not explain why this information should be maintained under seal and simply claim that they are subject to the law enforcement privilege.").

14. Exhibit 30 contains a request by the Department of Homeland Security ("DHS") to DoD for support regarding a request for assistance and DoD's evaluation of that request. The document describes prior communication between the Departments, and, importantly, DoD's deliberations about whether to support particular requests, including its internal sensitive assessment of certain military capabilities, equipment, and troop numbers pertaining to the requests. How DoD evaluated the request, and specifically the recommendation memorandum pre-dating the Secretary of Defense's formal response is protected non-public information.

15. Finally, for many of the foregoing reasons each of the designations of the transcript of Deputy Chief of Staff of Task Force 51 William Harrington's deposition should be sealed. Specific reasons for confidentiality designations and sealing are as follows: Tr. 32:4-14 (discusses ongoing and future plans about military operations and size of force); Tr. 32:23–33:9 (discuses timing and location of Marines on deployment, including future moves); Tr. 33:19-22 (discusses sensitive military communications systems); Tr. 64:1-24 (highly confidential discussion of assessment of potential military operations); Tr. 65:21-25 (discusses the nature and timing of servicemembers' training); Tr. 69:12-25 (discusses the use of training materials in other missions, which could

implicate future or pending missions not at issue in this case); Tr. 134:1-25 (law enforcement sensitive as to reasons for requesting military support); Tr. 147:1-25 (highly confidential discussion of specific numbers of guardsmen, vehicles they used, briefings and instructions given); Tr. 148:1-25 (highly confidential discussion of specific location and placement of guardsmen in protective mission); Tr. 159:1-25 (discussion of specific numbers of troops and vehicles, risk assessments pre-operation); and Tr. 211:1-25 (discussion of specific troop numbers deployed at specific times and drawdown timeline, as well as non-public troop movements).  Each of these transcript discussions in Exhibit 13 should be protected from public disclosure.

16. Upon further review, Defendants have determined that the portions of Mr. Harrington's deposition transcript (Exhibit 13) at Tr. 68:13-22 should not be marked confidential or sealed.

17. As of the filing of this Declaration, Plaintiffs have not challenged any of Defendants' confidentiality designations.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 4, 2025 at San Francisco, California.

*/s/ Garry D. Hartlieb*
Garry D. Hartlieb