# EXHIBIT 3
# REDACTED



# Legal Considerations of
## California Federal Protection Mission

**PII**

## Office of the Staff Judge Advocate
## United States Army North (USARNORTH)

8 June 2025



Defense Support of Civil Authorities Course




# Agenda

- ✓ **Authority - Title 10 U.S.C. § 12406**
- ✓ **Posse Comitatus Act and the Constitutional Exception**
- ✓ **Law Enforcement Functions vs. Federal Protection Activities**
- ✓ **Required Training**
- ✓ **Standing Rules for the Use of Force**
- ✓ **Weapons Arming Posture Policy**
- ✓ **Non-Lethal Weapons Policy**
- ✓ **Identification Information on Uniform**

 

# Authority - Title 10 U.S.C. § 12406 National Guard in Federal Service

Whenever—

**(1)** the United States, or any of the Commonwealths or possessions, is **invaded** or is in danger of invasion by a foreign nation;

**(2)** there is a rebellion or danger of a **rebellion** against the authority of the Government of the United States; or

**(3)** the President is unable with the regular forces to **execute the laws** of the United States;

the President may call into Federal service members and units of the National Guard of any State in such numbers as he considers necessary to repel the **invasion**, suppress the **rebellion**, or **execute those laws**. Orders for these purposes shall be issued through the governors of the States or, in the case of the District of Columbia, through the commanding general of the National Guard of the District of Columbia.

 

# Posse Comitatus Act (PCA) of 1878

"Whoever, **except** in cases and under circumstances expressly authorized by the **Constitution** or **Act of Congress**, willfully uses any part of the **Army, the Navy, the Marine Corps, Air Force, or the Space Force** as a **posse comitatus** or otherwise to **execute the laws** shall be fined under this title or imprisoned not more than two years, or both." Title 18 U.S.C. § 1385.




# What is the Constitutional Exception to the PCA?

- ➤ The Armed Forces may perform law enforcement functions *"when the use of the Armed Forces is authorized by:*
- ➤ *[1] an Act of Congress or when*
- ➤ ***[2] the President determines that the use of the Armed Forces is required to fulfill the President's obligations under the Constitution [Articles II and IV] to respond promptly in time of war, insurrection, or <u>other serious emergency</u>***." **Title 6 U.S.C. § 466a(4)**

  - ✓ National Emergency Declaration (NED).

  - ✓ ***Executive Order to exercise his Constitutional Authority to "protect Federal property, functions, and personnel" and the Inherent Authority to use the Armed Forces to perform this "protection mission."***

  - ✓ Declaration of Martial Law.

  - ✓ Homeland Defense Mission Order.

 

# Law Enforcement Functions vs. Federal Protection Activities

➢ **No "traditional" law enforcement functions, such as arrests, searches and seizures, interrogations will be performed, unless approved by the President.**

➢ **May perform "protection activities" as approved by CDRUSARNORTH ICW CDRUSNORTHCOM.**

➢ **Examples of permissible "protective activities" include using reasonable force on and immediately surrounding Federal property to conduct patrols, to form and maintain a perimeter, to push back, to clear away, to deny entrance, to block from entering, to inspect before granting entry, to conduct a cursory search upon entry, to temporarily detain upon unauthorized entry, to release to civilian law enforcement authorities, and to escort onto or from Federal property.**




# Required Training

- **Before forces are employed, required training on:**
  - Crowd control
  - De-escalation measures (show of force, increased number of personnel, explain mission and request cooperation, create a safe space, "stop" hand gestures, use of barriers, use of RCA, use of NLW)
  - Use of Force
- **Apply Standards and Procedures of LFA (DHS).**

