# EXHIBIT 6
# REDACTED

UNCLASSIFIED//FOUO

 Los Angeles Civil Unrest SRUF

# Standing Rules for the Use of Force

Col [ PII ]
SJA, 1st Marine Division

Capt [ PII ]
Operational Law Attorney, 1st Marine Division

1

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO



# Purpose and Agenda

TLO: To educate active-duty service members on rules governing the use of force to Augment and support the protection of Federal functions and property IVO Los Angeles

- SRUF
- SRUF Rules in depth
- Authorities
- Vignettes

2

UNCLASSIFIED//FOUO

DEFS_00002343

UNCLASSIFIED//FOUO

## SRUF Card
## (TITLE 10) 1 of 2

June 2025

**RULE 1:  LIMITATIONS ON THE USE OF FORCE** - A MARINE will use force of any kind only as a last resort and, if used, the force should be the minimum necessary to accomplish the mission.

**RULE 1.1:  Reasonable** - Any use of force must be reasonable in intensity, duration, and magnitude to counter the threat based on all of the circumstances.

**Rule 1.2:  Safety** - Exercise due regard for the safety of innocent bystanders when using any type of force.

**Rule 1.3:  Warning Shots** - Warning shots are NOT authorized.

**RULE 2:  DE-ESCALATION** - When time and circumstances permit, a MARINE will give a threatening force warnings and an opportunity to withdraw or stop the threatening actions before using force.

**Rule 2.1:  Avoid Confrontation** - Avoid confrontation with individuals who pose no threat to the unit, to non-DOD persons in the vicinity, or property secured by DOD forces.

**Rule 2.2:  Notify CLEA** - Increase self-defense posture and notify civilian law enforcement authorities (CLEA) or security agency personnel as soon as practicable if confrontation appears likely, civilians are acting in a suspicious manner, or immediately after a confrontation.

**RULE 3:  INDIVIDUAL SELF-DEFENSE** - A MARINE may exercise individual self-defense in response to a hostile act or demonstrated hostile intent.

**Rule 3.1:  Limit on Self-Defense** - A COMMANDER may limit individual self-defense by members of their unit.

**RULE 4:  UNIT SELF-DEFENSE** - A COMMANDER always has the inherent right and obligation to exercise unit self-defense in response to a hostile act or demonstrated hostile intent.

**RULE 5:  USE OF NON-DEADLY FORCE** - A MARINE may use non-deadly force to stop a threat and it is reasonably necessary:

to control a situation and accomplish the mission,
to provide protection for themselves and other DOD personnel,
to defend non-DOD persons in the vicinity, but only IF directly related to the assigned mission, or
to defend designated protected property.

**RULE 6:  USE OF DEADLY FORCE IN SELF-DEFENSE, DEFENSE OF OTHERS, AND DEFENSE OF PROPERTY** - A MARINE may use deadly force only when all lesser means have failed or cannot reasonably be employed AND it reasonably appears necessary:

to protect DOD forces when a commander reasonably believes a person poses an imminent threat of death or  serious bodily harm,
to protect yourself and other DOD forces from the imminent threat of death or serious bodily harm,
to protect non-DOD persons in the vicinity from the imminent threat of death or serious bodily harm, but only IF directly related to the assigned mission,
to prevent the actual theft or sabotage of assets vital to national security or inherently dangerous property, and
to prevent the sabotage of a national critical infrastructure.

**RULE 6.1:  Use of Deadly Force NOT Authorized** - Deadly force is not authorized to disperse a crowd, to stop looting, to enforce curfew, or to protect non-designated property.

**UNIT: _____**                 **CARD #: _____**

DEFS_00002344

UNCLASSIFIED//FOUO



## SRUF Card
## (TITLE 10) – 2 of 2

**RULE 7:  USE OF DEADLY FORCE AGAINST A SERIOUS OFFENSE** - A MARINE may use deadly force, but only IF it is directly related to the assigned mission AND it reasonably appears necessary:

to prevent a serious crime against any person that involves imminent threat of death or serious bodily harm,

to prevent the escape of a prisoner where probable cause indicates he has committed or attempted to commit serious offense and would pose an imminent threat of death or serious bodily harm to DOD forces or others in the vicinity,

to arrest or apprehend a person who, there is probable cause to believe, has committed a serious offense that involved imminent threat of death or serious bodily harm or sabotage of designated protected property.

**RULE 8:  USE OF DEADLY FORCE AGAINST A VEHICULAR THREAT** - A MARINE may fire their weapon at a moving land or water vehicle when they reasonably believe the vehicle poses an imminent threat of death or serious bodily harm to DOD forces or to non-DOD persons in the vicinity, but only IF doing so is directly related to the assigned mission.

**RULE 9:  INSPECTION OF PERSONNEL ENTERING AND EXITING AREA** - A MARINE may inspect individuals and property, per command security guidance, prior to granting that person or property entry inside a DOD perimeter or secured area and upon leaving such an area.

**Rule 9.1:  Denied Access** - An individual or property that does not meet the command security requirements for entry may be denied access inside a DOD perimeter or secured area.

**RULE 10:  TEMPORARY DETENTION OF THREATENING PERSONNEL** - A MARINE may temporarily detain an individual:

who has gained unauthorized access inside perimeters or other secured areas,

who refuses to depart such an area after being denied access,

who otherwise threatens the safety and security of DOD forces, property secured by DOD forces, or non-DOD persons in the vicinity but only IF their defense is directly related to the assigned mission.

**Rule 10.1:  Search** - Detained individuals, vehicles, and property may be searched as a force protection measure.

**Rule 10.2:  Released to CLEA** - Detained individuals and any secured property will be released to CLEA at the earliest opportunity consistent with mission accomplishment.

**RULE 11:  PURSUIT AND RECOVERY OF STOLEN PROPERTY** - A MARINE may pursue and recover stolen assets vital to national security or inherently dangerous property if:

CLEA or security forces are not reasonably available to recover them, and

Commander, USNORTHCOM, has pre-authorized the pursue and recovery mission, and

the pursuit is immediate, continuous, and uninterrupted.

**Rule 11.1:  Contact CLEA** - DOD forces will contact CLEA as soon as practicable to inform them of the theft/pursuit.

**RULE 12:  REPORT VIOLATIONS OF THE SRUF** - A MARINE will IMMEDIATELY report any violation of or non-compliance with the SRUF to the chain of command, Inspector General, Judge Advocate, Chaplain, or any commissioned officer with information concerning who, what, when, where, and why.

