# EXHIBIT 34 (pages 1-99) REDACTED




UNCLASSIFIED//FOUO

# OPERATION BORDER SUPPORT

## Standing Rules for the Use of Force

## JRSOI Legal Brief

DEFS_00018009




UNCLASSIFIED//FOUO

# Purpose & Agenda

- TLO: To educate service members on rules governing the use of force as units deploy in support of Department of Homeland Security and Customs and Border Protection Personnel in their mission to secure the southern border.

- Commander's Intent
- Operational Authorities
- Posse Comitatus
- SRUF 1-12
- Operational Overview
- UCMJ/GO1
- Vignettes

DEFS_00018010




UNCLASSIFIED//FOUO

# Commander's Intent

- Purpose: Enable CBP success in their border security mission

- Method: Key to success will be **tactical agility**. The operating environment is uncertain and we will be comfortable maneuvering in it. Our agility is founded in our ability to **anticipate** support requirements across warfighting functions and an **integrated C2** architecture with the CBP **partners**. Again, we are a supporting effort to CBP.

- End State: CBP is successful in maintaining the integrity of the US border in Sector SW, JFLCC postured to conduct follow-on missions ISO CBP, and all supporting units redeployed and safely at home station with gear and personnel accounted for.

We will be **Sturdy Professionals**, **Compassionate Warriors**, and **Epitomize Discipline.**




UNCLASSIFIED//FOUO

# Authorities

- Posse Comitatus Act: 10 U.S. Code Section 1385 and SECNAVINST 5820.7C
- DODD 3025.18, DOD Support of Civil Authorities
- DODI 3025.21, DOD Support to Civilian Law Enforcement Agencies
- CJCSI 3121.01B, Standing Rules for the Use of Force
- SECDEF Action Memo, dtd 20181026, Authorizing DOD Support to DHS
- Modified SWB Support EXORD, dtd 20181122
- SECDEF extension of RFA #3, dtd 20190201
- SECDEF Approval Memo RFA #4, dtd 20191119
- SECDEF Approval Memo RFA # 8, dtd 20190426
- USNORTHCOM FRAGO 065.034 to NORTHCOM OPORD 01-17
- USARNORTH OPORD 19-005

DEFS_00018012




UNCLASSIFIED//FOUO

# POSSE COMITATUS ACT

DEFS_00018013




UNCLASSIFIED//FOUO

# Posse Comitatus Act

BLUF: AD Military may not provide "direct assistance to civilian law enforcement activities."

"Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years or both."

The PCA was enacted largely in response to the use of the military to enforce criminal laws in the former Confederate states during Reconstruction.  However, the concepts of civilian control of the military and not wanting the military to take a role in law enforcement is deep-rooted in American history

Cannot "execute the laws"—Prohibits certain types of direct assistance to civilian law enforcement officials

PCA governs the actions of Title 10 forces and DOD civilians and contractors performing law enforcement/security duties on the following missions:
Defense Support of Civil Authorities (DSCA) operations.
Land Homeland Defense missions.
Anti-Terrorism/Force Protection duties.

DEFS_00018014

Security and law enforcement functions on and off DOD installation.
Critical infrastructure protection on and off DOD installations.
Civilian law enforcement cooperative missions.
Civil disturbance operations.

Cautionary Tale
The 20 MAY 97 incident when a Marine shot and killed a US citizen as part of a joint exercise with the U.S. Border Patrol heightened the need to teach distinctions between SROE and SRUF.  On 20 May 97, Cpl[____PII____], U.S. Marine Corps, was leading a fire team of Marines manning a listening post/observation post (LP/OP) southeast of Redford, TX as part of Joint Task Force 6 (JTF–6), a military mission in support of the U.S. Border Patrol's efforts to guard the U.S.-Mexico border against illegal narcotics trafficking. Mr.[___PII___], a U.S. citizen and resident teenager of the area, was walking goats on the U.S. side of the border and carrying a rifle. As the Marines were observing Hernandez, he fired shots in their direction from approximately 190 meters away and then proceeded in a manner that appeared to[___PII___]as a tactical relocation[___PII___] maneuvered his team accordingly, concerned that[___PII___]was moving to another position to fire again. In the midst of these maneuvers,[__PII__]saw[__PII__]raise his rifle and point it at LCpl[___PII___]a member of the fire team that had moved about 30 meters to the right of[__PII__]and about 130 meters from[_____PII_____]fired one shot from his M16A2 rifle, striking[__PII__]who died on the scene.￼Two Texas county grand juries and one federal grand jury refused to indict[__PII__]. An extensive military investigation concluded that the case lacked prosecutorial merit. The JTF–6 shooting incident remains a powerful reminder that when military personnel employ force, their actions and decisions and the rules that they follow may be subject to outside scrutiny from many levels.

 

UNCLASSIFIED//FOUO

# Posse Comitatus Act

BLUF: Under PCA, Active Duty Military may not provide "direct assistance to civilian law enforcement activities," unless a Constitutional exception or an Act of Congress specifically permits it.

**\*\*PCA is subject to certain exceptions. In this operation, a Constitutional exception to the general prohibition has been triggered. This exception is in place due to the President's Order directing DoD to protect Federal Employees at POEs in the execution of their Federal Duties.**

Under the Constitution and the laws of the United States, the protection of life and property and the maintenance of law and order within the territorial jurisdiction of any State are the primary responsibility of State and local governments.  The Federal government may assume this responsibility, but only in certain limited instances.  Normally, Federal military forces are not used to suppress civil disturbances unless specifically authorized by the President under his constitutional or statutory authority.

DEFS_00018016




UNCLASSIFIED//FOUO

# Prohibited Assistance to Law Enforcement Agencies

- PCA Prohibits:
  - Arrests
  - Apprehension
  - Search, seizure
  - Security patrols
  - Traffic control
  - Crowd control, riot control
  - Evidence collection, interrogation

Additionally, the PCA prohibits any other activity where civilians are subjected to military authority that is regulatory, proscriptive, or compulsory.

Cannot provide direct assistance to civilian law enforcement. (list of prohibited law enforcement activities)
What is "direct assistance"?
Active, as opposed to passive, use of military personnel;
or Whether the use pervades/fully subsumes the activities of civilian law enforcement;
or Whether military personnel subject citizens to the exercise of military power that is regulatory (controls or directs), proscriptive (prohibits or condemns), or compulsory (exerts some coercive force) in nature.

DEFS_00018017




UNCLASSIFIED//FOUO

# Prohibited Assistance to Law Enforcement Agencies

- Consequences of violation include:
  - Criminal prosecution and punishment.
  - UCMJ prosecution and punishment.
  - Civil Fines.
  - Evidence obtained is subject to the "exclusion rule" in criminal court proceedings.




UNCLASSIFIED//FOUO

# Permitted Assistance to Civilian Law Enforcement

- Loan of Equipment and Facilities (e.g., logistical support)*

- Expert Advice and Training*

- Sharing Information*

- In accordance with applicable laws and policies

- *OTHER lawful assistance pursuant to a Constitutional exception via Presidential directive

DEFS_00018019





UNCLASSIFIED//FOUO

# STANDING RULES FOR THE USE OF FORCE (SRUF)





UNCLASSIFIED//FOUO

# SRUF Basics

- SRUF support your unit's mission.

- SRUF are SECDEF-approved rules.

- SRUF are different from SROE.

  - SRUF, consistent with the "reasonableness standard" of the Fourth Amendment, provides guidance to DoD forces on the use of force within US territory against all civilians and fellow Americans (self-defense and force protection based).

  - SROE provides guidance on how to engage the enemy in combat outside US territory according to the Law of War and International Law.

- SRUF require commanders at all levels to teach and train their units, to include issuing an SRUF card, prior to deploying for DSCA missions.

The SRUF applies to all DOD personnel for every conceivable mission that DOD land forces could perform on US soil (Hurricane Katrina).

The very nature of domestic operations – American military forces operating in US communities – has such significant implications that the mistakes of a few Soldiers can have far-reaching social, political, and operational effects. Therefore, clear standards for the use of force must be established and, more importantly, followed.

SRUF are intended to support a unit's mission. If they do not, commanders may submit a request up the chain to the SECDEF for mission-specific RUF at any time. Such a request must explain why the requested RUF is necessary to accomplish a particular course of action.

Although there are similarities, SRUF is not the same as SROE, which means Standing Rules of Engagement.

Unlike the SROE, the SRUF is based on and consistent with domestic law, meaning the Constitution and Federal laws, and apply to all DSCA and land HD operations in the US and its territories. SROE, on the other hand, is based on international law and the

Law of War and applies during combat operations against an enemy overseas.

