
**ROB BONTA**
Attorney General of California
MICHAEL L. NEWMAN
THOMAS S. PATTERSON
Senior Assistant Attorneys General
ANYA M. BINSACCA
MARISSA MALOUFF
JAMES E. STANLEY
Supervising Deputy Attorneys General
NICHOLAS ESPÍRITU
LUKE FREEDMAN
BARBARA HORNE-PETERSDORF
LORRAINE LOPEZ
KENDAL MICKLETHWAITE
JANE REILLEY
MEGAN RICHARDS
MEGHAN H. STRONG
BRENDAN HAMME
Deputy Attorneys General
 300 S. Spring St.
 Los Angeles, CA 90013
 Telephone: (213) 269-6598
 E-mail: Brendan.Hamme@doj.ca.gov
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GAVIN NEWSOM,** IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF CALIFORNIA; **STATE OF CALIFORNIA,**<br><br>Plaintiffs,<br><br>v.<br><br>**DONALD TRUMP,** IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES; **PETE HEGSETH,** IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF DEFENSE; **U.S. DEPARTMENT OF DEFENSE,**<br><br>Defendants. | NO. 3:25-cv-04870-CRB<br><br>**[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION** |

1

**[PROPOSED] ORDER**

Plaintiffs' motion for a preliminary injunction came before this Court for consideration on October 10, 2025. Upon consideration, and for good cause shown, **IT IS HEREBY ORDERED** that the preliminary injunction is **GRANTED**.

**PRELIMINARY INJUNCTION**

The Court finds that Plaintiffs have demonstrated a likelihood of success on the merits of their claims, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that a preliminary injunction is in the public interest. In support of this Order, the Court makes the following findings:

1. On June 6, 2025, the U.S. Department of Homeland Security (DHS) began conducting enforcement actions throughout Los Angeles County, including "military style" operations in public locations such as parking lots. During these operations, DHS and its agents reportedly took actions that inflamed tensions with civilians and provoked protest.

2. On June 7, 2025, President Donald Trump issued a memorandum "call[ing] into Federal service members and units of the National Guard."

3. On June 7, 2025, Secretary of Defense Pete Hegseth issued a memorandum to the Adjutant General of California ordering 2,000 California National Guard soldiers into federal service for a period of sixty days.

4. On June 9, 2025, Secretary Hegseth issued another memorandum ordering an additional 2,000 California National Guard members into federal service for sixty days.

5. As a result, a total of 4,000 California National Guard soldiers were moved to federal command and were deployed by the federal government in the Los Angeles area.

6. Also on June 9, 2025, Secretary Hegseth mobilized 700 active-duty members of the United States Marine Corps from Camp Pendleton and deployed them to the Los Angeles area. Together with the 4,000 federalized National Guard soldiers, these constitute the "Title 10 Force" for purposes of this Order.

7. Since mid-June 2024, the isolated instances of civil unrest that formed the basis for the original deployment have subsided. There have been only a few immigration-related protests

1

around the City with often just a few dozen protestors at a time. California Highway Patrol has not seen any large-scale, protest related activities in the area since June 19. And local prosecutors brought only one criminal charge for behavior at an immigration protest in July.

8. As instances of civil unrest were largely subsiding during their deployment, instead of being deployed in response to threats to federal personnel or property, National Guard troops participated in routine federal law enforcement operations in Los Angeles and communities over 100 miles away, even if military risk assessments showed there was no threat that required military support.

9. On July 15, 2025, the Department of Defense ended the deployment of approximately 2,000 federalized National Guard troops in Los Angeles. That same day a spokesperson for the Pentagon acknowledged that the situation in Los Angeles was subsiding.

10. On July 21, 2025, the Department of Defense ended the deployment of the 700 active-duty members of the United States Marine Corps in Los Angeles.

11. On July 31, 2025, the Department of Defense ended the deployment of 1,350 federalized National Guard troops in Los Angeles.

12. On August 5, 2025, Secretary Hegseth issued DA Activation Order 004-25 12406 to the Adjutant General of California, calling 300 California National Guard soldiers into federal service for 90 days.

