**ROB BONTA**
Attorney General of California
MICHAEL L. NEWMAN, SBN 222993
THOMAS S. PATTERSON, SBN 202890
Senior Assistant Attorneys General
ANYA M. BINSACCA, SBN 189613
MARISSA MALOUFF, SBN 316046
JAMES E. STANLEY, SBN 316288
Supervising Deputy Attorneys General
JESSE BASBAUM, SBN 273333
BRENDAN HAMME, SBN 285293
IRAM HASAN, SBN 320802
BARBARA HORNE-PETERSDORF, SBN 327738
JANE REILLEY, SBN 314766
DELBERT TRAN, SBN 323993
MEGHAN H. STRONG, SBN 324503
Deputy Attorneys General
 455 Golden Gate Ave.
 San Francisco, CA 94102
 Telephone: (415) 510-3877
 E-mail: Meghan.Strong@doj.ca.gov
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GAVIN NEWSOM, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF CALIFORNIA; STATE OF CALIFORNIA,**<br><br>Plaintiffs,<br><br>v.<br><br>**DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES; PETE HEGSETH, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF DEFENSE; U.S. DEPARTMENT OF DEFENSE,**<br><br>Defendants. | NO. 3:25-cv-04870-CRB<br><br>**PLAINTIFFS' MOTION TO LIFT STAY AND SUPPLEMENTAL BRIEF REGARDING MOTION FOR PRELIMINARY INJUNCTION** |

**TABLE OF CONTENTS**

Introduction .................................................................................................................................. 1
Statement of Facts ........................................................................................................................ 2
      I.     Defendants Expand Their Military Campaign to Oregon ..................................... 2
      II.    Defendants Send California Troops to Portland ................................................... 3
      III.   Defendants Send National Guard Troops to Illinois. ............................................ 5
      IV.   Citizens of Los Angeles Continue to Protest Peacefully ...................................... 6
Argument ..................................................................................................................................... 6
Conclusion .................................................................................................................................... 8

**INTRODUCTION**

On September 9, citing concerns regarding its jurisdiction, the Court stayed proceedings related to Plaintiffs' motion for a preliminary injunction to block Defendants' August order federalizing California National Guard troops through Election Day. In doing so, the Court stated that "if the Ninth Circuit determines that Plaintiffs' motion should be heard in the district court in the first instance, this Court will lift its stay and proceed expeditiously." ECF No. 192 at 4. On October 29, the Ninth Circuit made that determination, holding that this Court "has jurisdiction over Plaintiffs' challenge to the August 5 extension order." ECF No. 204. Plaintiffs therefore request the Court immediately lift the stay on proceedings regarding their September preliminary injunction motion, order expedited briefing, and issue a preliminary injunction.

Since the Court stayed consideration of Plaintiffs' motion, Defendants' unlawful orders have multiplied and expanded further. In the past month, Defendants have federalized and deployed National Guard troops to two additional states—Oregon and Illinois—including moving 214 of the federalized California National Guard from Los Angeles to Oregon, and shuffling 14 of those from Oregon to Illinois. Meanwhile, Defendants continue to keep 101 federalized California National Guard members stationed in Los Angeles, despite the absence of any justification for doing so. Defendants' actions make clear that what Plaintiffs have forewarned of since this action began has come to pass: Defendants are treating the President's June 7 memorandum as a blank check that allows them to federalize state National Guard troops in any number and for any duration they please and to send the troops anywhere in the country, even to places that were not part of their justification for the original federalization. Whatever 10 U.S.C. § 12406 permits, it certainly does not authorize the sort of broad-ranging, never-ending federalization and military occupation of American cities that Defendants are perpetrating.

There was no colorable basis to again federalize the California National Guard in Los Angeles on August 5, and there remains no basis for keeping them in California now. The lack of any violence or other justifying events in Los Angeles and Defendants' choice to remove more than half of those troops from Los Angeles confirms it. The Court should grant Plaintiffs'

motion, enjoin any continued deployment of National Guard troops in and around Los Angeles, and end this unlawful federalization now.

