BRETT A. SHUMATE
Assistant Attorney General
ERIC J. HAMILTON (CA Bar No. 296283)
Deputy Assistant Attorney General
ALEXANDER K. HAAS (CA Bar No. 220932)
Branch Director
JEAN LIN (NY Bar No. 4074530)
Special Litigation Counsel
CHRISTOPHER EDELMAN (DC Bar No. 1033486)
Senior Counsel
GARRY D. HARTLIEB (IL Bar No. 6322571)
BENJAMIN S. KURLAND (DC Bar No. 1617521)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 598-7755
ben.kurland@usdoj.gov
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GAVIN NEWSOM, in his official capacity as Governor of the State of California, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, et al.,<br><br>*Defendants*. | Case No. 3:25-cv-04870-CRB<br><br>**DECLARATION OF MICHAEL J. GERARDI IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION** |

I, Michael J. Gerardi, declare, pursuant to 28 U.S.C. § 1746 and Local Rule 7-5, as follows:

1. I am a member in good standing of the Bar of the District of Columbia. I am a Senior Trial Counsel in the United States Department of Justice, Civil Division, Federal Programs Branch, and an attorney of record for Defendants in this action. I am authorized to practice in this Court under Local Rule 11-2. I make this declaration in support of Defendants' Opposition to Plaintiffs' Renewed Motion for a Preliminary Injunction.

2. I am over the age of 18. The facts set forth in this declaration are within my personal knowledge or based upon documents and information I have received in the course of this litigation.

3. Attached herein as Exhibit A is a true and accurate copy of a declaration prepared by Roger Scharmen, the Deputy Regional Director for Region 9 of the Federal Protective Service in proceedings before the U.S. Court of Appeals for the Ninth Circuit in this matter on October 16, 2025. The declaration can be found on the docket of *Newsom v. Trump*, No. 25-3727, Dkt. Entry 136.1, at SA17–20.

4. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 18, 2025

Respectfully submitted,

*[signature]*

Michael J. Gerardi

*Senior Trial Counsel*

**EXHIBIT A**

No. 25-3727

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

GAVIN NEWSOM, *in his official capacity as Governor of the State of California*; STATE OF CALIFORNIA,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*; PETER HEGSETH, *in his official capacity as Secretary of the Department of Defense*; UNITED STATES DEPARTMENT OF DEFENSE,

Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of California

**DECLARATION OF ROGER SCHARMEN**

I, Roger Scharmen pursuant to 28 U.S.C. § 1746, hereby declare as follows:

This declaration is based on my personal knowledge and information made available to me in the course of my official duties.

1. I serve as the Deputy Regional Director for Region 9 of the Federal Protective Service (FPS). My primary place of duty is San Francisco, CA, but I continue to work in Los Angeles periodically.

2. The FPS remains the lead law enforcement agency protecting federal facilities, property, and people therein in Los Angeles in accordance with its statutory authority provided in 40 U.S.C. § 1315.

3. Beginning in June 2025, the National Guard has provided assistance to FPS in a support role at the Federal buildings in Los Angeles located at 255 E. Temple St. (Roybal Building), 300 N Los Angeles St. (Los Angeles Federal Building), and 11000 Wilshire Blvd. (Wilshire Federal Building). Those National Guard troops have been providing protection to the federal buildings, the personnel working there, and by extension, the functions ongoing at those buildings, consistent with the President's June 7 memorandum. For example, the National Guard has established outside perimeters, observation posts, and perimeter patrols for these federal buildings.

4. In early June, FPS reported protests in front of the Roybal and Los Angeles Buildings that would sometimes number in the thousands, including a protest on June 8 in front of the Roybal Building that included 3700 protesters. As has been documented elsewhere in this litigation, there were numerous acts of violence directed at federal law enforcement officers and the facilities.

5. The presence of the National Guard in Los Angeles significantly reduced the size, frequency, and violence of the protests at Federal Buildings, while not preventing any First Amendment protected activities. Beginning in mid-June and continuing to the present, protests have continued, albeit in reduced numbers. The number of protesters is typically below 100 protesters, but protests that are attended by up to 500 people still occur. Typically, protests occur each day between Thursday through Sunday of each week.

6. While the smaller protests are for the most part peaceful, threatening and harassing incidents still occur. A recent example occurred on October 9, 2025, when a verbal threat was made towards an FPS Inspector at approximately 12:20 a.m. It was reported that a Hispanic male, a known gang member, had come onto federal property and stated to the FPS Inspector "watch out" and that the officer should "leave and gangs

run this." The individual then left the property and entered a van. He exited the van and said to the officer "you think I am playing?" A female exited the van and pulled the male individual back into the van.

7. Another incident occurred on October 10, 2025, at approximately 8:58 p.m., when an immigration protestor assaulted an FPS Inspector and an FPS Protective Service Officer (PSO) by shining a high-powered laser in the officer's eyes, causing eye damage. The PSO cannot work due to his injury.

8. Having the National Guard available to assist FPS is key to maintaining officer safety and continuing our property protection operations. Although violence and threats directed at federal officials and property has been reduced since June, it is clear that this is due at least in part to the Guard's presence, which serves as both a deterrent and as support for overburdened FPS officers. There is no question that, from the perspective of the FPS officers responsible for protecting the federal facilities, the National Guard's presence has prevented violence from reoccurring on a frequent basis. and has been critical to maintaining the safety of all law enforcement officers involved.

9. Notwithstanding the two recent incidents, having the National Guard present at the federal facilities that FPS protects has not only helped keep most protests from becoming violent, but it also has allowed FPS to reduce its staffing levels. It is not uncommon for the National Guard to provide a force equal to or greater than what FPS is able to provide at a particular facility. For example, during a peaceful protest that occurred on September 16, 2025, FPS only needed to have 39 of its officers on site because the National Guard provided 40 of its members.

10. Most importantly, having the National Guard on site allows FPS officers perform law enforcement operations that it would otherwise have to forego. For example, when attempting to conduct an arrest during a crowded protest, teamwork is essential for officer safety. Having the National Guard available to remain on the property allows the FPS arrest teams officers to leave federal property to effectuate arrests of protesters who are suspected of committing crimes directed at federal property

or persons at or near the property. The National Guard members will form a line on the border of federal property while FPS officers are engaged in detaining the subjects. This creates a vital safety barrier for federal property and the FPS Officers.

11. FPS is a small agency with a total of 776 law enforcement officers. Of that number, only 497 are Inspectors, whose primary mission is to patrol and respond to law enforcement incidents at the federal buildings in their area of responsibility. While FPS can surge its Inspectors to respond to emergency situations, it is not resourced to provide a large-scale response to ongoing civil unrest or sustained attacks on federal facilities or federal employees working in those facilities. Given that so many FPS officers have been deployed to Portland, OR, to help protect the Portland ICE facility, FPS continues to be spread extremely thin operationally.

12. If the National Guard were no longer available to assist FPS, there is a concern that if the protests grow in size and become violent again, FPS would not have the resources on hand to respond fully. This would increase the threat to law enforcement, the public and the federal facilities.

13. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on October 16, 2025, at Los Angeles, California.

Roger Scharmen