1  **ROB BONTA**
   Attorney General of California
2  MICHAEL L. NEWMAN, SBN 222993
   THOMAS S. PATTERSON, SBN 202890
3  Senior Assistant Attorneys General
   ANYA M. BINSACCA, SBN 189613
4  MARISSA MALOUFF, SBN 316046
   JAMES E. STANLEY, SBN 316288
5  Supervising Deputy Attorneys General
   JESSE BASBAUM, SBN 273333
6  BRENDAN HAMME, SBN 285293
   IRAM HASAN, SBN 320802
7  BARBARA HORNE-PETERSDORF, SBN 327738
   JANE REILLEY, SBN 314766
8  DELBERT TRAN, SBN 323993
   MEGHAN H. STRONG, SBN 324503
9  Deputy Attorneys General
    455 Golden Gate Ave.
10   San Francisco, CA 94102
    Telephone: (415) 510-3877
11   E-mail: Meghan.Strong@doj.ca.gov
   *Attorneys for Plaintiffs*

12

                    IN THE UNITED STATES DISTRICT COURT
13
                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
14

15

16

17  **GAVIN NEWSOM, IN HIS OFFICIAL
    CAPACITY AS GOVERNOR OF THE STATE OF**
18  **CALIFORNIA; STATE OF CALIFORNIA,**          **NO. 3:25-cv-04870-CRB**

19                                    Plaintiffs,  **PLAINTIFFS' REPLY IN SUPPORT OF
                                                   RENEWED MOTION FOR**
20          v.                                     **PRELIMINARY INJUNCTION**

21
    **DONALD TRUMP, IN HIS OFFICIAL**
22  **CAPACITY AS PRESIDENT OF THE UNITED
    STATES; PETE HEGSETH, IN HIS OFFICIAL**
23  **CAPACITY AS SECRETARY OF THE
    DEPARTMENT OF DEFENSE; U.S.**
24  **DEPARTMENT OF DEFENSE,**

25                                    Defendants.

26

27

28

1

2

3

**TABLE OF CONTENTS**

Introduction ........................................................................................................... 1

Argument ............................................................................................................... 3

    I.    The Court May Review Defendants' Subsequent Federalization Orders, Which Must Satisfy § 12406. ............................................................... 3

    II.   Section 12406 Is Not Satisfied and Was Not Satisfied at the Time of Defendants' Subsequent Federalization Orders. ..................................... 8

    III.  Plaintiffs' Current Challenge Has a Sufficient Nexus to Their Complaint ............ 9

    IV.  The Remaining *Winter* Factors Favor Injunctive Relief. ........................................ 9

    V.   The Court Should Deny Defendants' Request for a Stay and Order a Nominal Bond. ....................................................................................... 10

Conclusion ............................................................................................................ 10

i

# TABLE OF AUTHORITIES

**CASES**

*Doe v. Rumsfeld*
    435 F.3d 980 (9th Cir. 2006) ........................................................................ 4

*Illinois v. Trump*
    155 F.4th 929 (7th Cir. 2025) ...................................................................... 10

*Newsom v. Trump*
    141 F.4th 1032 (9th Cir. 2025) ............................................................ 4, 5, 8, 9

*Oregon v. Trump*
    154 F.4th 1161 (9th Cir. 2025) .................................................................... 10

*Oregon v. Trump*
    No. 3:25-cv-1756-IM, 2025 WL 3126773 (D. Or. Nov. 7, 2025) ................ 1, 2

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*
    810 F.3d 631 (9th Cir. 2015) ........................................................................ 9

*Youngstown Sheet & Tube Co. v. Sawyer*
    343 U.S. 579 (1952) ...................................................................................... 5

**STATUTES**

10 U.S.C.
    § 12406 ............................................................................................... *passim*
    § 12406(1)-(3) .............................................................................................. 3
    § 12407 ...................................................................................................... 2, 4
    § 12407(a) .................................................................................................... 4

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Article I, § 8, cls. 15-16 ................................................................. 7

**OTHER AUTHORITIES**

H.R. Rep. No. 1067 (1908) ............................................................................ 6, 7

Hearings on H.R. 14783 Before the House Committee on Militia, 60th Cong. 6
    (Jan. 27, 1908) ............................................................................................. 6

Robert Leider, *Deciphering the "Armed Forces of the United States,"* 57 Wake
    Forest L. Rev. 1195, 1227 (2022) ............................................................... 6