# Standing Rules for the Use of Force

**(CJCSI 3121.01B, 13 June 2005)**

- Rule 1: Limitations on the Use of Force
    - Rule 1.1: Reasonableness
    - Rule 1.2: Safety of Bystanders
    - Rule 1.3: Warning Shots
- Rule 2: De-escalation
    - Rule 2.1: Avoid Confrontation
    - Rule 2.2: Notify Civil Law Enforcement Authorities (CLEA)
- Rule 3: Individual Self-Defense
    - Rule 3.1: Limit on Self-Defense
- Rule 4: Unit Self-Defense
- Rule 5: Use of Non-Deadly Force
- Rule 6: Use of Deadly Force in Self-Defense, Defense of Others, Defense of Property
    - Rule 6.1: Use of Deadly Force NOT Authorized
- Rule 7: Use of Deadly Force Against a Serious Offense
- Rule 8: Use of Deadly Force Against a Vehicular Threat
- Rule 9: Inspection of Personnel Entering and Exiting DoD-controlled Area
    - Rule 9.1: Denied Access
- Rule 10: Temporary Detention of Threatening Personnel within DoD-controlled Area
    - Rule 10.1 Search
    - Rule 10.2 Release to CLEA
- Rule 11: Pursuit and Recovery of Stolen Designated Property
    - Rule 11.1 Contact CLEA
- Rule 12: Reporting Violations of the SRUF
- Rule 13: UAS Countermeasures at a "covered facility" (CLASSIFIED)(see Slide 121)






SRUF QR Code



Microsoft Word Document

**Defense Support of Civil Authorities Course**

# Weapons/Arming Posture Policy

- **SecDef** is the approval authority for Title 10 military personnel to <u>carry individual service weapons</u> within U.S. territory during a DSCA operation (paragraph 3.K.5. of DSCA EXORD, 30 July 2019).

- The **only exception** to obtaining SecDef approval is for "law enforcement, force protection, and security personnel who carry an issued firearm for duty on a routine basis."

- When the SecDef approves the carrying of weapons, the **CDR, USNORTHCOM**, retains the authority to establish and change the <u>arming posture/weapons status</u> (see also Appendix 20 to Annex C to NORTHCOM OPORD 01-21 and the next slide).

- Deployment with weapons in secured containers is a chain of command decision.

- Privately owned weapons and ammunition are prohibited when engaged in official duties on behalf of DoD or when wearing the uniform of the Armed Forces.




# Arming Levels and Weapons Status






# Non-Lethal Weapons (NLW)

➢ **Is there any guidance on the use of NLW in a DSCA operation?**

- ✓ Yes, paragraph 3.g.(4) of Appendix 20 to Annex C to the NORTHCOM OPORD 01-21, dated 15 December 2021, provides guidance on the use of NLWs during a DSCA operation.
- ✓ Only the CDR, USNORTHCOM may authorize the use of NLWs.
- ✓ NLWs will only be used for force protection purposes when civil law enforcement personnel are not available to control the threat to DoD personnel.
- ✓ NLWs will be used only by personnel who are qualified for the type of NLW.
- ✓ Immediate medical treatment will be offered to those who are injured by a NLW.
- ✓ See also paragraph 3.4 to DoDD 5210.56, dated November 18, 2016 with Change 1, November 6, 2020 on NLW guidance.

 

# Identification Information on Uniform

Title 10 U.S.C. § 723, entitled "Support of Federal authorities in response to civil disturbances; requirement for use of members of the Armed Forces and Federal law enforcement personnel,"

(a) Requirement - Whenever a member of the armed forces (including the National Guard) or Federal law enforcement personnel provide support to Federal authorities to respond to a civil disturbance, each individual employed in the capacity of providing such support shall visibly display— (1) the individual's name or other individual identifier that is unique to that individual; and (2) the name of the armed force, Federal entity, or other organization by which such individual is employed.

(b) Exception - The requirement under subsection (a) shall not apply to individuals referred to in such subsection who – (1) do not wear a uniform or other distinguishing clothing or equipment in the regular performance of official duties; or (2) are engaged in undercover operations in the regular performance of their official duties."




# Questions



 

# Contact Information

PII

**Senior National Security Law Attorney, Emeritus**
**Office of the Staff Judge Advocate**
**United States Army North (Fifth Army)**

PII