**UNIT:** _____                    **CARD #:** _____



UNCLASSIFIED//FOUO

# Standing Rules for the Use of Force

**SRUF BASICS**

- SRUF supports your unit's mission.

- SRUF are SECDEF-approved rules.

**SRUF are different from SROE**.

- SRUF, consistent with the "reasonableness standard" of the Fourth Amendment, provides guidance to DoD forces on the use of force **within US territory against all civilians and fellow Americans (self-defense and force protection based).**

- SROE provides guidance on how to engage the enemy in combat **outside US territory** according to the Law of War and International Law.

- SRUF require commanders at all levels to teach and train their units, to include issuing an SRUF card, prior to deploying for DSCA missions.

5

UNCLASSIFIED//FOUO

The SRUF applies to all DOD personnel for every conceivable mission that DOD land forces could perform on US soil (Hurricane Katrina).

The very nature of domestic operations – American military forces operating in US communities – has such significant implications that the mistakes of a few Soldiers can have far-reaching social, political, and operational effects. Therefore, clear standards for the use of force must be established and, more importantly, followed.

SRUF are intended to support a unit's mission. If they do not, commanders may submit a request up the chain to the SECDEF for mission-specific RUF at any time. Such a request must explain why the requested RUF is necessary to accomplish a particular course of action.

Although there are similarities, SRUF is not the same as SROE, which means Standing Rules of Engagement.

Unlike the SROE, the SRUF is based on and consistent with domestic law, meaning the Constitution and Federal laws, and apply to all DSCA and land HD operations in the US and its territories. SROE, on the other hand, is based on international law and the

DEFS_00002346

Law of War and applies during combat operations against an enemy overseas.

Constitutionally, guidance on the type and amount of "force" under the SRUF is provided by the Fourth Amendment, specifically that part which says, "The right of the people to be secure . . . . against unreasonable . . . .seizures shall not be violated."  The "use of force," whether deadly or not, that attempts to restrain or stop the movement of another person is consider a "seizure" and is Constitutional only if the "seizure" is "reasonable" under the circumstances.  Therefore, the reasonable use of force under the circumstances will be deemed Constitutional and conversely the unreasonable use of force will be considered unconstitutional.

Although all of the Supreme Court cases we rely upon for guidance under this part of the 4A pertain to situations where civilian law enforcement officers were accused of using excessive force, the Court's fundamental "use of force" analysis in these cases can be applied to DOD personnel performing domestic military operations as well.

Commanders have the responsibility to teach and train their units on the SRUF at home station, to include issuing an SRUF card, prior to deploying for a domestic military land mission.

UNCLASSIFIED//FOUO



# SRUF and the 4th Amendment

4th Amendment – "The right of the people to be secure . . . . against unreasonable . . . .seizures shall not be violated."

**SRUF – The "use of force," whether deadly or not, that attempts to restrain or stop the movement of another person is considered a "seizure" and is Constitutional only if the "seizure" is "reasonable" under the circumstances**.

6

UNCLASSIFIED//FOUO

DEFS_00002348



UNCLASSIFIED//FOUO

# SRUF – Self Defense

**Hostile Act**: An attack or other use of force against the US, US Forces or other designated persons or property.

**Hostile Intent**: Demonstrated "hostile intent" is the imminent threat of the use of force against the US, US forces or designated persons or property, including the threat of force to stop or hinder a military mission.

7

UNCLASSIFIED//FOUO

In his decision to use force in self-defense when he is being attacked or when he reasonably believes there is an imminent threat of the use of force against him, a Marine will be given great latitude. The reasonable use of force against a threat under these circumstances is a method to control a dangerous situation.
Imminent Threat Examples:
An example of an "imminent threat" of the use of force is an individual (1) possessing a weapon or other lethal means or reaching for such (2) under circumstances indicating an intention to use that weapon or other lethal means against a Soldier or others in the immediate vicinity.
An individual possesses a weapon or is attempting to gain access to a weapon under circumstances indicating an intention to use it against DOD personnel or other persons within the immediate vicinity of the DOD personnel
An individual without a deadly weapon, but who has the capability of inflicting death or serious physical injury and is demonstrating an intention to do so (e.g., an attempt to run over Soldiers with a car).

Imminent Threat Factors:
Based on all the facts and circumstances
Made at any level
Not necessarily immediate or instantaneous
"Individuals with the capability to inflict death or serious bodily harm AND who demonstrate the intent to do so may be considered an imminent threat."
*NO STATUS-BASED TARGETS

DEFS_00002350



UNCLASSIFIED//FOUO

# SRUF – Imminent Threat

**Imminent Threat**:  Present when an individual has the capability to inflict death or serious bodily harm and demonstrates the intent to do so.  It is based on all facts and circumstances.

Imminent Threat Examples:

- An individual (1) possesses a deadly weapon (or reaches for such) (2) under circumstances indicating an intention to use that weapon or other lethal means against DoD personnel or others in the immediate vicinity of the DoD personnel.
- An individual has no deadly weapon, but has the capability of inflicting death or serious physical injury and is demonstrating an intention to do so (e.g., an attempt to run over service members with a car).

8

UNCLASSIFIED//FOUO

MORE than MERE possession of a weapon – use all circumstances to evaluate.

In his decision to use force in self-defense when he is being attacked or when he reasonably believes there is an imminent threat of the use of force against him, a Marine will be given great latitude.  The reasonable use of force against a threat under these circumstances is a method to control a dangerous situation.

Imminent Threat Examples:

An example of an "imminent threat" of the use of force is an individual (1) possessing a weapon or other lethal means or reaching for such (2) under circumstances indicating an intention to use that weapon or other lethal means against a Marine or others in the immediate vicinity.

An individual without a deadly weapon, but who has the capability of inflicting death or serious physical injury and is demonstrating an intention to do so (e.g., an attempt to run over Soldiers with a car).

DEFS_00002351

Imminent Threat Factors:
Based on all the facts and circumstances
Made at any level
Not necessarily immediate or instantaneous
"Individuals with the capability to inflict death or serious bodily harm AND who demonstrate the intent to do so may be considered an imminent threat."
*NO STATUS-BASED TARGETS

DEFS_00002352



UNCLASSIFIED//FOUO

# SRUF – Self Defense (cont)

**Unit Self-Defense** - A commander always has the inherent right and obligation to exercise unit self-defense in response to a hostile act or demonstrated hostile intent.