Constitutionally, guidance on the type and amount of "force" under the SRUF is provided by the Fourth Amendment, specifically that part which says, "The right of the people to be secure . . . . against unreasonable . . . .seizures shall not be violated."  The "use of force," whether deadly or not, that attempts to restrain or stop the movement of another person is consider a "seizure" and is Constitutional only if the "seizure" is "reasonable" under the circumstances.  Therefore, the reasonable use of force under the circumstances will be deemed Constitutional and conversely the unreasonable use of force will be considered unconstitutional.

Although all of the Supreme Court cases we rely upon for guidance under this part of the 4A pertain to situations where civilian law enforcement officers were accused of using excessive force, the Court's fundamental "use of force" analysis in these cases can be applied to DOD personnel performing domestic military operations as well.

Commanders have the responsibility to teach and train their units on the SRUF at home station, to include issuing an SRUF card, prior to deploying for a domestic military land mission.




UNCLASSIFIED//FOUO

# SRUF and the 4th Amendment

- 4th Amendment – "The right of the people to be secure . . . . against unreasonable . . . .seizures shall not be violated."

- **SRUF – The "use of force," whether deadly or not, that attempts to restrain or stop the movement of another person is considered a "seizure" and is Constitutional only if the "seizure" is "reasonable" under the circumstances.**

DEFS_00018023

 

# Self-Defense

• **Hostile Act**: An attack or other use of force against the US, US Forces or other designated persons or property.

• **Hostile Intent**: Demonstrated "hostile intent" is the imminent threat of the use of force against the US, US forces or designated persons or property, including the threat of force to stop or hinder a military mission.

In his decision to use force in self-defense when he is being attacked or when he reasonably believes there is an imminent threat of the use of force against him, a Soldier will be given great latitude.  The reasonable use of force against a threat under these circumstances is a method to control a dangerous situation.
Imminent Threat Examples:
An example of an "imminent threat" of the use of force is an individual (1) possessing a weapon or other lethal means or reaching for such (2) under circumstances indicating an intention to use that weapon or other lethal means against a Soldier or others in the immediate vicinity.
An individual possesses a weapon or is attempting to gain access to a weapon under circumstances indicating an intention to use it against DOD personnel or other persons within the immediate vicinity of the DOD personnel
An individual without a deadly weapon, but who has the capability of inflicting death or serious physical injury and is demonstrating an intention to do so (e.g., an attempt to run over Soldiers with a car).

DEFS_00018024

Imminent Threat Factors:
Based on all the facts and circumstances
Made at any level
Not necessarily immediate or instantaneous
"Individuals with the capability to inflict death or serious bodily harm AND who demonstrate the intent to do so may be considered an imminent threat."
*NO STATUS-BASED TARGETS

DEFS_00018025



UNCLASSIFIED//FOUO

# Imminent Threat

- **<u>Imminent Threat</u>**:  Present when an individual has the capability to inflict death or serious bodily harm and demonstrates the intent to do so.  It is based on all facts and circumstances.

- Imminent Threat Examples:
  - An individual (1) possesses a deadly weapon (or reaches for such) (2) under circumstances indicating an intention to use that weapon or other lethal means against DoD personnel or others in the immediate vicinity of the DoD personnel.
  - An individual has no deadly weapon, but has the capability of inflicting death or serious physical injury and is demonstrating an intention to do so (e.g., an attempt to run over service members with a car).

MORE than MERE possession of a weapon – use all circumstances to evaluate.

In his decision to use force in self-defense when he is being attacked or when he reasonably believes there is an imminent threat of the use of force against him, a Soldier will be given great latitude.  The reasonable use of force against a threat under these circumstances is a method to control a dangerous situation.
Imminent Threat Examples:
An example of an "imminent threat" of the use of force is an individual (1) possessing a weapon or other lethal means or reaching for such (2) under circumstances indicating an intention to use that weapon or other lethal means against a Soldier or others in the immediate vicinity.
An individual without a deadly weapon, but who has the capability of inflicting death or serious physical injury and is demonstrating an intention to do so (e.g., an attempt to run over Soldiers with a car).

Imminent Threat Factors:
Based on all the facts and circumstances
Made at any level
Not necessarily immediate or instantaneous
"Individuals with the capability to inflict death or serious bodily harm AND who demonstrate the intent to do so may be considered an imminent threat."
*NO STATUS-BASED TARGETS

DEFS_00018027





UNCLASSIFIED//FOUO

# Self-Defense

- **Unit Self-Defense** - A commander always has the inherent right and obligation to exercise unit self-defense in response to a hostile act or demonstrated hostile intent.

  - The unit commander may defend his/her unit, and includes the defense of other DoD forces in the vicinity.

  - **Individual Self-Defense** is considered a sub-set of unit self-defense.  As such, unit commanders may limit individual self-defense by members of the unit.

UNIT SD
The inherent right and obligation of unit self-defense means that, as a general rule, it is the natural part of something that cannot be taken away.
This right applies when it is necessary to respond to a hostile act or demonstrated hostile intent, as further defined on this slide.
A hostile act or demonstrated hostile intent triggers the right to respond with force, but only certain acts or intents trigger the right to use deadly force.

INDIVIDUAL SD
In order to defuse a confrontational situation between armed Soldiers and armed civilians, a commander has the option – but not the requirement - to order his Soldiers "to stand down," and thus limit his Soldier's right of individual self-defense, in order

DEFS_00018028

to demonstrate his good faith and willingness to resolve the dispute peacefully.

A good, real-life example of limiting the right of self-defense occurred within a National Guard unit during the aftermath of Hurricane Katrina and as a result, the commander avoided a potentially major use of deadly force issue. Guardsmen, who were evacuating patients from a New Orleans hospital, came under fire from snipers across the street. Instead of responding to these clearly hostile acts with deadly force, as the SRUF would have allowed them to do, the commander ordered his unit not to return fire and temporarily suspended the evacuation for a few hours until the snipers left the area. The commander wisely considered the safety of his unit and others in the area and the possible adverse consequences of engaging in a unprecedented firefight in a U.S. city before deciding to limit his unit's right of self-defense.

DEFS_00018029




UNCLASSIFIED//FOUO

# De-Escalation

• Try and avoid confrontation with individuals that pose a threat to you or your unit.

•  When conducting CBP support missions, your first line of defense and your primary force protection measure will be co-located law enforcement agents.

• When time and circumstances permit, give threatening individuals verbal warnings and an opportunity to withdraw/stop the threatening actions.

•Think "De-Escalation Through Maneuver" and incorporate into mission planning.

     • <u>De-Escalation Option</u>:  Contact CLEA immediately and issue verbal warnings; then, if prudent, withdraw or take cover.

Always remember, CBP is your primary force protection.
The SRUF makes it clear that de-escalation is an important concept that must be considered prior to using force.
The SRUF encourages Soldiers to defuse a confrontational situation by using de-escalation measures, but only when time and circumstances permit.
Employing de-escalation measures successfully may ensure that a Soldier is never accused of using excessive force.




UNCLASSIFIED//FOUO

# Limitations on Use of Force

"Normally, force is to be used only as a last resort, and the force used should be the minimum necessary" to deter or neutralize the threat.

- **Reasonable** - Any use of force must be reasonable in intensity, duration, and magnitude to counter the threat based on all of the known circumstances.

- **Safety** - Exercise due regard for the safety of innocent bystanders when using any type of force.

- **Warning Shots** - NOT authorized.

The SRUF re-emphasizes the de-escalation concept when it provides that force will be used as a last resort.
When force is used, the SRUF requires that (1) it should be the minimum necessary, (2) that it be reasonable under the circumstances, and (3) that it not create a substantial risk of injury to innocent bystanders.
Furthermore, while warning shots may not be unconstitutional or unlawful, per se, the SRUF makes it clear that they are not authorized under any circumstances.




# Non-Deadly Force

- If force is required, non-deadly force is authorized and may be used to:

    • control a situation and accomplish the mission, or

    • to protect yourself and other DoD personnel,

    • to defend non-DoD persons in the vicinity, but <u>only</u> "if directly related to the assigned mission," (e.g., protect CBP agent), or

    •to defend protected property designated by the on-scene commander or higher authority.

These are the situations in which you can use non-deadly force.

The phrase: "if directly related to the assigned mission" with respect to the defense of non-DOD personnel in the vicinity is new with the 2005 version of the SRUF. There was no similar provision requiring a connection to an assigned mission in previous versions of the SRUF. Nor is the phrase defined in the current SRUF.
Therefore, commanders are required to look first at the assigned mission to see if it contains any language that would provide the necessary connection to the defense on non-DOD personnel.
If the assigned mission does not contain any connection language, the SRUF does not prohibit a unit commander from tailoring the mission to the current situation on the ground. He has the flexibility to include in his assigned mission the defense of non-DOD personnel in the vicinity when it is reasonable and necessary. He should advise his chain of command of the circumstances and his decision to include the defense on non-DOD personnel in his unit's mission.