13. By August 8, 2025, the federalized National Guard was responding to only four remaining requests for assistance from federal agencies to protect two federal buildings and provide two Mobile Response Forces.

14. On August 11, 2025, President Trump, during a press conference, signaled that federalized National Guard troops could be sent to Oakland, California.

15. On August 21, 2025, President Trump, during a press conference, named San Francisco, California as one of the cities where he would deploy federalized troops.

16. On August 25, 2025, President Donald Trump issued Executive Order 14339 requiring the "designation of an appropriate number of each State's National Guard members to be reasonably available for rapid mobilization" nationwide for the purpose of assisting "Federal,

State, and local law enforcement in quelling civil disturbances and ensuring the public safety and order whenever the circumstances necessitate, as appropriate under law."

17. This Court has jurisdiction to consider the lawfulness of the August 5, 2025 order federalizing and deploying 300 members of the California National Guard because it is not the subject of the pending appeal of this Court's June 12, 2025 Temporary Restraining Order.

18. Plaintiffs are likely to prevail on their claims that Defendants' actions are ultra vires because they violate 10 U.S.C. § 12406. Under section 12406, the President lacks the authority to use California's National Guard soldiers to aid federal agents with enforcing federal law. Section 12406 permits the President to call a State's National Guard soldiers into federal service in only three circumstances: (1) the United States is invaded or is in danger of invasion by a foreign nation; (2) there is a rebellion or danger of a rebellion against the authority of the Government of the United States; or (3) the President is unable to execute the laws of the United States with regular forces. None of these three circumstances exist here. Plaintiffs have shown that the protests in Los Angeles have decreased dramatically since the President issued the June 7 Memorandum. There is no evidence that a foreign invasion was occurring or threatened when the August 5, 2025 order was issued. There is no rebellion. And finally, there are no circumstances that prevent federal law enforcement from executing the laws of the United States with regular forces. Federal law enforcement has continued to execute immigration and other federal laws and National Guard soldiers have been unnecessary to aid with the enforcement of federal law. Indeed, the National Guard is not currently accompanying Immigration and Customs Enforcement, Enforcement and Removal Operations on any of its missions, and that agency has continued to make arrests.

19. Plaintiffs are likely to suffer irreparable harm in the absence of temporary relief. First, injuries to state sovereignty are irreparable harms. Second, Plaintiffs have shown that the presence of the Title 10 Force on the streets of Los Angeles created significant civil unrest upon the initial deployment and every time the National Guard is deployed for law enforcement missions there is a risk of tensions escalating again. Third, Plaintiffs will suffer economic harm because the troops' pervasiveness in law enforcement operations has chilled economic activity

1  due to the fear that civilians will be targeted if they report for work, shop at local businesses, or
2  venture into public community spaces. Fourth, allowing Defendants to maintain a military
3  presence in California chills participation in the election and harms Plaintiffs' interest in
4  protecting the right of its citizens to vote, in electoral integrity and reliability, and in protecting
5  voters from undue influence. Plaintiffs have the right to protect the fairness and integrity of
6  elections it regulates without military interference.  And fifth, the unlawful federalization of the
7  National Guard harms troop morale.

8     20.    The balance of equities and the public interest favor injunctive relief. Plaintiffs
9  have and will suffer serious harm to their sovereign interests, community safety, law enforcement
10 resources, economy, and ability to protect the right to vote for its residents; these injuries will
11 continue absent an injunction. Enjoining the extended deployment serves the public interest by
12 ensuring the public's ability to exercise fundamental rights without being subjected to a
13 militarized presence.

14     Accordingly, it is hereby:

15     **ORDERED** that Defendants Donald Trump, Secretary of Defense Pete Hegseth, and the
16 United States Department of Defense (collectively, "Defendants"), and others in active concert or
17 participation therewith, are ENJOINED from effectuating the August 5 Activation Order calling
18 300 California National Guard soldiers into federal service.

19     **ORDERED** that Defendants are DIRECTED to return control of the California National
20 Guard to Governor Newsom.

21     **ORDERED** that this preliminary injunction shall remain in effect pending further order of
22 this Court.

24 Dated: _____          _____
25                                       The Hon. Charles R. Breyer
                                         United States District Judge