## STATEMENT OF FACTS

Plaintiffs submit this supplement to their motion primarily to update the Court on events that have occurred since they filed their original motion on September 2, 2025. ECF No. 183. Plaintiffs incorporate the statement of facts in that motion and do not set forth those facts again here.

### I. DEFENDANTS EXPAND THEIR MILITARY CAMPAIGN TO OREGON.

Los Angeles was the President's first target for military occupation, but it was not the last. In August, as this Court was presiding over the trial of Plaintiffs' Posse Comitatus Act claims in this action, the President announced he was sending National Guard troops into the District of Columbia. Later that month, the President issued an Executive Order ordering "the Secretary of Defense [to] ensure the availability of a standing National Guard quick reaction force that shall be resourced, trained, and available for rapid nationwide deployment." Strong Decl., Ex. 1. By September, just a few weeks after this Court stayed consideration of Plaintiffs' preliminary injunction motion, the President picked his next target: Portland, Oregon.

After months of criticizing Portland based on unsupported allegations of crime and violence, on September 25, 2025, the President said Portland was "on my list of things that I want to do before, uh, we finish up with the cities because I think we're going to whip the cities into shape."[1] On September 27, 2025, the President followed through on his threats, posting a message to his Truth Social account: "At the request of Secretary of Homeland Security, Kristi Noem, I am directing Secretary of War, Pete Hegseth, to provide all necessary Troops to protect War ravaged Portland, and any of our ICE Facilities under siege from attack by Antifa, and other domestic terrorists. I am also authorizing Full Force, if necessary. Thank you for your attention to this matter!"[2]

---

[1] Strong Decl. ¶ 7, The Oregonian, *Trump Escalates Rhetoric Promising Federal intervention in Portland, Citing "Anarchy"*, at 1:07 (YouTube, Sept. 25, 2025), https://www.youtube.com/watch?v=G0TdH2aC-Jg.
[2] Strong Decl., Ex. 5. Donald J. Trump, (@realDonaldTrump) Truth Social (Sept. 27, (continued…)

1    Later that day, the Acting Vice Chief of the National Guard Bureau requested that Oregon
2    Governor Tina Kotek authorize mobilization of the Oregon National Guard in a non-federalized
3    status based on a request from DHS. *Oregon v. Trump*, No. 3:25-cv-01756, ECF No. 1, at ¶ 55.
4    The memorandum threatened to direct mobilization of Oregon National Guard members under
5    Title 10 of the U.S. Code if Governor Kotek did not agree within 12 hours to activate the Oregon
6    National Guard. *Id.* Governor Kotek declined to do so, noting that Oregon did not want or need
7    military support and that public safety was being handled by local law enforcement. *Id.* ¶ 57.
8    On September 28, 2025, the Secretary of Defense issued a memorandum calling 200
9    members of the Oregon National Guard into federal service for a period of 60 days, under 10
10   U.S.C. § 12406. *Id.* ¶ 58. Despite the fact that nearly four months had passed since the
11   President's June 7 memo, the Secretary of Defense claimed that this new deployment to Portland
12   was a "further implementat[ion]" of that memo. *Id.* In doing so, the Secretary of Defense made
13   clear that he viewed the June 7 memo, which was not limited in scope, either geographically or
14   temporally, as granting him a blank check to federalize troops anywhere, in any number, for any
15   length of time.
16   The State of Oregon and the City of Portland filed suit later that same day, challenging the
17   Trump administration's unlawful federalization and deployment of Oregon National Guard
18   troops, and seeking a temporary restraining order enjoining their conduct. *Oregon*, ECF No. 6.
19   On October 4, 2025, the United States District Court for the District of Oregon held that Oregon
20   was likely to succeed on its claims and granted a temporary restraining order ("First Oregon
21   TRO") that enjoined "Defendants' September 28, 2025, Memorandum ordering the federalization
22   and deployment of Oregon National Guard service members to Portland." *Oregon*, ECF No. 56.

23   II.   **DEFENDANTS SEND CALIFORNIA TROOPS TO PORTLAND.**

24   Blocked by the First Oregon TRO from federalizing the Oregon National Guard,
25   Defendants circumvented that order hours later by deploying the still-federalized California
26   National Guard stationed in Los Angeles to Oregon instead. *Oregon*, ECF No. 59. By 6:30 a.m.