Robert Leider, *The Modern Militia*, 2023 Mich. St. L. Rev. 893, 916 (2023) ............................ 7

Robert W. Coakley, *The Role of Federal Military Forces in Domestic Disorders, 1789-1878* (1988) ................................................................................................................. 7

Stephen Vladeck, Note, *Emergency Power and the Militia Acts*, 114 Yale L.J. 149, 157 (2004) ....................................................................................................................... 7

iii

**INTRODUCTION**

Defendants' own position cannot be reconciled with itself. Defendants proclaim that "[t]he deployment has succeeded," conceding that the exigency that they claim justified their June federalization order has passed. Opp., ECF No. 214, at 1. But they nevertheless insist that they must keep troops in Los Angeles through at least February of next year. They even profess an intention "to ensure a constant, enduring, and long-term presence" in the Nation's second-largest city.[1] But the law does not permit Defendants to station troops in an American city simply because it has a civilian population or leadership that disagrees with the President's agenda. And the Court unquestionably has authority to review and enjoin Defendants' unlawful attempt to do so.

Defendants' reading of § 12406 is entirely divorced from the text of the statute, its constitutional underpinnings, and common sense. Defendants contend that once § 12406 is satisfied at a single point in time, the President may issue serial extension orders and keep State troops federalized and deployed indefinitely, without making any renewed factual determination, and without *any* judicial review of those actions. That is plainly wrong. After reserving the power to call forth the militia for itself, Congress delegated limited powers to the President to call forth the militia in cases of urgent or extreme exigency. Defendants' reading of the law would wipe out that narrow delegation and seize complete military power for the President. But the text of § 12406 authorizes federalization only when one of its factual predicates is *presently* satisfied. *See Oregon v. Trump*, No. 3:25-cv-1756-IM, 2025 WL 3126773, at *37 (D. Or. Nov. 7, 2025). Thus, even if an emergency justifies federalization at one point in time, that federalization must necessarily end when the emergency does. And if it does not, courts are empowered to review that action and find it unlawful. Defendants' arguments to the contrary defy the plain intent of our Framers to leave control over the state militias principally with the States, not to transform them into a national military force.

---

[1] U.S. Northern Command (@USNorthernCmd), X (Nov. 14, 2025, at 8:47 p.m. PT), https://x.com/USNorthernCmd/status/1989555770091037084.

Defendants object that judicial review in this area would unacceptably interfere with military decisions and authorize new judicial review every day. Opp., ECF No. 214, at 4. But that is not what Plaintiffs ask of the Court here, nor what they have done through the almost six months that the California National Guard has been federalized. Defendants have issued two subsequent federalization orders extending California troops' deployment for new time periods, each at times when § 12406 clearly was not met. The Court need not determine where the outer limits of judicial review lie in cases of prolonged federalization because it can conclude that, at a minimum, Defendants needed to—and did not—satisfy § 12406 at the time of each of their specific, concrete actions of issuing new federalization orders in August and October. And the Court can further conclude that because there is no exigency under § 12406 now, Defendants may not lawfully issue new federalization orders today or any day in the future unless new facts arise that satisfy § 12406.

Neither § 12407 nor the amendment to § 12406's predecessor changes this plain meaning of § 12406. Section 12407 *limits* the President's authority over the period of federalization; it does not grant him absolute discretion. And Congress's choice to remove a nine-month time limit from an earlier version of the law simply confirms federalization may last longer than that time when the exigency lasts longer—such as in times of war. That amendment did not alter the law's continuing requirement that a present exigency must exist to justify a present federalization.

Defendants cannot show § 12406 was satisfied at the time of their subsequent federalization orders or any time since. Indeed, in admitting that they now seek to keep troops in Los Angeles merely as a deterrent to threats, Defendants concede that § 12406 is not satisfied, because that is not a basis for federalization under the statute. Even if Defendants are right that § 12406 was satisfied in June, that exigency it is not "a ghost that continues to persist once it has passed." *Oregon*, 2025 WL 3126773, at *36. To the extent an exigency ever existed, it has long-since passed. Section 12406 requires that any federalization end with it.