The unit commander may defend his/her unit, and includes the defense of other DoD forces in the vicinity.

**Individual Self-Defense** is considered a sub-set of unit self-defense.  As such, unit commanders may limit individual self-defense by members of the unit.

9

UNCLASSIFIED//FOUO

UNIT SD
The inherent right and obligation of unit self-defense means that, as a general rule, it is the natural part of something that cannot be taken away.
This right applies when it is necessary to respond to a hostile act or demonstrated hostile intent, as further defined on this slide.
A hostile act or demonstrated hostile intent triggers the right to respond with force, but only certain acts or intents trigger the right to use deadly force.

INDIVIDUAL SD
In order to defuse a confrontational situation between armed Soldiers and armed civilians, a commander has the option – but not the requirement - to order his Soldiers "to stand down," and thus limit his Soldier's right of individual self-defense, in order

to demonstrate his good faith and willingness to resolve the dispute peacefully.

A good, real-life example of limiting the right of self-defense occurred within a National Guard unit during the aftermath of Hurricane Katrina and as a result, the commander avoided a potentially major use of deadly force issue.  Guardsmen, who were evacuating patients from a New Orleans hospital, came under fire from snipers across the street.  Instead of responding to these clearly hostile acts with deadly force, as the SRUF would have allowed them to do, the commander ordered his unit not to return fire and temporarily suspended the evacuation for a few hours until the snipers left the area.  The commander wisely considered the safety of his unit and others in the area and the possible adverse consequences of engaging in a unprecedented firefight in a U.S. city before deciding to limit his unit's right of self-defense.

UNCLASSIFIED//FOUO

# De-escalation

Try and avoid confrontation with individuals that pose a threat to you or your unit.

When conducting support missions, your first line of defense and your primary force protection measure will be co-located law enforcement agents.

When time and circumstances permit, give threatening individuals verbal warnings and an opportunity to withdraw/stop the threatening actions.

Think "De-Escalation Through Maneuver" and incorporate into mission planning.

<u>De-Escalation Option</u>:  Contact CLEA immediately and issue verbal warnings; then, if prudent, withdraw or take cover.

10

UNCLASSIFIED//FOUO

The SRUF makes it clear that de-escalation is an important concept that must be considered prior to using force.
The SRUF encourages Marines to defuse a confrontational situation by using de-escalation measures, but only when time and circumstances permit.
Employing de-escalation measures successfully may ensure that a Soldier is never accused of using excessive force.

DEFS_00002355



UNCLASSIFIED//FOUO

# Limitations on Use of Force

"Normally, force is to be used only as a last resort, and the force used should be the minimum necessary" to deter or neutralize the threat.

**Reasonable** - Any use of force must be reasonable in intensity, duration, and magnitude to counter the threat based on all of the known circumstances.

**Safety** - Exercise due regard for the safety of innocent bystanders when using any type of force.

**Warning Shots** - NOT authorized.

11

UNCLASSIFIED//FOUO

The SRUF re-emphasizes the de-escalation concept when it provides that force will be used as a last resort.
When force is used, the SRUF requires that (1) it should be the minimum necessary, (2) that it be reasonable under the circumstances, and (3) that it not create a substantial risk of injury to innocent bystanders.
Furthermore, while warning shots may not be unconstitutional or unlawful, per se, the SRUF makes it clear that they are not authorized under any circumstances.

DEFS_00002356



UNCLASSIFIED//FOUO

# Non-Deadly Force

If force is required, non-deadly force is authorized and may be used to:

- control a situation and accomplish the mission, or

- to protect yourself and other DoD personnel,

- to defend non-DoD persons in the vicinity, but <u>only</u> "if directly related to the assigned mission," (e.g., protect ICE agent), or

- to defend protected property designated by the on-scene commander or higher authority.

12

UNCLASSIFIED//FOUO

These are the situations in which you can use non-deadly force.

The phrase: "if directly related to the assigned mission" with respect to the defense of non-DOD personnel in the vicinity is new with the 2005 version of the SRUF. There was no similar provision requiring a connection to an assigned mission in previous versions of the SRUF. Nor is the phrase defined in the current SRUF.

Therefore, commanders are required to look first at the assigned mission to see if it contains any language that would provide the necessary connection to the defense on non-DOD personnel.

If the assigned mission does not contain any connection language, the SRUF does not prohibit a unit commander from tailoring the mission to the current situation on the ground. He has the flexibility to include in his assigned mission the defense of non-DOD personnel in the vicinity when it is reasonable and necessary. He should advise his chain of command of the circumstances and his decision to include the defense on non-DOD personnel in his unit's mission.

DEFS_00002357



UNCLASSIFIED//FOUO

# Deadly Force

"Deadly force is to be used only when all lesser means have failed or cannot reasonably be employed" AND it reasonably appears necessary.

Deadly force is authorized under the following situations:

To protect yourself, other DoD personnel, and, under certain circumstances, non-DoD personnel, from imminent threat of death or serious bodily harm (SBH) (This could include threats posed by vehicles).

To prevent the theft of "inherently dangerous" unit property (something that can, and is likely to, be used right then and there to kill you or cause SBH).

13

UNCLASSIFIED//FOUO

The "reasonable" and "necessary" concepts are also central to the use of deadly force.
The use of deadly force by a Soldier will be justified if reasonable and within the scope of his duties to defend himself or other persons.
The use of deadly force is the ultimate "seizure" which is unmatched by any other type of force, in that it may end the life of the person against whom such force is used.
Unlike what may occur under ROE, under the SRUF there is no pre-designated legitimate target or declared hostile force, such as "all adults males are hostile." Deadly force is not authorized against a person who poses no immediate threat of death or serious bodily harm to the Soldier or others in the vicinity. Thus, deadly force is not authorized to prevent the escape of an unarmed and non-dangerous person.
Soldiers do not carry the burden of deciding what is properly designated property. This will be decided for them by the on-scene commander.

DEFS_00002358

Not all moving vehicles are a legitimate target, but circumstances may occur when they are.
Rule 8 takes into consideration a vehicle being used in a threatening manner against DOD forces and against non-DOD personnel in the vicinity "if directly related to the assigned mission" and allows a Soldier to engage any part of the vehicle with deadly force in order to stop it.