# Deadly Force

- "Deadly force is to be used only when all lesser means have failed or cannot reasonably be employed" AND it reasonably appears necessary.

- Deadly force is authorized under the following situations:

  - To protect yourself, other DoD personnel, and, under certain circumstances, non-DoD personnel, from imminent threat of death or serious bodily harm (SBH) (This could include threats posed by vehicles).

  - To prevent the theft of "inherently dangerous" unit property (something that can, and is likely to, be used right then and there to kill you or cause SBH).
    - **Inherently Dangerous Property = M4 with rounds in magazine**
    - **Inherently Dangerous Property ≠ communications, medical, or other unit equipment**

The "reasonable" and "necessary" concepts are also central to the use of deadly force.
The use of deadly force by a Soldier will be justified if reasonable and within the scope of his duties to defend himself or other persons.
The use of deadly force is the ultimate "seizure" which is unmatched by any other type of force, in that it may end the life of the person against whom such force is used.
Unlike what may occur under ROE, under the SRUF there is no pre-designated legitimate target or declared hostile force, such as "all adults males are hostile." Deadly force is not authorized against a person who poses no immediate threat of death or serious bodily harm to the Soldier or others in the vicinity. Thus, deadly force is not authorized to prevent the escape of an unarmed and non-dangerous person.
Soldiers do not carry the burden of deciding what is properly designated property. This will be decided for them by the on-scene commander.

Not all moving vehicles are a legitimate target, but circumstances may occur when they are.
Rule 8 takes into consideration a vehicle being used in a threatening manner against DOD forces and against non-DOD personnel in the vicinity "if directly related to the assigned mission" and allows a Soldier to engage any part of the vehicle with deadly force in order to stop it.

DEFS_00018034




UNCLASSIFIED//FOUO

# Self-Defense/
# Defense of Others

- Non-Deadly: If force is required ... force is authorized to and may be used ...
  - to control a situation and accomplish the mission, or
  - to provide self-defense of DoD forces, and
  - Defend non-DoD persons in the vicinity **if directly related to the assigned mission.**
- "Deadly force is authorized in defense of non-DoD persons in the vicinity, **<u>when directly related to the assigned mission</u>**."
- <span style="color:red">\*\*Must always consider "What is my mission" prior to the use of force in order to ensure proper application of "Defense of Others" under the SRUF.</span>

BLUF: Force may only be used to protect non-DOD personnel in the vicinity, if doing so is directly related to your assigned mission.
Unless going to the aid of a non-DOD person in the vicinity who is facing a threat of harm is directly related to your assigned mission, you may NOT assist in the defense of that non-DOD person.




UNCLASSIFIED//FOUO

# "Aggressor" Concept

Under Federal and State laws, an individual that commits a hostile act or demonstrates hostile intent is considered the "Aggressor." The law of self-defense allows you to respond and protect yourself from an "Aggressor."

However, if you either use more force than is necessary, or respond with DEADLY-force to a NON-deadly threat – You will likely lose your right of self-defense, and you will be viewed, under the law, as the "Aggressor."

• NON-Deadly Force: Do NOT use more force than is necessary, in intensity, duration, or magnitude, to counter the threat.

• DEADLY Force: Do NOT respond to non-deadly force with deadly force. Further, when threatened with non-deadly force, do not load your weapon, "flag" or point at the aggressor with your unloaded weapons, because these acts will make it LOOK like you are using, or are about to use, deadly force.

DEFS_00018036




UNCLASSIFIED//FOUO

# SRUF – Analysis

• Analyze/Assess the threat.

• Can you use any de-escalation measures to stop or deter the threat?

• Does the threat justify the use of force in self-defense?

• What type of force may you use to stop or deter the threat?

• Are you likely to use either too much force, or are you risking becoming the Aggressor?




UNCLASSIFIED//FOUO

# Non-Deadly Force Analysis



**Non Deadly Force**
- Hostile act using non-deadly force
- Hostile intent using non-deadly force (Imminent threat)

**De-Escalate**
- Contact LEA
- No warning Shots
- De-Escalation Failed?  Insufficient time to attempt De-Escalation?

**Use of Force**
- as a last resort
- the force used should be the minimum necessary to control the situation, accomplish the mission and provide protection to DoD personnel and any non-DoD personnel associated with the mission.

DEFS_00018038





UNCLASSIFIED//FOUO

# Deadly Force Analysis

**Deadly Force**
- Hostile Act using DEADLY FORCE
- Hostile Intent using DEADLY FORCE (Imminent threat?)

**De-Escalate**
- Contact CLEA
- No warning Shots
- De-Escalation Failed?
- Is there anything else you can do to avoid the situation?

**Use of Force**
- All lesser means have failed or cannot reasonably be employed.
- Must be reasonable and necessary to protect you, other DoD personnel, or non-DoD personnel associated with the mission.

Its important to advise that the force continuum is not necessary if the immediate threat is one of death or serious physical harm.




UNCLASSIFIED//FOUO

# SRUF – RULE 1

- **RULE 1:** <u>LIMITATIONS ON THE USE OF FORCE</u> - A SERVICE MEMBER will use force of any kind only as a last resort and, if used, the force will be the minimum necessary to accomplish the mission.

  - **Rule 1.1:** <u>Reasonable</u> - Any use of force must be reasonable in intensity, duration, and magnitude to counter the threat based on all of the known circumstances.

  - **Rule 1.2:** <u>Safety</u> - Exercise due regard for the safety of innocent bystanders when using any type of force.

  - **Rule 1.3:** <u>Warning Shots</u> - Warning shots are NOT authorized.

The SRUF re-emphasizes the de-escalation concept when it provides that force will be used as a last resort.
When force is used, the SRUF requires that (1) it should be the minimum necessary, (2) that it be reasonable under the circumstances, and (3) that it not create a substantial risk of injury to innocent bystanders.
Furthermore, while warning shots may not be unconstitutional or unlawful, per se, the SRUF makes it clear that they are not authorized under any circumstances.




# SRUF – RULE 2

- **RULE 2:** <u>DE-ESCALATION</u> - When time and circumstances permit, a SERVICE MEMBER will give a threatening force warning and an opportunity to withdraw or stop the threatening actions before using force.

  - Other graduated <u>de-escalation measures</u> such as withdrawing to another location; verbal explanations, requests, warnings; taking cover; increasing the number of military personnel; forming a formation to physically block access; showing the potential to use non-lethal force including military working dogs; and suggesting deadly force capabilities may be employed.

  - **Rule 2.1:** <u>Avoid Confrontation</u> - Avoid confrontation with individuals who pose no threat to the unit, to non-DoD persons in the vicinity, or property secured by DoD forces.

  - **Rule 2.2:** <u>Notify CLEA</u> - Increase self-defense posture and notify civilian law enforcement authorities (CLEA) or security agency personnel as soon as practicable if confrontation appears likely, civilians are acting in a suspicious manner, or immediately after a confrontation.

The SRUF makes it clear that de-escalation is an important concept that must be considered prior to using any type of force. Incorporate De-Escalation by Maneuver into your planning process for this mission set.  Be agile and prepared to execute maneuver as required.
The SRUF encourages Soldiers to defuse a confrontational situation by using de-escalation measures, but only when time and circumstances permit.
Employing de-escalation measures successfully may ensure that a Soldier is never accused of using excessive force.




UNCLASSIFIED//FOUO

# SRUF – RULE 3

- **RULE 3:  INDIVIDUAL SELF-DEFENSE** - A SERVICE MEMBER may exercise individual self-defense in response to a hostile act or demonstrated hostile intent.

  - **Individual self-defense** is a subset of unit self-defense, when assigned to or acting as part of a unit.

  - **Rule 3.1:  Limit on Self-Defense** - A commander may limit individual self-defense by members of his unit.

Commanders can provide additional guidance on what constitutes a hostile act or a demonstrated hostile intent under the circumstances they are facing.  For example, a commander may tell his Soldiers that the simple possession of a weapon, by itself, does not constitute a hostile act or demonstrated hostile intent and, thus, does not, by itself, justify the use of deadly force.

In order to defuse a confrontational situation between armed Soldiers and armed civilians, a commander has the option – but not the requirement - to order his Soldiers "to stand down," and thus limit his Soldier's right of individual self-defense, in order to demonstrate his good faith and willingness to resolve the dispute peacefully.

A good, real-life example of limiting the right of self-defense occurred within a National Guard unit during the aftermath of Hurricane Katrina and as a result, the commander avoided a potentially major use of deadly force issue.  Guardsmen, who were evacuating patients from a New Orleans hospital, came under fire from snipers across the street.  Instead of responding to these clearly hostile acts with deadly force, as the SRUF would have allowed them to do, the commander ordered his unit not to

return fire and temporarily suspended the evacuation for a few hours until the snipers left the area. The commander wisely considered the safety of his unit and others in the area and the possible adverse consequences of engaging in a unprecedented firefight in a U.S. city before deciding to limit his unit's right of self-defense.