---

2025 at 07:19 ET),
https://truthsocial.com/@realDonaldTrump/posts/115276694936263266.

3

on Sunday, October 5, 2025, Defendants had already transported approximately 100 federalized California National Guard soldiers to Portland.[3] *Id.*; *Oregon*, ECF No. 60, at ¶ 18. An additional 100 soldiers joined them soon after, and currently 200 of the California National Guard members federalized by the August 5 order Plaintiffs challenged in their September motion are stationed in Oregon.[4] *Id.* Though Defendants initially planned to send all federalized California National Guard members to Oregon, they later decided to keep some stationed in Los Angeles, and there are currently 101 federalized California National Guardsmen still stationed in Los Angeles today. *See id.*; Declaration of Paul S. Eck ("Eck Decl."), filed concurrently, at ¶¶ 6, 10.

Oregon and Portland, now joined by California in an amended complaint, filed a motion for a second TRO to block this second illegal attempt to deploy the military to Portland. *Oregon*, ECF No. 59. After a hearing held that same evening, in which the district court stated that Defendants' overnight movement of troops from California to Oregon appeared to be "in direct contravention" of its first order, the district court granted the Second Oregon TRO, this time enjoining Defendants from "deploying federalized members of the National Guard from any State into Oregon." *Oregon*, ECF No. 68.

Though the Second Oregon TRO prohibits deployment of the California National Guard in Portland, the 200 federalized California Guard members remain stationed in Oregon, drawing them away from the State even though Defendants may not make any use of them in Oregon. On October 16, 2025, Defendants purported to further extend the federalization of all currently federalized members of the California National Guards, including those still stationed in Los Angeles, through February 2, 2026. Strong Decl. Exs. 3 & 4.

Defendants appealed the First Oregon TRO, but not the Second. On October 20, 2025, a Ninth Circuit panel issued a full stay of the First Oregon TRO pending appeal. *Oregon v. Trump*, No. 26-6268, Dkt. 61.1. On October 28, the en banc court vacated the panel's decision and

---

[3] Earlier that week, Defendants had also sent an initial group of 14 federalized California National Guard soldiers to train the federalized Oregon National Guard, Eck. Decl. ¶ 5—potentially with the same training and directives this Court found violated the Posse Comitatus Act in August.

[4] In addition to the California National Guard, on the evening of October 5, Defendants also federalized 400 members of the Texas National Guard to send to cities of Defendants' choosing, including Portland. *Oregon*, ECF No. 65.

4

1  granted rehearing en banc. *Id.*, Dkt. 89.1. Separately, the Ninth Circuit has administratively

2  stayed the First Oregon TRO only to the extent it would require outright de-federalization of the

3  Oregon National Guard members; that partial stay remains in effect pending the outcome of en

4  banc proceedings. *Id.*, Dkt. 90.1.

5  Meanwhile, the district court has proceeded with the *Oregon* plaintiffs' claims and, on

6  October 29, commenced a trial on the merits of the claim that any deployment to Oregon violates

7  10 U.S.C. § 12406.

### III.   DEFENDANTS SEND NATIONAL GUARD TROOPS TO ILLINOIS.

In addition to Oregon, Defendants have also extended their use of the military to Illinois since the parties were last before this Court. On October 4, 2025, after first ordering the Governor of Illinois to agree to voluntarily mobilize Illinois National Guard troops within two hours or face involuntary deployment, Defendants once again federalized the National Guard over a State Governor's objection. *Illinois v. Trump*, No. 25-cv-12174, ECF No. 1, at ¶¶ 126-30. On the evening of October 4, the Secretary of Defense issued a memorandum calling into service 300 members of the Illinois National Guard under 10 U.S.C. § 12406. *Id.* ¶ 130. The very next day, Secretary Hegseth also issued the above-described order federalizing the Texas National Guard, which designated Chicago as another city to which these Texas soldiers were to be sent. *Id.* ¶¶ 133-34. In addition, on or about October 7, Defendants sent 14 of the same California Guardsmen assigned to train the Oregon National Guard on to Chicago for 10 days to train the Illinois and Texas National Guards.[5] Eck Decl. ¶ 7.