**ARGUMENT**

**I.    THE COURT MAY REVIEW DEFENDANTS' SUBSEQUENT FEDERALIZATION ORDERS, WHICH MUST SATISFY § 12406.**

Section 12406 provides that "whenever" one of its three predicates is met—when the United States "*is* invaded or *is* in danger of invasion," when there "*is* a rebellion or danger of rebellion," or when "the President *is* unable with the regular forces to execute the laws"—the President may federalize a State's National Guard.  10 U.S.C. § 12406(1)-(3) (emphasis added).  The text thus ties the President's federalization power to a present emergency, and once that emergency has passed—once the invasion is repelled, the rebellion is suppressed, or the laws are able to be executed with the regular forces once again—the President ceases to have any power to commandeer a State's National Guard under § 12406.  He may not continue to issue new federalization orders to guard against the possibility that a similar emergency may arise again.  And if he does, the courts are empowered to find that he has acted unlawfully in seeking to wield power he does not have.

That is the case here.  Whatever justification may have existed in June, it had long since passed by the time Defendants issued orders in August, and then again in October, that federalized California National Guard troops through at least February 2026.  Because those orders were issued at a time when none of § 12406's predicates were met, they were unlawful and must be enjoined.  And because § 12406's predicates remain unsatisfied today, any future orders based on the same or similar facts or justification would be similarly unlawful and must also be enjoined.

Defendants assert that § 12406 does not permit "the same judicial review on every day of the mission."  Opp., ECF No. 214, at 4.  That is not Plaintiffs' position.  Rather, Plaintiffs contend that, at a minimum, Defendants must satisfy § 12406 each time they issue an order extending the federalization of troops for a new period.  Thus, while the Ninth Circuit preliminarily determined that Defendants were likely to succeed in defending their June federalization order, which allowed the California National Guard to be federalized for an initial 60 days, that determination does not authorize or otherwise endorse continued federalization past that time.  Nor could it—the

1    Ninth Circuit explicitly limited its determination to the facts before it, which did not include the

2    subsequent federalization orders Plaintiffs now challenge. *Newsom v. Trump*, 141 F.4th 1032,

3    1055 (9th Cir. 2025). Defendants are wrong that their actions can be subject to judicial review

4    only once, and none of their arguments to the contrary prove otherwise.

5         First, Defendants contend that 10 U.S.C. § 12407 "confirms that the duration of

6    federalized Guardsmen's service is committed to the President's discretion," Opp., ECF No. 214,

7    at 5, but that section does nothing of the sort. Far from the unfettered discretion Defendants seek

8    to find in it, § 12407 is designed to protect federalized Guardsmen from the sort of indefinite

9    deployment that Defendants now seek to maintain. Section 12407(a) provides:

10        Whenever the President calls the National Guard of a State into Federal service, he
          may specify in the call the period of the service. Members and units called shall
11        serve inside or outside the territory of the United States during the term specified,
          unless sooner relieved by the President. However, no member of the National
12        Guard may be kept in Federal service beyond the term of his commission or
          enlistment.
13

14        As the Ninth Circuit explained in *Doe v. Rumsfeld*—the only case interpreting § 12407,

15    which goes unmentioned in Defendants' opposition—§ 12407 affirmatively "restricts the

16    extension of enlistments of soldiers in the National Guard of a State." 435 F.3d 980, 987 (9th Cir.

17    2006). "In light of this language, it would be improper for a President to extend, for 'Federal'

18    service, the enlistment of a member of the National Guard of a State." *Id.* Thus, § 12407's

19    purpose is to *limit* the President's power over the duration of federalization, not grant him

20    absolute discretion. If anything, § 12407 calls into question whether Defendants' stated intent to

21    keep California's soldiers federalized "long-term"[2] is unlawful under that statute, to the extent it

22    would require extending a Guard member's federal service past his or her enlistment. And at a

23    minimum, § 12407's requirement that the federalized State Guard shall serve only for the "term

24    specified" in the President's order, and no longer, confirms that to keep the federalized California

25    National Guard in service after the 60-day period of their initial orders, Defendants had to issue

26

27

28        [2] U.S. Northern Command (@USNorthernCmd), *supra* n.1.