DEFS_00002359

UNCLASSIFIED//FOUO



# Self Defense/Defense of Others

Non-Deadly: If force is required … force is authorized to and may be used …

    to control a situation and accomplish the mission, or

    to provide self-defense of DoD forces, and

    Defend non-DoD persons in the vicinity **if directly related to the assigned mission.**

"Deadly force is authorized in defense of non-DoD persons in the vicinity, **when directly related to the assigned mission**."

**Must always consider "What is my mission" prior to the use of force in order to ensure proper application of "Defense of Others" under the SRUF.

14

UNCLASSIFIED//FOUO

BLUF: Force may only be used to protect non-DOD personnel in the vicinity, if doing so is directly related to your assigned mission.

Unless going to the aid of a non-DOD person in the vicinity who is facing a threat of harm is directly related to your assigned mission, you may NOT assist in the defense of that non-DOD person.

DEFS_00002360

UNCLASSIFIED//FOUO



# "Aggressor" Concept

Under Federal and State laws, an individual that commits a hostile act or demonstrates hostile intent is considered the "Aggressor."  The law of self-defense allows you to respond and protect yourself from an "Aggressor."

However, if you either use more force than is necessary, or respond with DEADLY-force to a NON-deadly threat – You will likely lose your right of self-defense, and you will be viewed, under the law, as the "Aggressor."
- NON-Deadly Force: Do NOT use more force than is necessary, in intensity, duration, or magnitude, to counter the threat.
-  DEADLY Force:  Do NOT respond to non-deadly force with deadly force.  Further, when threatened with non-deadly force, do not load your weapon, "flag" or point at the aggressor with your unloaded weapons, because these acts will make it LOOK like you are using, or are about to use, deadly force.

15

UNCLASSIFIED//FOUO

DEFS_00002361

UNCLASSIFIED//FOUO



# SRUF Analysis

- Analyze/Assess the threat.

- Can you use any de-escalation measures to stop or deter the threat?

- Does the threat justify the use of force in self-defense?

- What type of force may you use to stop or deter the threat?

- Are you likely to use either too much force, or are you risking becoming the Aggressor?

16

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO



# Non-Deadly Force Analysis

**Non Deadly Force**
- Hostile act using non-deadly force
- Hostile intent using non-deadly force (Imminent threat)

**De-Escalate**
- Contact LEA
- No warning Shots
- De-Escalation Failed?  Insufficient time to attempt De-Escalation?

**Use of Force**
- as a last resort
- the force used should be the minimum necessary to control the situation, accomplish the mission and provide protection to DoD personnel and any non-DoD personnel associated with the mission.

17

UNCLASSIFIED//FOUO

DEFS_00002363

UNCLASSIFIED//FOUO



# Deadly Force Analysis

**Deadly Force**
- Hostile Act using DEADLY FORCE
- Hostile Intent using DEADLY FORCE  (Imminent threat?)

- Contact CLEA

**De-Escalate**
- No warning Shots
- De-Escalation Failed?
- Is there anything else you can do to avoid the situation?

**Use of Force**
- All lesser means have failed or cannot reasonably be employed.
- Must be reasonable and necessary to protect you, other DoD personnel, or non-DoD personnel associated with the mission.

18

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO



# Summary of SRUF 12 Rules

- **R**eciprocal use of force.

- **A**nticipate the use of force.

- **M**easure the amount of force.

- **P**rotect life and designated property with deadly force.

19

UNCLASSIFIED//FOUO

A simple one word summary of the 12 SRUF Rules is RAMP.
Reciprocal use of force.  Return force with force when de-escalation measures have failed or cannot reasonably be employed.
Return fire with aimed fire when lesser measures have failed or cannot be reasonably employed.
Anticipate and respond to a hostile act.  Assess all the facts and circumstances at the time before applying force. You may also use force if first you have a clear indication of a demonstrated hostile intent against you.
Measure the amount of force you use.  Use only the minimum force necessary to protect human lives and accomplish the mission.
Protect with deadly force only human life and properly designated protected property.  Do not use deadly force to protect other property.

DEFS_00002365

UNCLASSIFIED//FOUO

# SRUF RULE #1

- RULE 1:  <u>LIMITATIONS ON THE USE OF FORCE</u> - A SERVICE MEMBER will use force of any kind only as a last resort and, if used, the force will be the minimum necessary to accomplish the mission.

  - Rule 1.1:  <u>Reasonable</u> - Any use of force must be reasonable in intensity, duration, and magnitude to counter the threat based on all of the known circumstances.

  - Rule 1.2:  <u>Safety</u> - Exercise due regard for the safety of innocent bystanders when using any type of force.

  - Rule 1.3:  <u>Warning Shots</u> - Warning shots are NOT authorized.

20

UNCLASSIFIED//FOUO

The SRUF re-emphasizes the de-escalation concept when it provides that force will be used as a last resort.
When force is used, the SRUF requires that (1) it should be the minimum necessary, (2) that it be reasonable under the circumstances, and (3) that it not create a substantial risk of injury to innocent bystanders.
Furthermore, while warning shots may not be unconstitutional or unlawful, per se, the SRUF makes it clear that they are not authorized under any circumstances.

DEFS_00002366

UNCLASSIFIED//FOUO



# SRUF RULE #2

- RULE 2: **DE-ESCALATION** - When time and circumstances permit, a SERVICE MEMBER will give a threatening force warning and an opportunity to withdraw or stop the threatening actions before using force.

  - Other graduated de-escalation measures such as withdrawing to another location; verbal explanations, requests, warnings; taking cover; increasing the number of military personnel; forming a formation to physically block access; showing the potential to use non-lethal force including military working dogs; and suggesting deadly force capabilities may be employed.

  - Rule 2.1: **Avoid Confrontation** - Avoid confrontation with individuals who pose no threat to the unit, to non-DoD persons in the vicinity, or property secured by DoD forces.

  - Rule 2.2: **Notify CLEA** - Increase self-defense posture and notify civilian law enforcement authorities (CLEA) or security agency personnel as soon as practicable if confrontation appears likely, civilians are acting in a suspicious manner, or immediately after a confrontation.