DEFS_00018043

 

UNCLASSIFIED//FOUO

# SRUF – RULE 4

- **RULE 4:  UNIT SELF-DEFENSE** - A COMMANDER always has the inherent right and obligation to exercise unit self-defense in response to a <u>hostile act</u> or <u>demonstrated hostile intent</u>.

  - <u>Unit self-defense</u> includes the defense of other DoD forces in the vicinity.
  - <u>Hostile act</u> is an attack or other use of force against the US, US forces or other designated persons or property, including the use of force to directly stop or hinder a military mission.
  - <u>Demonstrated hostile intent</u> is the <u>imminent threat</u> of the use of force against the US, US forces or designated persons or property, including the threat of force to stop or hinder a military mission.

The inherent right and obligation of unit self-defense means that, as a general rule, it is the natural part of something that cannot be taken away (but see Rule 3).
This right applies when it is necessary to respond to a hostile act or demonstrated hostile intent, as further defined on this slide.
An example of a hostile act is someone shooting at you or another Soldier.  A punch in the nose is also a hostile act.
A hostile act or demonstrated hostile intent triggers the right to respond with force, but only certain acts or intents trigger the right to use deadly force.




UNCLASSIFIED//FOUO

# SRUF – RULE 4 continued

- <u>Imminent threat of death or serious bodily harm</u> will be based on an assessment of all the facts and circumstances known to DoD forces at the time. Individuals with the capability to inflict death or <u>serious bodily harm</u> and who demonstrate an intent to do so may be considered an imminent threat.

    - <u>Imminent</u> does not necessarily mean immediate or instantaneous. All available facts indicate a hostile act is about to occur.

    - <u>Serious bodily harm</u> means fractures, dislocated bones, deep cuts, and other life-threatening injuries. It is more than a black eye or bloody nose.

In his decision to use force in self-defense when he is being attacked or when he reasonably believes there is an imminent threat of the use of force against him, a Soldier will be given great latitude. The reasonable use of force against a threat under these circumstances is a method to control a dangerous situation.

An example of an "imminent threat" of the use of force is an individual (1) possessing a weapon or other lethal means or reaching for such (2) under circumstances indicating an intention to use that weapon or other lethal means against a Soldier or others in the immediate vicinity.

If threatened by a person with a weapon, you do not need to wait to be fired on before you can use force.



UNCLASSIFIED//FOUO



# SRUF – RULE 5

- RULE 5:  USE OF NON-DEADLY FORCE - A SERVICE MEMBER may use non-deadly force to stop a threat (hostile act or demonstrated hostile intent) AND it is reasonably necessary:

    - to control a situation and accomplish the mission,

    - to provide protection for himself and other DoD personnel,

    - to defend non-DoD persons in the vicinity, but only IF directly related to the assigned mission or

    - to defend designated protected property by the on-scene commander or higher authority.

    - The use of Service-approved, unit issued non-lethal weapons and riot control agents (RCA), including oleoresin capsicum (OC) pepper spray and CS gas is authorized.  Guidance on riot control agents is governed by CJCSI 3110.07 series.

When force is reasonably necessary under the four situations described on this slide, non-deadly force, including non-lethal weapons, is authorized.

This rule is the first of five rules that contains the phrase "if directly related to the assigned mission" with respect to the defense of non-DOD personnel in the vicinity.  This phrase is new with the 2005 version of the SRUF.  There was no similar provision requiring a connection to an assigned mission in previous versions of the SRUF.  Nor is the phrase defined in the current SRUF.  Therefore, commanders are required to first look at the assigned mission to see if it contains language, such as "to save lives, protect public safety, prevent human suffering," that would provide the necessary connection to defend non-DOD personnel. Remember, "saving lives" is not an implied mission, so it needs to be specifically stated.

For the southwest border operation, the "assigned mission" means the specific mission of the specific group of DoD personnel faced with a decision to use force, at the specific time that they are faced with that decision.

If the assigned mission does not contain any connection language, the SRUF does not prohibit a unit commander from tailoring

DEFS_00018046

the mission to the current situation on the ground.  He has the flexibility to include in his assigned mission the defense of non-DOD personnel in the vicinity when it is reasonable and necessary.  He should advise his chain of command of the circumstances and his decision to include the defense on non-DOD personnel in his unit's mission.

The authority to issue and use Service-approved non-lethal weapons (NLW):

DoD Directive 3000.3 (Policy for NLW):

Provides authority for issue and use of NLW capabilities

Defines Nonlethal Weapons

Does not require NLW be used prior to lethal weapons

Chairman of the Joint Chiefs of Staff Instruction CJCSI 3121.01B (SRUF):

TRADOC Pam 525-99 (Concept for NLW in Army Ops):

Describes how the Army will use NLW capabilities

Outlines how NLW supports range of military operations

NLW items with NSN or GSA # in the Army system have been tested, reviewed and approved for use by DA General Counsel and DA Surgeon General.

Limitations on specific items may be established at local command level.

Usage and training references:

FM 3-19.15 Civil Disturbance

FM 3-22.40 NLW Tactics Techniques and Procedures

FM 3-07, FM 3-07.31 and FM 3-07.22

TRADOC Pam 525-99 Concept for NLW in Army Ops

DA PAM 358-30 Chapters 8 and 16

ANSEC NLW Training Support Packages

ANSEC NLW Training Circular effort (~ FY10)




UNCLASSIFIED//FOUO

# SRUF – RULE 6

- **RULE 6:** <u>USE OF DEADLY FORCE IN SELF-DEFENSE, DEFENSE OF OTHERS, AND DEFENSE OF PROPERTY</u> - A SERVICE MEMBER may use deadly force only when all lesser means have failed or cannot reasonably be employed AND it reasonably appears necessary:
  - to protect DoD forces when a commander reasonably believes a person poses an imminent threat of death or serious bodily harm;
  - to protect yourself and other DoD forces from the imminent threat of death or serious bodily harm;
  - to protect non-DoD persons in the vicinity from the imminent threat of death or serious bodily harm, <u>but only IF directly related to the assigned mission</u>;
  - to prevent the actual theft or sabotage of assets vital to national security or inherently dangerous property; and
  - to prevent the sabotage of a national critical infrastructure.

- **Rule 6.1:** <u>Use of Deadly Force NOT Authorized</u> - Deadly force is not authorized to disperse an unarmed crowd, to stop looting, to enforce a curfew, or to protect or recover non-designated property.

The "reasonable" and "necessary" concepts are also central to the use of deadly force. DOD policy is that a Soldier use deadly force sparingly.
The use of deadly force by a Soldier will be justified if reasonable and necessary and within the scope of his duties to defend himself or other persons.
The use of deadly force is the ultimate "seizure" which is unmatched by any other type of force, in that it may end the life of the person against whom such force is used.
The SRUF authorizes the use of deadly force under five circumstances. Three are designed to protect persons under very serious conditions and two are designed to protect certain important properties designated by proper authorities that are both defined on the next slide.
Note that the "if directly related to the assigned mission" requirement that was discussed on the last slide appears again in the third sub-bullet.

Again, for the southwest border operation, the "assigned mission" means the specific mission of the specific group of DoD personnel faced with a decision to use force, at the specific time that they are faced with that decision.

Unlike what may occur under ROE (see slide 12), under the SRUF there is no pre-designated legitimate target or declared hostile force, such as "all adults males are hostile." Deadly force is not authorized against a person who poses no immediate threat of death or serious bodily harm to the Soldier or others in the vicinity. Thus, deadly force is not authorized to prevent the escape of an unarmed and non-dangerous person, even if he is a member of an unruly crowd, a looter, or in violation of a curfew.

DEFS_00018049

XYZ




UNCLASSIFIED//FOUO

# SRUF – RULE 6 continued

- <u>Assets vital to national security</u> are DoD and non-DoD property designated by the President (not limited to: nuclear weapons, nuclear C2 facilities, restrictive areas containing strategic operational assets, sensitive codes or special access programs) whose actual theft or sabotage would seriously jeopardize the accomplishment of a national defense mission and would create an imminent threat of death or serious bodily harm.

- <u>Inherently dangerous property</u> is property designated by the on-scene commander (not limited to: weapons, ammo, grenades, explosives, portable missiles, rockets, chemical agents, special nuclear materials) that in the hands of an unauthorized individual, would create an imminent threat of death or serious bodily harm.