Illinois, like California, the District of Columbia, and Oregon before it, challenged this unlawful federalization in court. On October 9, 2025, the district court held Illinois was likely to succeed on its claims and issued a TRO enjoining Defendants from federalizing and deploying any members of the National Guard within Illinois. *Illinois*, ECF No. 67. In doing so, the district court noted it "cannot conclude that Defendants' declarations are reliable" and found they "demonstrat[ed] a potential lack of candor" which "calls into question their ability to accurately

---

[5] Those 14 California Guardsmen have since returned to the Los Angeles area. Eck Decl. ¶ 8.

5

assess the facts." *Illinois*, ECF No. 70 at 10.  On appeal, the Seventh Circuit denied Defendants' motion for a stay pending appeal, and though it allowed Defendants to keep troops federalized rather than returning them to their home States, it maintained that Defendants could not deploy any members of the National Guard in Illinois, concluding that "the facts do not justify the President's actions in Illinois under § 12406." *Illinois et al. v. Trump et al.*, No. 25-2798, 2025 WL 2937065, at *1 (7th Cir. Oct. 16, 2025).  Defendants sought further review before the Supreme Court and have asked the Court for a stay pending appeal.  Briefing on that request is ongoing through November 17.

## IV. CITIZENS OF LOS ANGELES CONTINUE TO PROTEST PEACEFULLY

Throughout all of this, there have been no events in Los Angeles in recent months resembling anything close to those that prompted the federalization in June.  As described in Plaintiffs' September motion, ECF No. 183 at 3-6, the incidents of unrest that purportedly gave rise to the initial June deployment had subsided by August, leading Defendants to release 3,700 of the 4,000 federalized California National Guard troops.  That has remained the case since September.  In October, "No Kings" protesters gathered across California to protest the Trump administration's immigration enforcement operations.[6]  These protests were peaceful, with crowds in Los Angeles taking advantage of food stands and music.[7]  Only a small group of demonstrators remained into the night after the event, which local police were able to disperse easily, without any assistance or need for federal law enforcement.[8]  There were no reports of destruction or major arrests at the event.[9]

## ARGUMENT

For the reasons stated in Plaintiffs' September 2 motion, Plaintiffs are likely to succeed on the merits of their claim that there is no basis for the continued federalization of California's

---

[6] Strong Decl., Ex. 6, Jordan Rynning, *No Kings protesters demonstrate against Trump administration*, LAist (Oct. 18, 2025), https://laist.com/news/heres-how-the-no-kings-protests-are-playing-out-across-socal.
[7] *Id.*
[8] Strong Decl., Ex. 7, Mónica De Anda and Tim Pulliam, *Dispersal orders issued hours after thousands gather for 'No Kings' protest in DTLA*, ABC7 (Oct. 18, 2025), https://abc7.com/post/no-kings-protests-trump-administration-return-southern-california/18031981/.
[9] *Id.*

National Guard and deployment in Los Angeles, and Plaintiffs will continue to suffer irreparable harm absent injunctive relief. ECF No. 183. There was no colorable basis to federalize and deploy soldiers to Los Angeles under 10 U.S.C. § 12406 on August 5, there was no basis for extending their deployment on October 16, and there is still no basis for any military presence in Los Angeles today. If anything, Defendants' actions since the Court stayed consideration of Plaintiffs' motion, and the absence of any events similar to those Defendants relied on to first invoke § 12406 in June, simply confirm that Plaintiffs are entitled to relief. Defendants sent 214 of the federalized California National Guard members from Los Angeles to Portland nearly one month ago and have left 200 stationed there ever since, even after the district court enjoined their deployment. Indeed, at one point, Defendants were prepared to remove *all* the remaining federalized California National Guard troops from California, confirming there was and is no need or colorable basis for any military presence there. Section 12406 does not permit Defendants to keep soldiers stationed in Los Angeles indefinitely.

The equitable factors also strongly favor injunctive relief given recent developments. Defendants can no longer credibly claim that federalizing California's National Guard is necessary to avert acts of violence or property damage in Los Angeles. The removal of the majority of troops from Los Angeles—and Defendants' stated intention at one point to remove all troops—confirms this.