4

*new* federalization orders with *new* periods of service. They did so, and those orders must therefore satisfy § 12406 and be subject to new judicial review.[3]

Next, Defendants attempt to reduce Plaintiffs' motion to a mere disagreement about "headcount." Opp., ECF No. 214, at 4, 6. That is not the case. Plaintiffs do not object to the mere number of federalized Guardsmen or assert that the facts justify a lower number. Rather, Plaintiffs contend that because § 12406 is not satisfied, the federalization is wholly unlawful, whether the number federalized is 1, 100, or 1,000. Therefore, even if § 12406 does give the President discretion to determine the number of troops necessary when lawfully federalizing the National Guard, that does not help Defendants here. The President's discretion to determine the number of troops does not allow him to federalize and deploy even a single member of the National Guard if none of § 12406's predicates have been satisfied.

Defendants further argue that the President must have unreviewable discretion over the duration of § 12406 federalization because of "the total absence of any time limitation" in the statute. Opp., ECF No. 214, at 5. But the absence of an explicit limit on the President's power does not lead to the conclusion that he has complete discretionary power over that issue; quite the opposite. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) ("When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb.") (Jackson, J., concurring in the judgment). And § 12406's text is not, in fact, silent on the question of time. Its authorization to federalize the National Guard "whenever" the President "*is* unable with the regular forces to execute the laws" makes clear that the President's power to extend the federalization of the National Guard endures only as long as the predicate exigency endures to satisfy § 12406. *See Newsom*, 141 F.4th at 1046-47 (rejecting, for similar reasons, Defendants' argument that the President's initial federalization decision is nonreviewable).

---

[3] That does not, of course, mean that Defendants could issue an order with no term specified, or with a term so long that they could avoid subsequent judicial review indefinitely. Such an order, untethered to the specific facts of a particular deployment, would surely exceed the President's discretion, even under a highly deferential standard. But those are not the facts before this Court.

Congress's removal of an explicit nine-month time limit in § 12406's predecessor does not defeat this plain reading of the text. That removal simply means that federalizations exceeding nine months are not *automatically* unlawful for that reason. But each federalization must still otherwise satisfy § 12406 based on a present exigency. The 1908 amendment's legislative history confirms Congress's intent was not to grant the President the unfettered discretion Defendants now seek to read into the statute. The act that removed the nine-month time limit was passed to bring the State National Guard up to the same standards as the regular Army and place them "upon such a footing in respect to efficiency and material equipment as will enable that branch of the Constitutional military force to instantly respond to a call for troops issued by the President under the conditions of emergency which are provided for in the Constitution." H.R. Rep. No. 1067, at 5 (1908). Congress was concerned that the state National Guard had "performed badly" during the Spanish-American War due to "the inadequacies of the militia's archaic organization" and sought in the 1908 act to modernize its organization and training and remove barriers, such as a strict time limit, that might impede the federal government's ability to effectively use the state militia in times of war. Robert Leider, *Deciphering the "Armed Forces of the United States,"* 57 Wake Forest L. Rev. 1195, 1227 (2022); *see also* Hearings on H.R. 14783 Before the House Committee on Militia, 60th Cong. 6 (Jan. 27, 1908). Addressing the removal of the nine-month limit, then-Acting Secretary of War Robert Shaw Oliver noted that the limit was "generously waived" because the state militia would serve "in any theater of military activity to which they may be called, and to continue in such service until the necessity of their employment no longer exists." H.R. Rep. No. 1067, at 6. Thus, while Congress removed the nine-month limitation to ensure that National Guard troops could respond to emergencies that may last longer than nine months (such as war), this amendment did not change the underlying requirement that troops be federalized and deployed only during the period of the emergency that necessitated their deployment.

The consequences of Defendants' argument to the contrary are untenable. Defendants' understanding—which would effectively allow the President to permanently federalize States' National Guard forces—would bring § 12406 directly into conflict with Founding Era principles.

At the Constitutional Convention, "[t]he Framers heavily debated . . . whether the entire military power should be transferred to the national government."  Robert Leider, *The Modern Militia*, 2023 Mich. St. L. Rev. 893, 916 (2023).  James Madison "advocated for full national control of the militia."  *Id.*  "Other delegates, however, fought Madison by stressing the importance" of state control.  *Id.* at 917.  Under the prevailing compromise, embodied in the Constitution's Militia Clauses, the States generally have "primary responsibility" absent a valid federalization pursuant to a statute enacted by Congress.  Stephen Vladeck, Note, *Emergency Power and the Militia Acts*, 114 Yale L.J. 149, 157 (2004); *see* U.S. Const. art. I, § 8, cls. 15-16.[4]  Defendants would have the Court flip that settled principle on its head by giving the President unfettered license to retain national control of Guard forces in ways that the Framers could not possibly have contemplated.  *Cf.* Argument at 4:05-4:32, *Newsom v. Trump*, No. 25-3727 (9th Cir. Oct. 22, 2025) (Bennett, J.), https://tinyurl.com/a99x3bjf (observing that Defendants' position about indefinite federalization would have given President Washington authority to "call[] up *forever*" state militias in response to the Whiskey Rebellion, long after the Whiskey Rebellion had abated) (emphasis added).