21

UNCLASSIFIED//FOUO

The SRUF makes it clear that de-escalation is an important concept that must be considered prior to using any type of force. Incorporate De-Escalation by Maneuver into your planning process for this mission set. Be agile and prepared to execute maneuver as required.

The SRUF encourages Soldiers to defuse a confrontational situation by using de-escalation measures, but only when time and circumstances permit.

Employing de-escalation measures successfully may ensure that a Soldier is never accused of using excessive force.

DEFS_00002367

UNCLASSIFIED//FOUO



# SRUF RULE #3

- RULE 3:  INDIVIDUAL SELF-DEFENSE - A SERVICE MEMBER may exercise individual self-defense in response to a hostile act or demonstrated hostile intent.

  — Individual self-defense is a subset of unit self-defense, when assigned to or acting as part of a unit.

  — Rule 3.1:  Limit on Self-Defense - A commander may limit individual self-defense by members of his unit.

22

UNCLASSIFIED//FOUO

Commanders can provide additional guidance on what constitutes a hostile act or a demonstrated hostile intent under the circumstances they are facing.  For example, a commander may tell his Marines that the simple possession of a weapon, by itself, does not constitute a hostile act or demonstrated hostile intent and, thus, does not, by itself, justify the use of deadly force.

In order to defuse a confrontational situation between armed Marines and armed civilians, a commander has the option – but not the requirement - to order his Marines "to stand down," and thus limit his Soldier's right of individual self-defense, in order to demonstrate his good faith and willingness to resolve the dispute peacefully.

A good, real-life example of limiting the right of self-defense occurred within a National Guard unit during the aftermath of Hurricane Katrina and as a result, the commander avoided a potentially major use of deadly force issue.  Guardsmen, who were evacuating patients from a New Orleans hospital, came under fire from snipers across the street.  Instead of responding to these clearly hostile acts with deadly force, as the SRUF would have allowed them to do, the commander ordered his unit not to

DEFS_00002368

return fire and temporarily suspended the evacuation for a few hours until the snipers left the area.  The commander wisely considered the safety of his unit and others in the area and the possible adverse consequences of engaging in a unprecedented firefight in a U.S. city before deciding to limit his unit's right of self-defense.

DEFS_00002369

UNCLASSIFIED//FOUO



# SRUF RULE #4

- RULE 4:  UNIT SELF-DEFENSE - A COMMANDER always has the inherent right and obligation to exercise unit self-defense in response to a hostile act or demonstrated hostile intent.

  – Unit self-defense includes the defense of other DoD forces in the vicinity.
  – Hostile act is an attack or other use of force against the US, US forces or other designated persons or property, including the use of force to directly stop or hinder a military mission.
  – Demonstrated hostile intent is the imminent threat of the use of force against the US, US forces or designated persons or property, including the threat of force to stop or hinder a military mission.

23

UNCLASSIFIED//FOUO

The inherent right and obligation of unit self-defense means that, as a general rule, it is the natural part of something that cannot be taken away (but see Rule 3).
This right applies when it is necessary to respond to a hostile act or demonstrated hostile intent, as further defined on this slide.
An example of a hostile act is someone shooting at you or another Soldier.  A punch in the nose is also a hostile act.
A hostile act or demonstrated hostile intent triggers the right to respond with force, but only certain acts or intents trigger the right to use deadly force.



UNCLASSIFIED//FOUO

# SRUF RULE #4 (Cont)

- <u>Imminent threat of death or serious bodily harm</u> will be based on an assessment of all the facts and circumstances known to DoD forces at the time. Individuals with the capability to inflict death or <u>serious bodily harm</u> and who demonstrate an intent to do so may be considered an imminent threat.

  - <u>Imminent</u> does not necessarily mean immediate or instantaneous. All available facts indicate a hostile act is about to occur.

  - <u>Serious bodily harm</u> means fractures, dislocated bones, deep cuts, and other life-threatening injuries. It is more than a black eye or bloody nose.

24

UNCLASSIFIED//FOUO

In his decision to use force in self-defense when he is being attacked or when he reasonably believes there is an imminent threat of the use of force against him, a Soldier will be given great latitude. The reasonable use of force against a threat under these circumstances is a method to control a dangerous situation.

An example of an "imminent threat" of the use of force is an individual (1) possessing a weapon or other lethal means or reaching for such (2) under circumstances indicating an intention to use that weapon or other lethal means against a Soldier or others in the immediate vicinity.

If threatened by a person with a weapon, you do not need to wait to be fired on before you can use force.



UNCLASSIFIED//FOUO

# SRUF RULE #5

- **RULE 5:** <u>USE OF NON-DEADLY FORCE</u> - A SERVICE MEMBER may use non-deadly force to stop a threat (hostile act or demonstrated hostile intent) AND it is reasonably necessary:

  — to control a situation and accomplish the mission,

  — to provide protection for himself and other DoD personnel,

  — to defend non-DoD persons in the vicinity, <u>but only IF directly related to the assigned mission</u> or

  — to defend designated protected property by the on-scene commander or higher authority.

  — <u>The use of Service-approved</u>, unit issued non-lethal weapons and riot control agents (RCA), including oleoresin capsicum (OC) pepper spray and CS gas is authorized *pending SECEF approval*. Guidance on riot control agents is governed by CJCSI 3110.07 series.

25

UNCLASSIFIED//FOUO

When force is reasonably necessary under the four situations described on this slide, non-deadly force, including non-lethal weapons, is authorized.

This rule is the first of five rules that contains the phrase "if directly related to the assigned mission" with respect to the defense of non-DOD personnel in the vicinity. This phrase is new with the 2005 version of the SRUF. There was no similar provision requiring a connection to an assigned mission in previous versions of the SRUF. Nor is the phrase defined in the current SRUF. Therefore, commanders are required to first look at the assigned mission to see if it contains language, such as "to save lives, protect public safety, prevent human suffering," that would provide the necessary connection to defend non-DOD personnel. Remember, "saving lives" is not an implied mission, so it needs to be specifically stated.

For the southwest border operation, the "assigned mission" means the specific mission of the specific group of DoD personnel faced with a decision to use force, at the specific time that they are faced with that decision.

If the assigned mission does not contain any connection language, the SRUF does not prohibit a unit commander from tailoring

the mission to the current situation on the ground.  He has the flexibility to include in his assigned mission the defense of non-DOD personnel in the vicinity when it is reasonable and necessary.  He should advise his chain of command of the circumstances and his decision to include the defense on non-DOD personnel in his unit's mission.