- <u>National critical infrastructure</u> is a President-designated public utility, key transportation node, or similar critical infrastructure vital to public health or safety (power plants, dams, water treatment plants, oil pipelines, air traffic control facilities), the damage to which would create an imminent threat of death or serious bodily harm.

These three types of property are terms of art. They each have legal meaning and must be designed by the correct authority in order to be entitled to protection with deadly force.
Soldiers do not carry the burden of deciding what is properly designated property. This will be decided for them by either the President or the on-scene commander.




UNCLASSIFIED//FOUO

# SRUF – RULE 7

- RULE 7:  USE OF DEADLY FORCE AGAINST A SERIOUS OFFENSE - A SERVICE MEMBER may use deadly force, <u>but only IF it is directly related to the assigned mission</u>  AND it reasonably appears necessary:

  - to prevent a serious offense against any person that involves imminent threat of death or serious bodily harm,
  - to prevent the escape of a person where probable cause indicates he has committed or attempted to commit a serious offense and would pose an imminent threat of death or serious bodily harm to DoD forces or others in the vicinity,
  - to arrest or apprehend a person who, there is probable cause to believe, has committed a serious offense that involved imminent threat of death or serious bodily harm.

  - <u>A serious offense</u> is one that involves the imminent threat of death or serious bodily harm such as murder, rape, armed robbery, aggravated assault, aggravated arson, or sniping.

In addition to the use of deadly force situations under Rule 6, deadly force is authorized under three additional circumstances "if directly related to the assigned mission."

As with Rules 5 and 6, as it related to the southwest border mission, for Rule 7, the "assigned mission" in southwest border operations means the specific mission of the specific group of DoD personnel faced with a decision to use force, at the specific time that they are faced with that decision.

The first sub-bullet involves the defense of another person against an individual who is attempting to commit a serious crime involving death or serious bodily harm.

The second sub-bullet requires that the person who is attempting to escape be armed or otherwise dangerous and either has previously committed or attempted to commit a serious offense and currently poses an imminent threat of death of serious bodily harm against DOD forces or others in the vicinity if allowed to escape.

The third sub-bullet also requires the person who is resisting arrest or apprehension to be armed or otherwise dangerous and

either has committed a serious offense involving death or serious bodily harm.
Serious offenses that involve the imminent threat of death or serious bodily harm include murder, rape, armed robbery, aggravated assault with a dangerous weapon or other means or force likely to produce death or serious bodily harm, aggravated arson of an inhabited dwelling, and sniping.

DEFS_00018052

 

# SRUF – RULE 8

- **RULE 8:** <u>USE OF DEADLY FORCE AGAINST A VEHICULAR THREAT</u> - A SERVICE MEMBER may fire his weapon at a moving land or water vehicle when he reasonably believes the vehicle poses an imminent threat of death or serious bodily harm to DoD forces or to non-DoD persons in the vicinity, <u>but only IF doing so is directly related to the assigned mission.</u>

Not all moving vehicles are a legitimate target, but circumstances may occur when they are.
Rule 8 takes into consideration a vehicle being used in a threatening manner against DOD forces and against non-DOD personnel in the vicinity "if directly related to the assigned mission" and allows a Soldier to engage any part of the vehicle with deadly force in order to stop it.

DEFS_00018053




UNCLASSIFIED//FOUO

# After Using Deadly Force

- Give first aid to the victim as soon as it is safe.
- Report the incident to the chain of command immediately.
- Record the details of the incident:
    - Date, time, and location.
    - Unit and personnel involved.
    - Circumstances leading up to the firing.
    - Reasons for the service member's use of deadly force.
    - Weapons that were fired.
    - Results of the firing.

The SRUF is silent on what action to take after the use of deadly force.  However, when deadly force is used, CONPLAN's and EXORD's require a report to the chain of command and a record of the incident for future investigations.
Great attention to detail should be given to the report when there is a victim as a result of the use of deadly force.

DEFS_00018054




UNCLASSIFIED//FOUO

# SRUF – RULE 9

- RULE 9: <u>INSPECTION OF PERSONNEL ENTERING AND EXITING AREA</u> - A SERVICE MEMBER may inspect individuals and property, per command security guidance, prior to granting that person entry inside a DoD perimeter or secured area and upon leaving such an area.

  - Rule 9.1: <u>Denied Access</u> - An individual or property that does not meet the command security requirements for entry may be denied access inside a DoD perimeter or secured area.

The SRUF authorizes the security inspection of individuals and property prior to granting entry into or exiting from a DOD established perimeter, area, or facility.
The extent of the inspection is a command decision based on force protection and anti-terrorism requirements.




UNCLASSIFIED//FOUO

# SRUF – RULE 10

- **RULE 10:** <u>TEMPORARY DETENTION OF THREATENING PERSONNEL</u> - A SERVICE MEMBER may temporarily detain an individual:
  - who has gained unauthorized access inside perimeters or other secured areas,
  - who refuses to depart such an area after being denied access,
  - who otherwise threatens the safety and security of DoD forces, property secured by DoD forces, or non-DoD persons in the vicinity, <u>but only IF their defense is directly related to the assigned mission.</u>

- **Rule 10.1:** <u>Search</u> - Detained individuals, vehicles, and property may be searched as a force protection measure.

- **Rule 10.2:** <u>Released to CLEA</u> - Detained individuals and any secured property will be released to CLEA at the earliest opportunity consistent with mission accomplishment.

The SRUF also authorizes, but does not require, the temporary detention of individuals who are described as "threatening," meaning they have either uttered threats orally or are acting as if they intend to commit an imminent act that adversely affects the safety or security of DOD forces or non-DOD personnel in the vicinity "if directly related to the assigned mission."
The degree of force used, if any is required, to temporarily detain an individual will be reasonable and necessary under the circumstances.
Any personnel detained will be released to civilian law enforcement personnel as soon as possible.





# SRUF – RULE 11

- **RULE 11:** <u>PURSUIT AND RECOVERY OF STOLEN PROPERTY</u> - A SERVICE MEMBER may pursue and recover stolen assets vital to national security or inherently dangerous property if:

  - CLEA or security forces are not reasonably available to recover them, and
  - Commander, USNORTHCOM, has pre-authorized a pursue and recovery mission, and
  - the pursuit is immediate, continuous, and uninterrupted.

- **Rule 11.1:** <u>Contact CLEA</u> - DoD forces will contact CLEA as soon as practicable to inform them of the theft and pursuit.

  - Commander, USNORTHCOM, <u>may delegate</u> his pre-authorizing authority as required.

The SRUF also addresses the authority to pursue and recover stolen designated property (see Slide 14) beyond DOD perimeters.
This authority rests with the Combatant Commander, which in our case is CDRUSNORTHCOM.  The CDRUSNORTHCOM must either pre-authorize this type of mission or delegate this authority to a subordinate commander to exercise at his discretion before it can actually be performed by Soldiers.
Another requirement for performing this type of mission is the unavailability of civilian law enforcement authorities to immediately conduct the pursuit/recovery operation.




UNCLASSIFIED//FOUO

# SRUF – RULE 12

- RULE 12:  <u>REPORT VIOLATIONS OF THE SRUF</u> - A SERVICE MEMBER will IMMEDIATELY report any violation of or non-compliance with the SRUF to the chain of command, Inspector General, Judge Advocate, Chaplain, or any commissioned officer with information concerning who, what, when, where, and why.

Service regulations, CONPLAN's, and EXORD's require the reporting of suspected violations of the SRUF to proper authorities, in part, in order to avoid the appearance of a cover-up.
Violations of the SRUF is a command concern and media sensitive.





UNCLASSIFIED//FOUO

# SUMMARY of 12 RULES

- **R**eciprocal use of force.

- **A**nticipate the use of force.

- **M**easure the amount of force.

- **P**rotect life and designated property with deadly force.

A simple one word summary of the 12 SRUF Rules is RAMP.
Reciprocal use of force.  Return force with force when de-escalation measures have failed or cannot reasonably be employed. Return fire with aimed fire when lesser measures have failed or cannot be reasonably employed.
Anticipate and respond to a hostile act.  Assess all the facts and circumstances at the time before applying force. You may also use force if first you have a clear indication of a demonstrated hostile intent against you.
Measure the amount of force you use.  Use only the minimum force necessary to protect human lives and accomplish the mission.
Protect with deadly force only human life and properly designated protected property.  Do not use deadly force to protect other property.




UNCLASSIFIED//FOUO

# OPERATION BORDER SUPPORT

## *CURRENT SITUATION*




UNCLASSIFIED//FOUO

# Current Situation

- **Current T10 Mission Sets**
  **(DoD EXORD, RFA 4, RFA 3 ext):**

  - Planning support
  - Engineer/infrastructure support at designated locations
  - Limited Medical Support at designated locations
  - Limited protection of CBP at up to 3 POEs
  - Mobile Surveillance Capabilities Support

- **Use of Force (Per DoD EXORD): The <u>use of deadly force</u> in this mission is <u>not intended or anticipated</u> in support of CBP. In the unlikely event force is required, it will be used as a last resort and be the minimum necessary.**

* Current missions – the only mission sets authorized are those requested/approved in RFA 4 and the RFA 3 extension.