At the same time, the continuing and unwarranted federalization of the State's Guard harms California's sovereign interests, intrudes on the State's traditional law enforcement functions, and diverts members of the Guard from performing critical work for the State. *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (noting "ongoing and concrete harm to [State's] law enforcement and public safety interests"). Although the number of troops that remain federalized has fallen from the 4,000 that were initially called up, hundreds still are unavailable for important state services.[10]

---

[10] As just one example of the important work the California National Guard is currently performing for the State, on October 22, 2025, Governor Newsom deployed members of the California National Guard to support food banks in preparing and distributing meals to families in need, in anticipation of delays to federal food benefits. Eck Decl. ¶¶ 11-16.

And Defendants' recent actions only exacerbate the harms suffered by the State. At the moment, approximately 200 members of California's National Guard are hundreds of miles away, in another State, hindering their capacity to respond to emergencies within California. And there is no reason to think that Defendants' recent actions will abate any time soon. Defendants take the remarkable position that federalized troops may be "relocat[ed]" anywhere because, in their view, the federalization orders are "not limited in any way to the state" where the troops were initially federalized. Strong Decl., Ex. 2, Oct. 5, 2025 Hrg. Tr. 5:20-6:23. The President has also made no secret of his desire to continue using the Nation's "cities as training grounds for our . . . National Guard."[11] Nor has the President hidden his desire to have a "standing" National Guard force. Strong Decl., Ex. 1. Defendants' continued federalization and deployment of troops in and around Los Angeles thus threatens to allow California's National Guard—federalized in response to specific circumstances in Los Angeles nearly five months ago—to be diverted indefinitely and dispersed across the country as part of the President's unprecedented experiment in militarized law enforcement.

None of this serves any valid interest. The public interest strongly supports relief that would prevent the President from abusing the limited authority conferred on him by Congress under § 12406 to address "unusual and extreme exigencies." *Newsom v. Trump*, 141 F.4th 1032, 1051 (9th Cir. 2025). The occupation of Los Angeles must come to an end.

## CONCLUSION

For the foregoing reasons, the Court should lift the stay on Plaintiffs' motion for preliminary injunction, enjoin Defendants' federalization and deployment of the National Guard in and around Los Angeles, and order the return of any members of the federalized California National Guard remaining in California to the command and control of the Governor.

---

[11] Strong Decl. ¶ 9, *See Speech: Donald Trump Addresses Military Leadership in Quantico, Virginia*, Vimeo, at 42:45-43:01 (Sept. 30, 2025), https://vimeo.com/1123254617?fl=pl&fe=sh.

Dated: October 31, 2025

Respectfully submitted,

**ROB BONTA**
Attorney General of California
MICHAEL L. NEWMAN
THOMAS S. PATTERSON
Senior Assistant Attorneys General
ANYA M. BINSACCA
MARISSA MALOUFF
JAMES E. STANLEY
Supervising Deputy Attorneys General
JESSE BASBAUM
BRENDAN HAMME
IRAM HASAN
BARBARA HORNE-PETERSDORF
JANE REILLEY
DELBERT TRAN
Deputy Attorneys General

*/s/ Meghan H. Strong*

MEGHAN H. STRONG
Deputy Attorney General
  455 Golden Gate Ave.
  San Francisco, CA 94102
  Telephone: (415) 510-3877
  E-mail: Meghan.Strong@doj.ca.gov

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

Case Name: *Newsom v. Trump*   No. **3:25-cv-04870-CRB**

I hereby certify that on October 31, 2025, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**PLAINTIFFS' MOTION TO LIFT STAY AND SUPPLEMENTAL BRIEF REGARDING MOTION FOR PRELIMINARY INJUNCTION**

**DECLARATION OF MEGHAN H. STRONG IN SUPPORT OF PLAINTIFFS' MOTION TO LIFT STAY AND SUPPLEMENTAL BRIEF REGARDING MOTION FOR PRELIMINARY INJUNCTION (with Exhibits 1-7)**

**DECLARATION OF PAUL S. ECK**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on October 31, 2025, at San Francisco, California.

|  |  |
|---|---|
| M. Paredes | /s/ M. Paredes |
| Declarant | Signature |

SF2025303707
44853551