Finally, Defendants err in characterizing all of this as a mere "continuation" of the initial federalization.  Opp., ECF No. 214, at 4, 6-8.  Defendants do not deny that they had to, and did, issue new orders each time the previous federalization period expired, nor that the federalized Guard members would have returned to State control but for those subsequent orders.  Defendants cannot avoid review by choosing to keep already-federalized Guard members federalized for a new time period instead of releasing them and calling up new Guard members.  Opp., ECF No. 214, at 8.  The fact remains that Defendants issued new federalization orders in August and October—and have signaled they plan to maintain a military presence for even longer[5]—and they cannot avoid judicial review of those agency actions merely because courts reviewed whether they met § 12406 at an earlier time and in a materially different factual context.  The Court can and should review these subsequent orders.

---

[4] *See also* Robert W. Coakley, *The Role of Federal Military Forces in Domestic Disorders, 1789-1878*, at 14 (1988).
[5] U.S. Northern Command (@USNorthernCmd), *supra* n.1.

1

**II.    SECTION 12406 IS NOT SATISFIED AND WAS NOT SATISFIED AT THE TIME OF DEFENDANTS' SUBSEQUENT FEDERALIZATION ORDERS.**

2

3      Defendants make no meaningful attempt to justify their decision to federalize the

4    California National Guard through at least February of next year. They state only that "threats

5    against federal officers carrying out their statutory duties have continued." Opp., ECF No. 214, at

6    9. But mere threats are not sufficient to satisfy § 12406. Mtn., ECF No. 212, at 12. Certainly,

7    they do not rise to the level of "unusual and extreme exigenc[y]" that § 12406 was designed to

8    address. *Newsom*, 141 F.4th at 1051. Nor does § 12406 authorize use of the federalized National

9    Guard as a "deterrent effect." Opp., ECF No. 214, at 10. Even if Defendants are correct that "the

10   abatement in the unrest . . . was due at least in part to the presence of Guardsmen," *id.* at 10, that

11   does not offer them any support. The point of federalization is to abate the exigency, so the

12   claimed success of the federalization cannot be grounds for finding a further exigency.

13   Therefore, when the triggering exigency has abated, § 12406 is no longer satisfied and does not

14   authorize continued federalization. That Defendants' apparent best example of why they have a

15   continued need for troops is an event that took place in *July*, *id.* at 10-11 (discussing Camarillo

16   operation), simply confirms that the exigency has passed here. Defendants provide no evidence

17   of any specific need for military assistance now—and certainly nothing that would have satisfied

18   § 12406 in either August or October. They offer only conclusory statements that the remaining

19   troops are providing nonspecific "rapid response protection support to federal facilities, functions,

20   and personnel" and "providing perimeter security at the Roybal Federal Building," Sauter Decl.,

21   ECF No. 214-1, at ¶ 9, but they identify no events in recent months that necessitate protection.

22       This issue is simple. All parties agree that the violence in June that led Defendants to

23   federalize the California National Guard has ended. Defendants' attempt to renew their

24   federalization orders after the end of that exigency is unlawful under § 12406, and the Court

25   should therefore enjoin their orders and actions.

26

27

28

### III.   PLAINTIFFS' CURRENT CHALLENGE HAS A SUFFICIENT NEXUS TO THEIR COMPLAINT

Defendants' continued assertion that Plaintiffs must amend their complaint before challenging Defendants' subsequent federalization orders is also plainly wrong.  Opp., ECF No. 214, at 12.  Plaintiffs' complaint explicitly requested relief extending to "any future orders," including those at issue now.  ECF No. 1 at 21.  Plaintiffs current challenge thus has a "sufficient nexus" to the claims in their complaint.  *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015).  Moreover, it would not be practical or just to expect Plaintiffs to amend their complaint each time Defendants issue a new federalization order.  That would simply allow Defendants to lead Plaintiffs in a game of procedural whack-a-mole by issuing a new order each time Plaintiffs challenged the last.  To be clear, Plaintiffs challenge *all* federalization orders—past, current, and future—and will continue to do so for as long as Defendants continue to unlawfully federalize and deploy National Guard troops into the Nation's second-largest city.