The authority to issue and use Service-approved non-lethal weapons (NLW):

DoD Directive 3000.3 (Policy for NLW):

Provides authority for issue and use of NLW capabilities

Defines Nonlethal Weapons

Does not require NLW be used prior to lethal weapons

Chairman of the Joint Chiefs of Staff Instruction CJCSI 3121.01B (SRUF):

UNCLASSIFIED//FOUO

# SRUF RULE #6

- RULE 6:  USE OF DEADLY FORCE IN SELF-DEFENSE, DEFENSE OF OTHERS, AND DEFENSE OF PROPERTY - A SERVICE MEMBER may use deadly force only when all lesser means have failed or cannot reasonably be employed AND it reasonably appears necessary:
    - to protect DoD forces when a commander reasonably believes a person poses an imminent threat of death or serious bodily harm;
    - to protect yourself and other DoD forces from the imminent threat of death or serious bodily harm;
    -  to protect non-DoD persons in the vicinity from the imminent threat of death or serious bodily harm, but only IF directly related to the assigned mission;
    - to prevent the actual theft or sabotage of assets vital to national security or inherently dangerous property; and
    - to prevent the sabotage of a national critical infrastructure.

    - Rule 6.1:  Use of Deadly Force NOT Authorized - Deadly force is not authorized to disperse an unarmed crowd, to stop looting, to enforce a curfew, or to protect or recover non-designated property.

26

UNCLASSIFIED//FOUO

The "reasonable" and "necessary" concepts are also central to the use of deadly force.  DOD policy is that a Soldier use deadly force sparingly.

The use of deadly force by a Soldier will be justified if reasonable and necessary and within the scope of his duties to defend himself or other persons.

The use of deadly force is the ultimate "seizure" which is unmatched by any other type of force, in that it may end the life of the person against whom such force is used.

The SRUF authorizes the use of deadly force under five circumstances.  Three are designed to protect persons under very serious conditions and two are designed to protect certain important properties designated by proper authorities that are both defined on the next slide.

Note that the "if directly related to the assigned mission" requirement that was discussed on the last slide appears again in the third sub-bullet.

DEFS_00002374

Again, for the southwest border operation, the "assigned mission" means the specific mission of the specific group of DoD personnel faced with a decision to use force, at the specific time that they are faced with that decision.

Unlike what may occur under ROE (see slide 12), under the SRUF there is no pre-designated legitimate target or declared hostile force, such as "all adults males are hostile." Deadly force is not authorized against a person who poses no immediate threat of death or serious bodily harm to the Soldier or others in the vicinity. Thus, deadly force is not authorized to prevent the escape of an unarmed and non-dangerous person, even if he is a member of an unruly crowd, a looter, or in violation of a curfew.

DEFS_00002375



UNCLASSIFIED//FOUO

# SRUF RULE #6 (Cont)

— <u>Assets vital to national security</u> are DoD and non-DoD property designated by the President (not limited to: nuclear weapons, nuclear C2 facilities, restrictive areas containing strategic operational assets, sensitive codes or special access programs) whose actual theft or sabotage would seriously jeopardize the accomplishment of a national defense mission and would create an imminent threat of death or serious bodily harm.

— <u>Inherently dangerous property</u> is property designated by the on-scene commander (not limited to: weapons, ammo, grenades, explosives, portable missiles, rockets, chemical agents, special nuclear materials) that in the hands of an unauthorized individual, would create an imminent threat of death or serious bodily harm.

— <u>National critical infrastructure</u> is a President-designated public utility, key transportation node, or similar critical infrastructure vital to public health or safety (power plants, dams, water treatment plants, oil pipelines, air traffic control facilities), the damage to which would create an imminent threat of death or serious bodily harm.

27

UNCLASSIFIED//FOUO

These three types of property are terms of art.  They each have legal meaning and must be designed by the correct authority in order to be entitled to protection with deadly force.

Soldiers do not carry the burden of deciding what is properly designated property.  This will be decided for them by either the President or the on-scene commander.



UNCLASSIFIED//FOUO

# SRUF RULE #7

— RULE 7:  USE OF DEADLY FORCE AGAINST A SERIOUS OFFENSE - A SERVICE MEMBER may use deadly force, but only IF it is directly related to the assigned mission  AND it reasonably appears necessary:

- to prevent a serious offense against any person that involves imminent threat of death or serious bodily harm,
- to prevent the escape of a person where probable cause indicates he has committed or attempted to commit a serious offense and would pose an imminent threat of death or serious bodily harm to DoD forces or others in the vicinity,
- to arrest or apprehend a person who, there is probable cause to believe, has committed a serious offense that involved imminent threat of death or serious bodily harm.

- A serious offense is one that involves the imminent threat of death or serious bodily harm such as murder, rape, armed robbery, aggravated assault, aggravated arson, or sniping.

28

UNCLASSIFIED//FOUO

In addition to the use of deadly force situations under Rule 6, deadly force is authorized under three additional circumstances "if directly related to the assigned mission."

As with Rules 5 and 6, as it related to the southwest border mission, for Rule 7, the "assigned mission" in southwest border operations means the specific mission of the specific group of DoD personnel faced with a decision to use force, at the specific time that they are faced with that decision.

The first sub-bullet involves the defense of another person against an individual who is attempting to commit a serious crime involving death or serious bodily harm.

The second sub-bullet requires that the person who is attempting to escape be armed or otherwise dangerous and either has previously committed or attempted to commit a serious offense and currently poses an imminent threat of death of serious bodily harm against DOD forces or others in the vicinity if allowed to escape.

The third sub-bullet also requires the person who is resisting arrest or apprehension to be armed or otherwise dangerous and

either has committed a serious offense involving death or serious bodily harm.
Serious offenses that involve the imminent threat of death or serious bodily harm include murder, rape, armed robbery, aggravated assault with a dangerous weapon or other means or force likely to produce death or serious bodily harm, aggravated arson of an inhabited dwelling, and sniping.