DEFS_00018061

 

# Current Situation

**Mobile Surveillance Capabilities (MSC) mission:**

- DoD personnel may operate CBP MSC systems using electro-optical (EO)/infrared (IR)/and location and range finding (LRF) capabilities to scan for and identify the location of individuals or vehicles suspected of entering the U.S. illegally.

- DoD personnel will operate MSC systems at pre-identified sites.

- DoD personnel may only operate CBP MSC systems that are stationary. DoD personnel are not authorized to operate CBP MSCs during movement of MSC system platforms.

- DoD personnel may assist CBP in moving the MSC systems to alternate predesignated sites only when all sensor capabilities are turned off.

See RFA 4 request/approval
See NORTHCOM FRAGO 064.034
See AN OPORD 19-005, PARA 3.D.18.

DEFS_00018062




UNCLASSIFIED//FOUO

# Current Situation

## Mobile Surveillance Capabilities (MSC) mission *continued*:

- DoD personnel operating the CBP systems may report to CBP the following information about individuals or vehicles they suspect of entering the U.S. illegally:
  - Time of observation
  - Location of Individuals or vehicles
  - Presence of weapons and numbers if observed
  - Composition and description of group or vehicles to allow identification and interdiction by CBP

- DoD may also report to CBP:
  - The change in direction, location, and speed of movement, as long as the individuals/vehicles can be observed from the stationary MSC system platform.
  - Any direct threat to CBP or DoD personnel exhibited by the identified individuals or vehicles for force protection.

See RFA 4 request/approval
See NORTHCOM FRAGO 064.034, para 3.B.4.

DEFS_00018063



UNCLASSIFIED//FOUO



# Current Situation

## Mobile Surveillance Capabilities (MSC) mission *continued*:

- DoD personnel are prohibited from moving the CBP MSC system vehicles to new locations in order to continue tracking previously identified individuals or vehicles that are no longer visible from the MSC system site where originally observed.

- Except for what has already been described, DoD personnel are prohibited from collecting information or reporting to CBP any information concerning the activities of the individuals or vehicles as suspected of entering the U.S. illegally.

- DoD personnel may not assist CBP personnel in downloading any data from the CBP MSC systems.

- DoD personnel will not testify concerning observations made during operations without prior coordination with an authorization IAW Service regulations.

See RFA 4 request/approval
See NORTHCOM FRAGO 064.034
See AN OPORD 19-005, PARA 3.D.18.

DEFS_00018064




UNCLASSIFIED//FOUO

# Current Situation

## Mobile Surveillance Camera (MSC) mission *continued*:

• Border Patrol agents supporting MSC teams will be in a mobile status.

• In the event of a detection in the vicinity of the MSC site, Border Patrol agents will respond to identify, classify, and mitigate the situation. Under these circumstances, DoD personnel will remain in the secured MSC vehicle and will not participate in any law enforcement activities or have direct contact with illegal aliens.

• Any information incidentally collected on non-DoD affiliated persons will be provided to CBP. The Department of Defense will NOT retain that information.




UNCLASSIFIED//FOUO

# Current Situation

- **ARMING AUTHORITY – MOBILE SURVEILLANCE CAMERA (MSC)**
  - Authority comes from the DoD EXORD and ARNORTH OPORD 19-005
  - O-5 BN CDRs are authorized to arm MSC team leaders (level III) up to weapons status (Amber) with service pistol to protect DoD forces and property designated as inherently dangerous by the commander
  - MSC teams must qualify on their service pistol at home station
  - Both MSC team members when on duty at each of the MSC vehicles will be equipped with a service pistol, holster, ammo pouch, and two fully loaded magazines.
  - Weapons and ammo will be stored/secured at a manned MSC vehicle or in DoD or CBP arms-room (NOT GSA VEHICLE)
  - Transportation of MSC designated personnel with weapons and ammo in government rented vehicles is authorized.
  - Pistols and ammo remain in MSC vehicles and transferred between MSC teams during shift change ensuring adherence to proper clearing, loading, and property accountability procedures
  - Pistols are kept either in the holster on the service member or in the MSC vehicle glove box

* Current missions – the only mission sets authorized are those requested/approved in RFA 4 and the RFA 3 extension.  See approval memos

*current arming guidance for MSC mission set –
3.D.8.B.2. (U//FOUO) BORDER SUPPORT OPERATIONS FOR MOBILE SURVEILLANCE CAMERA (MSC) OPERATIONS.
3.D.8.B.2.A. (U//FOUO) O5-LEVEL BATTALION COMMANDERS ARE AUTHORIZED TO ARM MSC TEAM MEMBERS (LEVEL 3) UP TO WEAPONS STATUS (RED) WITH SERVICE PISTOL TO PROTECT DOD FORCES AND PROPERTY DESIGNATED AS INHERENTLY DANGEROUS BY THE COMMANDER (ARMS, AMMUNITION, AND THE LIKE) WITH DEADLY FORCE PER CJCS EXORD (DEFENSE SUPPORT TO DHS), THE STANDING RULES FOR THE USE OF FORCE (SRUF), AND THE BELOW ARMING LEVELS AND WEAPONS STATUS DEFINITIONS.
3.D.8.B.2.A.1. (U//FOUO) MOBILE SECURITY CAMERA (MSC) DESIGNATED UNITS. AN OPERATIONAL NEEDS STATEMENT (146 M-9

PISTOL, 292 MAGAZINES, AND 146 HOLSTERS) BEING SOURCED BY HQDA (PENDING). SHIPPING TO JBLM FOR QUALIFICATION AND DEPLOYMENT INTO JOA.
3.D.8.B.2.A.2. (U//FOUO) COMBINED ARNORTH MSC SOP SCOPE OF TRAINING AND OPERATIONS WITH ASSOCIATED APPENDICES AND ENCLOSURES. SEE ENCLOSURE 1 MSC SOP 19-005.

3.D.8.B.2.B. (U) DOD T-10 MSC TEAM MEMBERS WILL BE QUALIFIED ON THEIR SERVICE PISTOL AT HOME STATION.
3.D.8.B.2.C.(U//FOUO) NO MORE THAN ONE MSC TEAM MEMBER WHEN ON DUTY AT EACH OF THE MSC VEHICLES WILL BE EQUIPPED WITH A SERVICE PISTOL, HOLSTER, AMMO POUCH, AND TWO (2) FULLY LOADED MAGAZINES. (Amended by Memorandum from Headquarters, United States Army North (Fifth Army) & Fort Sam Houston to Commander, NORAD and US Northern Command, subject: Further Actions Taken to Enhance MSC Operations (25 Apr. 2019))
3.D.8.B.2.D. (U//FOUO) IN THE JOA, WEAPONS AND AMMUNITION WILL BE STORED/SECURED AT A MANNED MSC VEHICLES OR IN DOD OR CBP ARMS-ROOM EQUIVALENTS (NOT GSA VEHICLE).
3.D.8.B.2.E. (U) TRANSPORTATION OF MSC DESIGNATED PERSONNEL WITH WEAPONS AND AMMUNITION IN GOVERNMENT RENTED VEHICLES IS AUTHORIZED.
3.D.8.B.2.F. (U) PISTOLS & AMMUNITION WILL REMAIN AT THE MSC VEHICLES AND TRANSFERRED BETWEEN MSC TEAMS DURING SHIFT CHANGE ENSURING ADHERENCE TO PROPER CLEARING, LOADING, AND PROPERTY ACCOUNTABILITY PROCEDURES.
3.D.8.B.2.G. (U) PISTOLS WILL BE KEPT EITHER IN THE HOLSTER ON THE SERVICE MEMBER OR IN THE MSC VEHICLE GLOVE BOX.
3.D.8.B.3. (U//FOUO) ALL OTHER T10 FORCES IN THE JOA WILL BE AT ARMING LEVEL I OR II WITH WEAPONS STORED AND SECURED.
3.D.8.B.4. (U//FOUO) COMMANDERS MAY ISSUE MORE RESTRICTIVE GUIDANCE AS APPLICABLE.