### IV.   THE REMAINING *WINTER* FACTORS FAVOR INJUNCTIVE RELIEF.

The balance of harms and equities supports injunctive relief, and the Ninth Circuit's holding on those factors in June does not apply here because the relevant facts and harms have changed.  In this motion, Plaintiffs rely primarily on the constitutional sovereign harms they suffer, which are proof of irreparable harm on their own, *see* Mtn., ECF No. 212, at 13-14, and which the Ninth Circuit did not address in *Newsom*.  141 F.4th at 1054-55.  Though the Ninth Circuit concluded Plaintiffs were not likely to succeed on the merits of the issue then before it, if this Court concludes Plaintiffs are likely to succeed here, as it should, then Plaintiffs suffer irreparable harms that were not at stake in the Ninth Circuit's decision.  And Defendants' potential harms are different too.  Defendants concede that the risk of harm to federal property and personnel is significantly lower now than it was in June.  Opp., ECF No. 214, at 1, 9.  The Ninth Circuit relied primarily on Defendants' evidence of the degree of violence and threatened violence in June to credit Defendants' harms at the time.  *Newsom*, 141 F.4th at 1054.  But that violence has abated, as Defendants concede, and thus the balance of harms is also meaningfully different.

**V.    THE COURT SHOULD DENY DEFENDANTS' REQUEST FOR A STAY AND ORDER A NOMINAL BOND.**

The Court should reject Defendants' request for a stay pending appeal.  If the Court finds that Plaintiffs are entitled to injunctive relief here, there is no reason to conclude Defendants are entitled to a stay, and the Court should not allow them to prolong this federalization any longer. The other cases Defendants cite, in which the Ninth and Seventh Circuits issued limited, temporary administrative stays as to federalization to allow National Guard troops to remain federalized but not deployed, did not involve continued federalization of troops for more than five months that lasted long after the circumstances that prompted federalization concluded.  *See Oregon v. Trump*, 154 F.4th 1161, 1164 (9th Cir. 2025); *Illinois v. Trump*, 155 F.4th 929, 940 (7th Cir. 2025).  It is long past time for *this* federalization to come to an end.[6]  Finally, the Court should order Plaintiffs to pay only a nominal bond, as it did in issuing the Temporary Restraining Order earlier in this case.  ECF No. 64 at 35.

## CONCLUSION

The Court should grant Plaintiffs' motion, enjoin Defendants' federalization and deployment of the California National Guard, and order the return of any federalized California Guard members to the command and control of the Governor.

---

[6] Plaintiffs recognize that defederalization cannot be effected immediately and requires the completion of certain processes, as outlined in the Sauter Declaration, ECF No. 214-1.  However, those processes are not justification for a stay.  Rather, Plaintiffs agree that Defendants could be deemed to be in compliance with an injunction requiring defederalization so long as they timely commence and abide by those processes, coupled with regular status reports to the Court confirming those efforts.

1

2     Dated: November 21, 2025                    Respectfully submitted,

3                                                 ROB BONTA
                                                  Attorney General of California
4                                                 MICHAEL L. NEWMAN
                                                  THOMAS S. PATTERSON
5                                                 Senior Assistant Attorneys General
                                                  ANYA M. BINSACCA
6                                                 MARISSA MALOUFF
                                                  JAMES E. STANLEY
7                                                 Supervising Deputy Attorneys General
                                                  JESSE BASBAUM
8                                                 BRENDAN HAMME
                                                  IRAM HASAN
9                                                 BARBARA HORNE-PETERSDORF
                                                  JANE REILLEY
10                                                DELBERT TRAN
                                                  Deputy Attorneys General
11

12                                                */s/ Meghan H. Strong*

13                                                MEGHAN H. STRONG
                                                  Deputy Attorney General
14                                                  455 Golden Gate Ave.
                                                    San Francisco, CA 94102
15                                                  Telephone: (415) 510-3877
                                                    E-mail: Meghan.Strong@doj.ca.gov
16

17                                                *Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY ISO RENEWED MOTION FOR PRELIMINARY INJUNCTION