DEFS_00002378

UNCLASSIFIED//FOUO



# SRUF RULE #8

— RULE 8:  <u>USE OF DEADLY FORCE AGAINST A VEHICULAR THREAT</u> - A SERVICE MEMBER may fire his weapon at a moving land or water vehicle when he reasonably believes the vehicle poses an imminent threat of death or serious bodily harm to DoD forces or to non-DoD persons in the vicinity, <u>but only IF doing so is directly related to the assigned mission.</u>

29

UNCLASSIFIED//FOUO

Not all moving vehicles are a legitimate target, but circumstances may occur when they are.
Rule 8 takes into consideration a vehicle being used in a threatening manner against DOD forces and against non-DOD personnel in the vicinity "if directly related to the assigned mission" and allows a Soldier to engage any part of the vehicle with deadly force in order to stop it.

DEFS_00002379

UNCLASSIFIED//FOUO



# After Using Deadly Force

- Give first aid to the victim as soon as it is safe.
- Report the incident to the chain of command immediately.
- Record the details of the incident:
  - Date, time, and location.
  - Unit and personnel involved.
  - Circumstances leading up to the firing.
  - Reasons for the service member's use of deadly force.
  - Weapons that were fired.
  - Results of the firing.

30

UNCLASSIFIED//FOUO

The SRUF is silent on what action to take after the use of deadly force.  However, when deadly force is used, CONPLAN's and EXORD's require a report to the chain of command and a record of the incident for future investigations.
Great attention to detail should be given to the report when there is a victim as a result of the use of deadly force.

DEFS_00002380

UNCLASSIFIED//FOUO

# SRUF Rule #9

— RULE 9:  <u>INSPECTION OF PERSONNEL ENTERING AND EXITING AREA</u> - A SERVICE MEMBER may inspect individuals and property, per command security guidance, prior to granting that person entry inside a DoD perimeter or secured area and upon leaving such an area.

   • Rule 9.1:  <u>Denied Access</u> - An individual or property that does not meet the command security requirements for entry may be denied access inside a DoD perimeter or secured area.

31

UNCLASSIFIED//FOUO

The SRUF authorizes the security inspection of individuals and property prior to granting entry into or exiting from a DOD established perimeter, area, or facility.
The extent of the inspection is a command decision based on force protection and anti-terrorism requirements.



UNCLASSIFIED//FOUO

# SRUF Rule #10

— **RULE 10:** <u>TEMPORARY DETENTION OF THREATENING PERSONNEL</u> - A SERVICE MEMBER may temporarily detain an individual:
- who has gained unauthorized access inside perimeters or other secured areas,
- who refuses to depart such an area after being denied access,
- who otherwise threatens the safety and security of DoD forces, property secured by DoD forces, or non-DoD persons in the vicinity, <u>but only IF their defense is directly related to the assigned mission.</u>

• **Rule 10.1:** <u>Search</u> - Detained individuals, vehicles, and property may be searched as a force protection measure.

• **Rule 10.2:** <u>Released to CLEA</u> - Detained individuals and any secured property will be released to CLEA at the earliest opportunity consistent with mission accomplishment.

32

UNCLASSIFIED//FOUO

The SRUF also authorizes, but does not require, the temporary detention of individuals who are described as "threatening," meaning they have either uttered threats orally or are acting as if they intend to commit an imminent act that adversely affects the safety or security of DOD forces or non-DOD personnel in the vicinity "if directly related to the assigned mission."
The degree of force used, if any is required, to temporarily detain an individual will be reasonable and necessary under the circumstances.
Any personnel detained will be released to civilian law enforcement personnel as soon as possible.

UNCLASSIFIED//FOUO



# SRUF Rule #11

— RULE 11:  <u>PURSUIT AND RECOVERY OF STOLEN PROPERTY</u> - A SERVICE MEMBER may pursue and recover stolen assets vital to national security or inherently dangerous property if:

- CLEA or security forces are not reasonably available to recover them, and

- Commander, will have pre-authorized a pursue and recovery mission, and

- the pursuit is immediate, continuous, and uninterrupted.

- Rule 11.1:  <u>Contact CLEA</u> – DoD forces will contact CLEA as soon as practicable to inform them of the theft and pursuit.

33

UNCLASSIFIED//FOUO

The SRUF also addresses the authority to pursue and recover stolen designated property (see Slide 14) beyond DOD perimeters.
This authority rests with the Combatant Commander,. They must either pre-authorize this type of mission or delegate this authority to a subordinate commander to exercise at his discretion before it can actually be performed by Marines.
Another requirement for performing this type of mission is the unavailability of civilian law enforcement authorities to immediately conduct the pursuit/recovery operation.

DEFS_00002383

UNCLASSIFIED//FOUO



# SRUF Rule #12

— RULE 12:  <u>REPORT VIOLATIONS OF THE SRUF</u> - A SERVICE MEMBER will IMMEDIATELY report any violation of or non-compliance with the SRUF to the chain of command, Inspector General, Judge Advocate, Chaplain, or any commissioned officer with information concerning who, what, when, where, and why.

34

UNCLASSIFIED//FOUO

Service regulations, CONPLAN's, and EXORD's require the reporting of suspected violations of the SRUF to proper authorities, in part, in order to avoid the appearance of a cover-up.
Violations of the SRUF is a command concern and media sensitive.

DEFS_00002384

UNCLASSIFIED//FOUO



# Authories

Insurrection Act, 10 U.S.C. §§ 251-255

CJCSI 3121.01B, Standing Rules for the Use of Force

CJCSI 3110.07 Series "Nuclear, Biological, and Chemical Defense, Riot Control Agents, and Herbicides"

DOD Directive 3000.3, 9 July 1996 "Policy for Non-lethal Weapons"

Posse Comitatus Act: 10 U.S. Code Section 1385 and SECNAVINST 5820.7C

35

UNCLASSIFIED//FOUO

DEFS_00002385

UNCLASSIFIED//FOUO

 Standing Rules for the Use of Force

# QUESTIONS?

36

UNCLASSIFIED//FOUO

DEFS_00002386

UNCLASSIFIED//FOUO

 Standing Rules for the Use of Force

# VIGNETTES

37

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO



# Vignette 1

A Marine is standing guard outside a federal building.  A protester comes up to him and asks for water and medical attention.  What should the Marine do?

38

UNCLASSIFIED//FOUO



UNCLASSIFIED//FOUO

# Vignette 1

Provide water and assistance if it does not hinder your mission. It is okay to ask the protester about his injury to identify whether you can help him, or at least gather enough facts to report to civilian law enforcement authorities. Contact civilian law enforcement authorities and report the incident. Avoid confrontation. Do not detain against their will, arrest, or question the individual, which would constitute engaging in law enforcement activities which are not allowed.