 

UNCLASSIFIED//FOUO

# Current Situation

- **ARMING AUTHORITY – ALL OTHER UNITS**

- All other T10 forces will be at arming level I or II with weapons stored and secured
- NORTHCOM Commander retains approval authority to arm additional personnel or arm with weapons other than service-issued pistols
- Commanders must recommend any changes to the arming posture to the JFLCC (ARNORTH) Commander

Current missions – the only mission sets authorized are those requested/approved in RFA 4 and the RFA 3 extension.  See approval memos

3.D.8.B.3. (U/FOUO) ALL OTHER T10 FORCES IN THE JOA WILL BE AT ARMING LEVEL I OR II WITH WEAPONS STORED AND SECURED.
3.D.8.B.7. (U/FOUO) COMMANDER USNORTHCOM RETAINS APPROVAL AUTHORITY TO ARM ADDITIONAL PERSONNEL OR ARM WITH WEAPONS OTHER THAN SERVICE ISSUED PISTOLS.
3.D.8.B.7.A. (U/FOUO) COMMANDERS WILL RECOMMEND ANY CHANGES TO THE ARMING POSTURE TO THE JFLCC COMMANDER.
3.D.8.B.7.B. (U/FOUO) THE FOLLOWING FRAMEWORK WILL BE USED WHEN CONSIDERING CHANGES TO ARMING POSTURE AS DIRECTED IN THIS FRAGO:

3.D.8.B.7.B.1. (U/FOUO) CREDIBLE THREATS TO T10 DOD FORCES.
3.D.8.B.7.B.2. (U/FOUO) VICINITY OF AND/OR LACK OF CAPACITY OF CIVILIAN LAW ENFORCEMENT AS DETERMINED BY THE
SENIOR CIVILIAN LAW ENFORCEMENT OFFICER ON SITE, TO PROTECT T10 DOD FORCES ISO OFP OPERATIONS.
3.D.8.B.7.B.3. (U/FOUO) LACK OF CAPACITY OF THE MPS TO PROTECT DOD FORCES.
3.D.8.B.7.C. (U/FOUO) COMMANDS WILL REPORT CHANGES TO ARMING
/ WEAPONS STATUS WITHIN THEIR DELEGATED AUTHORITY TO JFLCC J3 AT USARMY.JBSA.ARNORTH.MBX.OPS-CENTER-
AOC@MAIL.MIL AND PM/PD AT USARMY.JBSA.ARNORTH.MBX.AOC-PMO@MAIL.MIL

DEFS_00018069




UNCLASSIFIED//FOUO

# Current Situation

- **Current T10 Mission Sets**
- **(DoD EXORD, RFA 8):**

  - Transportation Support
  - Administrative Support (Heating and serving meals)
  - C2 Support

- **Use of Force (Per DoD EXORD): The <u>use of deadly force</u> in this mission is <u>not intended or anticipated</u> in support of CBP. In the unlikely event force is required, it will be used as a last resort and be the minimum necessary.**

\* Current missions – the only mission sets authorized are those requested/approved in RFA 4 and the RFA 8 extension.

DEFS_00018070

DoD Border Support Mission in Support of the CBP



UNCLASSIFIED//FOUO




UNCLASSIFIED//FOUO

# Current Situation

**\*\*SRUF APPLIES TO ALL MISSION SETS\*\***

**\*\*EXORD limitations on DoD personnel\*\***

- **DoD Personnel will NOT**:

  - Participate in Law Enforcement Activities that include Arrest, Search, Seizure.

  - Perform Missions (other than medical support/FP w/in POEs) that deliberately place them in contact with migrants or other persons detained by DHS.

  - Be included in chain of custody for materials that may considered as evidence in court proceedings.

DEFS_00018072





UNCLASSIFIED//FOUO

# UCMJ
# STATE LAW
# GENERAL ORDER #1

See AN OPPORD-19-005

DEFS_00018073




UNCLASSIFIED//FOUO

# UCMJ/STATE LAWS/GO #1

- **UCMJ & Local Laws**

  - While conducting SWB operations, all DoD persons are subject to the UCMJ and the criminal and civil jurisdiction of the state in which they are operating.

  - Services and parent units retain UCMJ authority over their Soldiers, unless otherwise directed by CDR NORTHCOM or other competent authority.

See AN OPPORD-19-005

DEFS_00018074

 

UNCLASSIFIED//FOUO

# UCMJ/STATE LAWS/GO #1

- **General Order #1**

  - Applies to all T10 military personnel who are assigned, attached, or OPCON/TACON to JFLCC/ARNORTH when deployed in the southwest border operations, away from their home station.

  - Applies to all DoD civilians and contractors when on-duty, and to their off-duty conduct, but only when it may negatively affect their duty performance.

  - Several provisions in GO #1 are punitive.

DEFS_00018075




UNCLASSIFIED//FOUO

# UCMJ/STATE LAWS/GO #1

- **General Order #1** *continued*

  HIGHLIGHTS:

  - Service members may not introduce, purchase, possess, sell, transfer or consume any alcoholic beverages while on duty or in uniform.

  - No consuming alcohol within 8 hours of reporting to duty.

  - The first O-6 CDR in the chain of command may approve an exception for a special event.




UNCLASSIFIED//FOUO

# UCMJ/STATE LAWS/GO #1

- **General Order #1 *continued***

HIGHLIGHTS:

- Use of government and rental vehicles is for official purposes only.
  - Travel between the place of duty and lodging while on duty to perform official business.

  - Reasonable distances for health and welfare purposes, such as eating establishments, places of worship, cleaners, barber, grocery, or other places with permission of the commander/supervisor who is an O-4 or above.

- Transporting non-DoD civilians in government or rental vehicles without approval of a supervisor in the grade of E-8 or above is not authorized unless under the circumstances, the on-scene DoD person believes transportation is necessary to prevent the loss of life, limb, or sight, or to alleviate or prevent undue human suffering.

DEFS_00018077




UNCLASSIFIED//FOUO

# UCMJ/STATE LAWS/GO #1

- **General Order #1** *continued*

HIGHLIGHTS:

- While in the 100-mile Customs and Border Protection (CBP) zone, DoD personnel must travel in two-person teams when off-duty. Inform supervisor of destination and check in/out upon departure/arrival.

- Service members may not carry individual issued weapons without proper authority. They may not introduce, purchase, possess, sell, transfer or use POWs, ammo, knives (exception, folding pocket knives with a blade not to exceed 5 ½ inches), explosives, or any similar device within the JOA.

- Commanders may impose further restrictions and limitations.

DEFS_00018078




UNCLASSIFIED//FOUO

# VIGNETTES




UNCLASSIFIED//FOUO

# Vignette 1

Someone approaches an engineer laying concertina wire on top of a wall and asks for water or assistance because the person is injured.  The person does not appear to speak English.  You suspect the person may be an undocumented alien and/or drug smuggler.




UNCLASSIFIED//FOUO

# Vignette 1 - Answer

Provide water and assistance if it does not hinder your mission. It is okay to ask the person about his injury to identify whether you can help him, or at least gather enough facts to report to CBP. Contact CBP/CLEA and report the incident. Avoid confrontation. Do not detain, arrest, or question the individual, which would constitute engaging in law enforcement activities in violation of the PCA.

Rule 2 De-Escalation

Rule 2.1 Avoid Confrontation

Rule 2.2 Notify CLEA




UNCLASSIFIED//FOUO

# Vignette 2

A group of protestors approaches the engineers laying concertina wire.  MPs are present providing force protection. CBP are not co-located with the service members but are nearby. The group is smaller than yours and you observe no weapons in their possession. They start yelling obscenities and curse at you.




UNCLASSIFIED//FOUO

# Vignette 2 - Answer

Immediately report the disturbance to CBP. Also report the disturbance to your commander for guidance on whether to stand fast and continue the mission, or de-escalate through maneuver/withdraw from the situation.

Rule 2 De-Escalation

Rule 2.1 Avoid Confrontation

Rule 2.2 Notify CLEA

DEFS_00018083





UNCLASSIFIED//FOUO

# Vignette 3A

A group of engineers are placing concertina wire on top of fencing along the border.  Both CBP and MPs are providing force protection. The MPs have M9s on their persons and have an M4 stored in their government vehicle, IAW their operating procedures.  While the engineers are setting up wire, they notice two individuals have slipped past the CBP agents nearby, about 50-yards away, without being seen because their vehicle was blocking the agents' view.  They do not appear to be armed.




UNCLASSIFIED//FOUO

# Vignette 3A - Answer

The threat is two individuals who have slipped past the CBP agents unnoticed. Avoid confrontation with the two individuals and notify the CBP agents. Use of force not authorized.

Rule 2 De-Escalation

Rule 2.1 Avoid Confrontation

Rule 2.2 Notify CLEA




UNCLASSIFIED//FOUO

# Vignette 3B

Same facts as Vignette 3A, but now an engineer notices that the individuals are carrying long rifles.

DEFS_00018086




UNCLASSIFIED//FOUO

# Vignette 3B - Answer

There is still currently no threat. Therefore, the use of force is not authorized. Do not engage or pursue. Report this immediately to CBP.