Temporary Detention and Search are authorized when there is a potential threat to DoD Personnel.

Rule 2 De-Escalation
Rule 2.2 Notify CLEA
Rule 10 Temporary Detention
Rule 10.1 Search

39

UNCLASSIFIED//FOUO

DEFS_00002389



UNCLASSIFIED//FOUO

# Vignette 2

A group of Marines see 2 protesters break through a National Guard (activated under Title 10) security perimeter. One protester pulls out a handgun and points it at a National Guard Soldier. Civilian Law Enforcement Authorities are not present. What should the group of Marines do?

40

UNCLASSIFIED//FOUO



UNCLASSIFIED//FOUO

# Vignette 2

The individual's actions constitute a hostile act/hostile intent that is a threat of death or serious bodily harm to a service member. Under these circumstances, use of deadly force is authorized.

However, remember that deadly force should be used only as a last resort. If possible, assess whether you can employ de-escalation measures, such as a show of force or taking cover until civilian law enforcement authorities arrives to respond to the situation.

Rule 2 De-Escalation
Rule 2.2 Notify CLEA
Rule 6 Use of Deadly Force in Self-Defense, Defense of Other DoD Persons

41

UNCLASSIFIED//FOUO

DEFS_00002391

UNCLASSIFIED//FOUO



# Vignette 3

A group of Marines see 2 protesters break through a National Guard (activated under Title 10) security perimeter. One protester pulls out a handgun and points it at an Immigration and Customs Enforcement Agent. Civilian Law Enforcement Authorities are not present. What should the group of Marines do?

42

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO



# Vignette 3

The individual's actions constitute a hostile act/hostile intent that is a threat of death or serious bodily harm to a service member.  Under these circumstances, use of deadly force is authorized.

However, remember that deadly force should be used only as a last resort. If possible, assess whether it is possible to employ de-escalation measures, such as a show of force or taking cover until CLEA arrives to respond to the situation.

NOTE difference from Vignette 2 - You are also authorized to use deadly force to protect non-DoD persons in the vicinity from imminent threat of death or bodily harm, if directly related to the assigned mission.  Here, this is authorized because the threat is to an ICE Agent.

Rule 6 Use of Deadly Force in Self-Defense, Defense of Other DoD Persons

43

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO



# Vignette 4

A National Guard Soldier is critically injured.  There are protesters blocking the road that an ambulance must travel to get to him.  Your Marine Corps unit is the only option to clear the road.  What should you do?

44

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO



# Vignette 4

First, notify civilian law enforcement authorities.  Then, attempt to de-escalate the situation so that the ambulance can pass through.  As a last resort, non-deadly force can be used to stop a threat when it is reasonably necessary to control a situation and accomplish the mission.

Rule 2 De-Escalation
Rule 2.2 Notify CLEA
Rule 5 Use of Non-Deadly Force

UNCLASSIFIED//FOUO

DEFS_00002395

UNCLASSIFIED//FOUO



# Standing Rules for the Use of Force

Contact Information

Colonel **PII**

**PII**

Captain **PII**

**PII**

46

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO



# Posse Comitatus Act

BLUF: AD Military may not provide "direct assistance to civilian law enforcement activities."

"Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years or both."

**The Insurrection Act is a Statutory Exception to the Posse Comitatus Act**

47

UNCLASSIFIED//FOUO

The PCA was enacted largely in response to the use of the military to enforce criminal laws in the former Confederate states during Reconstruction.  However, the concepts of civilian control of the military and not wanting the military to take a role in law enforcement is deep-rooted in American history

Cannot "execute the laws"—Prohibits certain types of direct assistance to civilian law enforcement officials

PCA governs the actions of Title 10 forces and DOD civilians and contractors performing law enforcement/security duties on the following missions:
Defense Support of Civil Authorities (DSCA) operations.
Land Homeland Defense missions.
Anti-Terrorism/Force Protection duties.

DEFS_00002397

Security and law enforcement functions on and off DOD installation.
Critical infrastructure protection on and off DOD installations.
Civilian law enforcement cooperative missions.
Civil disturbance operations.

Cautionary Tale
The 20 MAY 97 incident when a Marine shot and killed a US citizen as part of a joint exercise with the U.S. Border Patrol heightened the need to teach distinctions between SROE and SRUF.  On 20 May 97, Cpl Clemente Bañuelos, U.S. Marine Corps, was leading a fire team of Marines manning a listening post/observation post (LP/OP) southeast of Redford, TX as part of Joint Task Force 6 (JTF–6), a military mission in support of the U.S. Border Patrol's efforts to guard the U.S.-Mexico border against illegal narcotics trafficking. Mr. Hernandez, a U.S. citizen and resident teenager of the area, was walking goats on the U.S. side of the border and carrying a rifle. As the Marines were observing Hernandez, he fired shots in their direction from approximately 190 meters away and then proceeded in a manner that appeared to Bañuelos as a tactical relocation. Bañuelos maneuvered his team accordingly, concerned that Hernandez was moving to another position to fire again. In the midst of these maneuvers, Bañuelos saw Hernandez raise his rifle and point it at LCpl James Blood, a member of the fire team that had moved about 30 meters to the right of Bañuelos and about 130 meters from Hernandez. Bañuelos fired one shot from his M16A2 rifle, striking Hernandez who died on the scene. Two Texas county grand juries and one federal grand jury refused to indict Bañuelos. An extensive military investigation concluded that the case lacked prosecutorial merit. The JTF–6 shooting incident remains a powerful reminder that when military personnel employ force, their actions and decisions and the rules that they follow may be subject to outside scrutiny from many levels.

UNCLASSIFIED//FOUO



# Posse Comitatus Act

BLUF: Under PCA, Active-Duty Military may not provide "direct assistance to civilian law enforcement activities," unless a Constitutional exception or an Act of Congress specifically permits it.

**\*\*PCA is subject to certain exceptions** The Insurrection Act provides a statutory exception to the Posse Comitatus Act (1878) that limits the president's deploying the U.S. military to enforce either civil law or criminal law within the United States.

48

UNCLASSIFIED//FOUO

DEFS_00002399