Rule 2 De-Escalation

Rule 2.1 Avoid Confrontation

Rule 2.2 Notify CLEA

DEFS_00018087




UNCLASSIFIED//FOUO

# Vignette 3C

Same facts as Vignette 3B, but one of the individuals carrying a long rifle points his weapon at an engineer. CBP has not yet reached the site where the service members are located.

DEFS_00018088




UNCLASSIFIED//FOUO

# Vignette 3C - Answer

The individual's actions constitute a hostile act/hostile intent that is a threat of death or serious bodily harm to a service member.  Under these circumstances, use of deadly force is justified, whether it is with an M9 or an M4, as long as use of the weapons is in accordance with military police regulations and policies. However, remember that deadly force should be used only as a last resort. If possible, the MPs must assess whether they can employ de-escalation measures, such as a show of force or taking cover until CBP arrives to respond to the situation.

Rule 6 Use of Deadly Force in Self-Defense, Defense of Other DoD Persons




UNCLASSIFIED//FOUO

# Vignette 4A

You and another service member are in a military vehicle traveling through the neighborhood of a small town on the US-side of the border. You are heading out to deliver supplies to forces closer to the border. Many residents in the town are angry that the U.S. military is so close to their homes, and others disagree with the policy that led to your mission there. You stop at an intersection where four unarmed young men are standing in your way. When you ask if anything is wrong, they begin to walk towards and look into your vehicle. They see the bottled water and tools you have brought for your unit's mission. They begin to reach in and grab these items saying, "You shouldn't be here, go home and leave the migrants alone." Although your unit deployed with weapons, they are secured in containers.

DEFS_00018090





UNCLASSIFIED//FOUO

# Vignette 4A - Answer

The threat is a group of four young men attempting to steal items from your vehicle.  Circumstances limit your ability to employ any de-escalation measures to reduce or stop this threat.  The actions of the young men constitute a hostile act and justify the use of force in self-defense and to prevent the theft of your unit's property.  Non-deadly force is authorized because it is reasonably necessary to take control of the situation, protect the property, and accomplish your mission.

Rule 2 De-Escalation

Rule 3 Individual Self-Defense

Rule 5 Use of Non-Deadly Force

DEFS_00018091




UNCLASSIFIED//FOUO

# Vignette 4B

Same facts as Vignette 4A, but one of the young men is successful in grabbing a case of water bottles and running down the street with it.  His three buddies join him in running away as fast as they can.

DEFS_00018092




UNCLASSIFIED//FOUO

# Vignette 4B - Answer

The threat is a young man who has stolen a case of water bottles.  It is too late to employ de-escalation measures. Although this is a hostile act, the pursuit and recovery of property is only allowed if the USNORTHCOM commander has authorized it, and it is restricted to assets vital to national security and inherently dangerous property.  Therefore, you do not have hot pursuit authority. The protection and delivery of the remaining property has a higher priority. Accomplish your mission and notify the chain of command and CLEA of the theft.

Rule 2.2 Notify CLEA

Rule 5 Use of Non-Deadly Force

Rule 11 Pursuit and Recovery of Stolen Property (not currently authorized)

DEFS_00018093




UNCLASSIFIED//FOUO

# Vignette 5

Engineers and MPs are driving out to a site near the border. When they arrive at the site, they run into a group of people who appear to be protestors.  None of the people appear to be armed, but several stop at the edge of where the service members are located.  The people begin throwing rocks at the service members' vehicles. One rock cracks a windshield. One of the MPs inside the damaged vehicle gets out and points his weapon at the rock throwers.





UNCLASSIFIED//FOUO

# Vignette 5 - Answer

The threat is several individuals throwing rocks at you and your vehicles.  Although rock throwing constitutes a hostile act, it does not justify the use of deadly force unless there's truly an imminent threat of death or serious bodily harm to you or others.  Based on the situation, you should NOT get out of the vehicle or aim your weapon at the individual. You may be able to attempt de-escalation measures, such as withdrawing/driving away from the situation, requesting cooperation, and showing the potential to use non-deadly and deadly force.  Always exercise due regard for the safety of bystanders. Notify chain of command and CLEA.

Rule 2 De-Escalation

Rule 2.1 Avoid Confrontation

Rule 3 Individual Self-Defense

DEFS_00018095




UNCLASSIFIED//FOUO

# Vignette 6

While out for a morning run, you spot a group of civilians camping near your location.  You suspect that they are drug runners because there are several people with large bags on their backs.




UNCLASSIFIED//FOUO

# Vignette 6 - Answer

Do not engage the group. Take note of the location and the make-up of the group and head back to your unit. Provide that information to the CLEA as soon as possible.

Rule 2.1 Avoid Confrontation

Rule 2.2 Notify CLEA

DEFS_00018097

 

UNCLASSIFIED//FOUO

# Vignette 7

An MP with an M9 on his person is providing force protection to engineers working on a mission. Some of the service members observe suspected drug traffickers loading bundles onto a truck on the US side of the border nearby. The MP reports the activity to a nearby CBP agent who attempts to apprehend the drug traffickers. As the agent approaches the traffickers, they open fire on the agent. The agent takes cover and returns fire. What should the MP do?




# Vignette 7 - Answer

The service members should take cover and call CLEA. If the shooter poses an imminent threat of death or serious bodily harm to DoD personnel, you are authorized to use deadly force. You are not authorized to use deadly force solely in defense of the CBP agent because there are no facts indicating a direct relationship to your assigned mission of protecting the engineers. There is no legal prohibition against the service member providing medical aid to the CBP agent or seeing if the CBP agent is okay.

Rule 2.2 Notify CLEA

Rule 3 Individual Self-Defense

Rule 6 Use of Deadly Force in Self-Defense, Defense of others, and Defense of Property

DEFS_00018099





UNCLASSIFIED//FOUO

# Vignette 8

Same facts as Vignette 7, but now the suspected drug traffickers jump in their truck and attempt to escape. The CBP agents expended all of their ammunition and request that you fire warning shots at the truck to stop it from retreating back into Mexico.




UNCLASSIFIED//FOUO

# Vignette 8 - Answer

## You are not authorized to fire warning shots, pursue suspects, or detain suspects.

Rule 2.1 Avoid Confrontation

Rule 2.2 Notify CLEA




UNCLASSIFIED//FOUO

# Vignette 9A

You and your military police company are guarding the EOC's main gate. You are at Arming Level III-Amber/Condition 3 (weapon on safe, bolt forward, chamber empty, magazine with ammo inserted in weapon). One of your fellow service members detects two females in a white van approximately 200 meters away from the perimeter of the facility, looking through binoculars and taking pictures with a camera of the area surrounding the Center's main gate.





UNCLASSIFIED//FOUO

# Vignette 9A – Answer

The potential threat is two females looking through binoculars and taking pictures of the facility's entrance.  This is not a hostile act or a demonstrated hostile intent towards you or the facility.  At this time, there is no threat that triggers the use of force.  There is no justification to use any type of force.  Report your observations to your commander.

Rule 2.1 Avoid Confrontation

Rule 2.2 Notify CLEA

DEFS_00018103





UNCLASSIFIED//FOUO

# Vignette 9B

What appears to be the regular cleaning team (two females) arrives at the gate to your EOC in a white van. The driver of the van tells the civilian guard on duty that they are the substitute cleaning team. The guard examines their ID cards and believes they may be fake. He instructs the driver to follow you and pull the van over to the side. The intent is to conduct a further inquiry, and inspect both females and the van prior to granting entry. Both females get upset and yell at the guard that they are merely following instructions from their main office and should be allowed to enter. When the guard tells the driver a second time to follow you over to the side, the driver revs up the engine and accelerates straight towards you.




UNCLASSIFIED//FOUO

# Vignette 9B - Answer

The threat is two occupants of a van attempting to gain unauthorized entry. Inspection is appropriate. Circumstances do not permit the employment of de-escalation measures. You may exercise individual self-defense immediately. The use of deadly force is justified because the driver is using the van in a manner that poses an immediate threat of death or serious bodily harm to you.

Rule 3 Individual Self-Defense

Rule 6 Use of Deadly Force in Self-Defense, Defense of Others, and Defense of Property

Rule 8 Use of Deadly Force Against a Vehicular Threat

Rule 9 Inspection of Personnel Entering and Exiting an Area

DEFS_00018105




UNCLASSIFIED//FOUO

# Vignette 10

Your position is threatened by several individuals at night.  As they approach, you realize they are armed with side arms.  A round is fired in your direction.

DEFS_00018106




UNCLASSIFIED//FOUO

# Vignette 10 - Answer

Take cover, call CLEA, may use deadly force to defend yourself as a last resort.

Rule 3 Individual Self-Defense

Rule 6 Use of Deadly Force in Self-Defense, Defense of Others, and Defense of Property